```
                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA


    UNITED STATES OF AMERICA,
                                              Criminal Action
             Plaintiff,                       No. 1:21-cr-0037

       vs.                                    Washington, DC
                                              May 6, 2022
    TIMOTHY LOUIS HALE-CUSANELLI,
                                              10:01 a.m.
             Defendant.
    _____/


           TRANSCRIPT OF PRETRIAL CONFERENCE & ARRAIGNMENT
              BEFORE THE HONORABLE TREVOR N. McFADDEN
                    UNITED STATES DISTRICT JUDGE
```

**APPEARANCES:**

```
For the Government:     KAREN SEIFERT
                        KIMBERLY PASCHALL
                        KATHRYN FIFIELD
                          U.S. Attorney's Office for the
                          District of Columbia
                          555 Fourth Street, NW
                          Washington, DC 20530


For the Defendant:      JONATHAN CRISP
                          Crisp & Associates, LLC
                          4031 North Front Street
                          Harrisburg, PA 17110





Court Reporter:         JEFF M. HOOK
                          Official Court Reporter
                          U.S. District & Bankruptcy Courts
                          333 Constitution Avenue, NW
                          Room 4700-C
                          Washington, DC 20001
```

1                          P R O C E E D I N G S

2              **DEPUTY CLERK:**  Your Honor, this is criminal case

3    21-37, United States of America vs. Timothy Cusanelli.

4    Counsel, please come forward to identify yourselves for the

5    record, starting with the Government.

6              **MS. SEIFERT:**  Good morning, Your Honor.  Karen

7    Seifert for the United States.  With me at counsel table is

8    Kate Fifield and Kim Paschall.

9              **THE COURT:**  Good morning, ladies.

10             **MR. CRISP:**  Good morning, Your Honor.  Jonathan

11   Crisp on behalf of Timothy Hale-Cusanelli.

12             **THE COURT:**  Good morning, gentlemen.  And I should

13   say in light of the CDC's recent directives on COVID, I

14   don't require people to wear masks in my courtroom.

15   Obviously you're welcome to do so if you wish.

16             I wanted to address the two outstanding motions in

17   limine, and then talk about our proposed -- the proposed

18   voir dire questions.  Anything else that the Government

19   believes we should be handling today?

20             **MS. SEIFERT:**  No, Your Honor.

21             **THE COURT:**  Okay.  And Mr. Crisp, does that all

22   make sense to you?

23             **MR. CRISP:**  It does, Your Honor.  Thank you.

24             **THE COURT:**  Okay.  Before the Court is

25   Mr. Hale-Cusanelli's motion to dismiss count one of the

1    superseding indictment, and that's ECF number 62.  The Court
2    will deny the motion for the following reasons.  First,
3    Mr. Hale-Cusanelli argues that any alleged obstruction of
4    the certification of the Electoral College vote does not
5    constitute an official proceeding.  The Court rejects this
6    argument, because 18 U.S.C. 1515 defines official proceeding
7    for purposes of 1512(c) as "a proceeding before Congress."
8        Central to this definition is the meaning of the
9    word proceeding.  In the lay sense, proceeding means "the
10   carrying on of an action or series of actions."  That's from
11   Oxford English dictionary, third edition, 2007.  In the
12   legal sense, proceeding means "the business conducted by a
13   court or other official body; a hearing."  That's from
14   Black's Law Dictionary, 11th edition, 2019.
15       Under either the lay or legal definition, the
16   certification of the Electoral College vote is an official
17   proceeding because it "has the trappings of a formal hearing
18   before an official body.  There is a proceeding officer --
19   "presiding officer," excuse me, "a process by which
20   objections can be heard, debated, and ruled upon, and a
21   decision -- the certification of the results -- that must be
22   reached before the session can be adjourned.  Indeed, the
23   certificates of electoral results are akin to records or
24   documents that are produced during judicial proceedings, and
25   any objections to these certificates can be analogized to

1    evidentiary objections."  That's from United States vs.
2    Sandlin, 2021 WL 5865006 at *4 from this district
3    December 10th, 2021.  Additionally, the Court notes that
4    every other judge in this district to consider this issue
5    has reached the same conclusion.
6              Second, Mr. Hale-Cusanelli argues that section
7    1512(c)(2)'s prohibition is limited to obstruction tied to
8    documentary or tangible evidence.  The Court disagrees for
9    the following reasons.  Because the statute does not define
10   obstruct, the Court looks "first to the word's ordinary
11   meaning."  That's from Schindler Elevator Corp. vs. United
12   States ex rel. Kirk, 563 U.S. 401, page 407, from 2011.  To
13   obstruct is to prevent or to hinder something's passage or
14   progress according to the Oxford English dictionary, third
15   edition, 2004.  These verbs are broad enough to cover not
16   only the destruction or alteration of evidence used in a
17   proceeding, but also impeding the proceeding itself.
18   Looking at the context of the statute confirms this
19   interpretation.  Sections (c)(1) and (c)(2) are linked by
20   the word otherwise.  Otherwise means in a different way or
21   by other causes or means according to Black's Law
22   Dictionary, 11th edition, 2019.
23             Thus, Mr. Hale-Cusanelli can violate 1512(c) by
24   either, one, altering, destroying or concealing documents
25   and other objects, or two, violating it "in a different way"

1	or "by other causes or means."  So 1512 gives fair warning
2	that a crime will occur in a different manner than in
3	1512(c)(1) if Mr. Hale-Cusanelli obstructs, influences or
4	impedes any official proceeding.  The different verbs used
5	in 1512(c) confirm this.  The verbs in (c)(1) have as their
6	object a "record, document, or other object...for use in an
7	official proceeding."  The verbs in (c)(2) have as their
8	object "any official proceeding."  It is most natural to
9	read the statute to say that (c)(1) is about interfering
10	with the evidence used in an official proceeding, and (c)(2)
11	is about interfering with the proceeding itself.

12	          More, this interpretation avoids many of the
13	superfluidity concerns raised by the defendant and by Judge
14	Nichols in his opinion in United States vs. Miller, 2022 WL
15	823070 at *12 from this district on March 7th, 2022.
16	Section 1512(c)(1) and much of the rest of 1512 concern the
17	destruction of evidence.  But under the interpretation the
18	Court proposes, 1512(c)(2) concerns interference with an
19	official proceeding itself.  This interpretation is also
20	consistent with decisions in other circuits that have upheld
21	convictions under 1512(c)(2) for crimes other than
22	destruction of physical evidence, as the Government notes in
23	its motion to dismiss at page 17.

24	          Finally, the Court notes that Begay vs. United
25	States, 553 U.S. 137 from 2008, and United States vs. -- or

 1     Yates vs. United States, 574 U.S. 528 from 2015, do not
 2     counsel otherwise.  Mr. Hale-Cusanelli relies heavily on
 3     Begay to interpret the word otherwise.  But the meaning of
 4     that word plays a relatively minor role in Begay.  Indeed,
 5     the Court -- that is the Supreme Court, said that "the word
 6     otherwise can (we do not say must...) refer to a crime that
 7     is similar to the listed examples in the same respect" -- or
 8     "in some respects, but different in others."  And that's
 9     from page 144 on Begay.

10              Yates relied on the doctrine of ejusdem generis to
11     interpret the meaning of the phrase tangible object.  But
12     there, tangible object appeared in the same list -- indeed,
13     in the same sentence -- as the other words that the Court
14     used to give its meaning.  That's from page 531 in Yates.
15     But here, the verbs in (c)(2) do not appear in a list with
16     the words in (c)(1).  They're separated by a semicolon and
17     the word or, and they appear on a separate line in a
18     separately numbered paragraph.

19              Third, Mr. Hale-Cusanelli uses the legislative
20     history of 1512 to support his interpretation.  I'm
21     unpersuaded.  To start, the Court has already noted that the
22     plain language of the statute supports reading (c)(2) to
23     refer to conduct other than tampering with evidence.  "Even
24     the most formidable argument concerning the statute's
25     purposes cannot overcome the clarity found in the statute's

1    text, and only rarely have we relied on legislative history
2    to constrict the otherwise broad application of a statute
3    indicated by its text."  That's from Lindeen vs. the SEC,
4    825 F.3d 646, page 655 from the D.C. Circuit in 2016.
5            Mr. Hale-Cusanelli argues that Congress would not
6    have added 1512(a)(2)(B) just three months after (c)(2).
7    But this argument fails because (a)(2)(B) criminalizes the
8    altering or destruction of documents or testimony.
9    Subsection (c)(2) deals with interfering with a proceeding
10   itself.
11           Next, Mr. Hale-Cusanelli argues that the purpose
12   of (c)(2) was to target corporate malfeasance of the type
13   perpetrated by Enron in the late 1990s and early 2000s.
14   Thus, he says, the Court should not apply (c)(2) beyond that
15   context.  But "that Congress acted due to concerns about the
16   document destruction and the integrity of investigations of
17   corporate criminality does not define the statute's scope.
18   Statutes often reach beyond the principal evil that animated
19   them."  That's, again, from Sandlin at *9.  More, "what
20   little legislative history exists should not be given much
21   weight because it comes in the form of floor statements."
22   That's from United States vs. Montgomery, 2021 WL 6134591 at
23   *15 out of this district on December 28, 2021 discussing
24   this statute, but citing NLRB vs. Southwest General, 137 S.
25   Ct. 929, page 943 from 2017.

1                   Fourth, Mr. Hale-Cusanelli argues that the statute
2       is ambiguous, and, under the rule of lenity, ambiguities
3       must be construed in his favor.  As an initial matter, I
4       note that the rule of lenity only applies when there is a
5       grievous ambiguity or uncertainty about the statute.  That's
6       from Barber vs. Thomas, 560 U.S. 474, page 488 from 2010.
7       As the Court's analysis has made clear, there is no such
8       grievous ambiguity here; nor can Mr. Hale-Cusanelli credibly
9       claim surprise at this result.  The verbs in (c)(2) clearly
10      cover obstructive acts aimed at official proceedings.  It
11      would strain credulity for Mr. Hale-Cusanelli to express
12      surprise that stopping an official proceeding from taking
13      place would be covered by a statute that makes it a crime to
14      obstruct, influence or impede any official proceeding or
15      attempt to do so.
16                  Similarly, his interpretation would lead to the
17      absurd result that destroying a document used or considered
18      by Congress in the Electoral College vote count would
19      qualify as obstruction of the proceeding, but interfering
20      with the proceeding itself would not constitute obstruction.
21      The rule of lenity does not require the Court to adopt such
22      a strained interpretation of the statute.
23                  Finally, he relies on United States vs.
24      Poindexter, 951 F.2d 369 from the D.C. Circuit in 1991, to
25      argue that the word corruptly is vague on its face.  When

 1    considering a vagueness challenge, the touchstone is whether
 2    the statute, either standing alone or as construed, made it
 3    reasonably clear at the relevant time that the defendant's
 4    conduct was criminal.  That's from United States vs. Lanier,
 5    520 U.S. 259, page 267 from 1997.  Poindexter found the word
 6    corruptly was vague "in the absence of some narrowing
 7    gloss."  That's from page 398 in Poindexter.  Here, there is
 8    a narrowing gloss, because corruptly applies directly to
 9    behavior that obstructs, influences or impedes an official
10    proceeding.
11            As Judge Friedrich noted in Sandlin, "Courts have
12    since cabined Poindexter's holding to its facts, and have
13    not read it as a broad indictment of the use of the word
14    corruptly in the various obstruction of justice statutes."
15    That's from page *9 in Sandlin quoting United States vs.
16    Fokker Services, 818 F.3d 733, page 741 from the D.C.
17    Circuit in 2016.
18            Finally, the Court notes that multiple other
19    judges in this court have considered Poindexter and have
20    similarly found that it does not apply to a motion to
21    dismiss an obstruction count.  And I'm looking to Montgomery
22    at page *18.  For all these reasons, the Court denies the
23    motion to dismiss the obstruction count.
24            I will now consider the motion to exclude 404(b)
25    evidence; that's ECF 63.  Rule 404(b) bars evidence of any