UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-40 (TNM) |
| v. : | |
| : | |
| FEDERICO KLEIN, : | |
| : | |
| Defendants. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT KLEIN'S MOTION TO DISMISS
COUNT THIRTY-FOUR OF THE INDICTMENT**

The United States of America, by and through its attorney, United States Attorney for the District of Columbia, hereby respectfully submits this opposition to defendant Klein's motion to dismiss Count Thirty-Four of the Indictment, charging the Klein (and his co-defendants) with Obstruction of an Official Proceeding, Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2. ECF No. 308. The government has opposed this motion from defendants McCaughy, Stevens, Judd, Morss, Sills, Mehaffie and Cappuccio (ECF No. 296) and asks that those arguments be incorporated here.

Defendant Klein's contentions lack merit, for the same reasons the government put forth in its prior opposition. ECF No. 296. Since the government filed its previous opposition, additional courts in this district have rejected many, if not all, of the challenges that Klein rehashes here. *See, e.g.*, *United States v. Fitzsimons,* No. CR 21-158 (RC), 2022 WL 1698063, at *3 (D.D.C. May 26, 2022)*; United States v. Williams,* No. CR 21-0618 (ABJ), 2022 WL 2237301, at *10 (D.D.C. June 22, 2022); *United States v. Robertson*, No. 21-CR-34 (CRC), 2022 WL 2438546, at *3 (D.D.C. July 5, 2022); *but see*, *United States v. Miller*, No. 1:21-CR-00119 (CJN), 2022 WL 1718984, at *2 (D.D.C. May 27, 2022) (ruling on motion for reconsideration). This Court should adopt the

well-reasoned view of the overwhelming majority of district judges to have considered the issues and deny Klein's motion to dismiss. ECF No. 296, at 9 (collecting decisions).

## BACKGROUND

The facts of this co-defendant matter are well known to this Court, and are laid out extensively in previous filings. See, ECF No. 296, at 10-12. Facts specific to defendant Klein are laid out in the government's memorandum in support of pretrial detention in the predecessor litigation. *United States v. Federico Klein*, 21-cr-236, ECF No. 10.

Defendant Klein is charged with four counts of Assaulting, Resisting, Impeding Certain Officers, Aiding and Abetting, in violation of 18 U.S.C. §§ 111(a)(1), 2 (Counts Nine, Seventeen, Nineteen, and Twenty-Seven); two counts Assaulting Resisting, Impeding Certain Officers with a Deadly or Dangerous Weapon, in violation of of 18 U.S.C. § 111(a)(1) and (b)(Counts Thirty-One and Thirty-Two); Obstruction of an Official Proceeding, Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count Thirty-Four); Obstructing Law Enforcement during a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count Thirty-Five); Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A) (Count Forty-Three); Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A) (Count Fifty-One); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Fifty-Two); and Acts of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Fifty-Three).

These charges are based on his assaultive and obstructive behavior on the West Front of the U.S. Capitol grounds and in the "tunnel" on the Lower West Terrace of the U.S. Capitol on January 6, 2021. Klein's assaults on law enforcement took place when the Joint Session of Congress, which was convened to certify the Electoral College votes for the 2020 Presidential

election, was halted by the actions of the thousands of rioters at the U.S. Captiol Building and grounds.

## ARGUMENT

Defendant Klein adds three arguments to those previously advanced by his co-defendants: 1) that the word "otherwise" in § 1512(c)(2) does not create a clean break from § 1512(c)(1), relying on *Yates v. United States*, 574 U.S. 528 (2015) and *United States v. Miller*, 1:21-CR-119 (CJN), 2022 U.S. Dist. LEXIS 45696 at *39 (D.D.C. March 7, 2022); 2) that the indictment fails to plead essential facts to the charge, thus robbing the defendant of his ability to prepare a proper defense; and 3) that the ambiguity about the meaning of "corruptly obstructing, influencing, or impeding a proceeding before Congress" should cause this Court to use the rule of lenity. ECF No. 308, at 3-5. The defendant's first and third arguments are addressed in the government's omnibus opposition. ECF No. 296, at 24- 29 (discussion of the Supreme Court opinion in *Yates*) at 32, 38-44 (discussion of the *Miller* decision and the term "otherwise") at 35-39 (discussion of the *Miller* decision and the rule of lenity). Therefore, this opposition will only address how Section 1512(c)(2) applies to the conduct alleged in the Indictment, and how the Indictment adequately pleads essential facts to the charge.

In Section 1512(c)(2), Congress comprehensively prohibited conduct that intentionally and wrongfully obstructs official proceedings. The ordinary meaning of "obstruct[], influence[], or impede[]" encompasses a wide range of conduct designed to frustrate an official proceeding. That conduct can include lying to a grand jury or in civil proceedings, exposing the identity of an undercover agent, and burning a building to conceal the bodies of murder victims. It also includes storming into the Capitol to derail a congressional proceeding. A defendant who, acting with the necessary *mens rea*, obstructs (or attempts to obstruct) Congress's certification of the Electoral College vote, commits a crime under Section 1512(c)(2).

i. Section 1512(c)(2)'s text and structure demonstrate that it serves as a comprehensive prohibition on corrupt conduct that intentionally obstructs or impedes an official proceeding. When interpreting a statute, courts look first to the statutory language, "giving the words used their ordinary meaning." *Lawson v. FMR LLC*, 571 U.S. 429, 440 (2014) (internal quotation marks omitted). If the statutory language is plain and unambiguous, this Court's "inquiry begins with the statutory text, and ends there as well." *National Ass'n of Mfrs. v. Department of Defense*, 138 S. Ct. 617, 631 (2018) (internal quotation marks omitted). Here, the meaning of "obstruct[], influence[], or impede[]" is controlled by the ordinary meaning of those words.

The verbs Congress selected in Section 1512(c)(2) reach broadly. For example, the words "obstruct" and "impede" can "refer to anything that 'blocks,' 'makes difficult,' or 'hinders.'" *Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018) (brackets omitted) (citing dictionaries). Similarly, "influence" includes "affect[ing] the condition of" or "hav[ing] an effect on." *Influence*, Oxford English Dictionary, *available at* http://www.oed.com. By their plain meaning, therefore, the string of verbs in Section 1512(c)(2) are properly viewed as "expansive" in their coverage. *See United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013).

Section 1512(c)'s structure confirms that straightforward interpretation. Section 1512(c) consists of two provisions, which both require the defendant to act "corruptly." First, Section 1512(c)(1) criminalizes "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding." Section 1512(c)(2), by contrast, applies more generally to any acts that "otherwise obstruct[], influence[], or impede[]" an official proceeding. The term "otherwise," consistent with its ordinary meaning, conveys that Section 1512(c)(2) encompasses misconduct that threatens an official proceeding "beyond [the] simple document destruction" that Section 1512(c)(1) proscribes. *Id.; United States v. Petruk*, 781 F.3d 438, 446-47 (8th Cir. 2015) (noting that

4

"otherwise" in Section 1512(c)(2), understood to mean "in another manner" or "differently," implies that the obstruction prohibition in that statute applies "without regard to whether the action relates to documents or records") (internal quotation marks omitted); *see also United States v. Ring*, 628 F. Supp. 2d 195, 224 n.17 (D.D.C. 2009) (noting that Section 1512(c)(2) is "plainly separate and independent of" Section 1512(c)(1), and declining to read "otherwise" in Section 1512(c)(2) "as limited by § 1512(c)(1)'s separate and independent prohibition on evidence-tampering"); *Otherwise*, Oxford English Dictionary, *available at* http://www.oed.com (defining otherwise as "in another way" or "in any other way"); *see also Gooch v. United States*, 297 U.S. 124, 127-28 (1936) (characterizing "otherwise" as a "broad term" and holding that a statutory prohibition on kidnapping "for ransom or reward or otherwise" is not limited by the words "ransom" and "reward" to kidnappings for pecuniary benefit); *Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004) (construing "otherwise" in 28 U.S.C. § 2466(1)(C) to reach beyond the "specific examples" listed in prior subsections, thereby covering the "myriad means that human ingenuity might devise to permit a person to avoid the jurisdiction of a court").

In this way, Section 1512(c)(2) criminalizes the same *result* prohibited by Section 1512(c)(1) – obstruction of an official proceeding – when that result is accomplished by a different *means, i.e.*, by conduct other than destruction of a document, record, or other object. *Cf. United States v. Howard*, 569 F.2d 1331, 1333 (5th Cir. 1978) (explaining that 18 U.S.C. § 1503, which criminalizes the result of obstructing the due administration of justice, provides specific means of accomplishing that result and then a separate catch-all clause designed to capture other means). Section 1512(c)(2), in other words, "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense involving documents or records under Section 1512(c)(1). *Petruk*, 781 F.3d at 447 (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014)); *cf. United States v. Aguilar*, 515 U.S. 593, 598 (1995) (describing similar

5

"[o]mnibus" clause in 18 U.S.C. § 1503 as a catchall that is "far more general in scope than the earlier clauses of the statute").

Consistent with that interpretation, courts have upheld convictions under Section 1512(c)(2) for defendants who attempted to secure a false alibi witness while in jail for having stolen a vehicle, *Petruk*, 781 F.3d at 440, 447; disclosed the identity of an undercover federal agent to thwart a grand jury investigation, *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009); lied in written responses to civil interrogatory questions about past misconduct while a police officer, *Burge*, 711 F.3d at 808-09; testified falsely before a grand jury, *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009); solicited information about a grand jury investigation from corrupt "local police officers," *Volpendesto*, 746 F.3d at 286; and burned an apartment to conceal the bodies of two murder victims, *United States v. Cervantes*, No. 16-10508, 2021 WL 2666684, at *6 (9th Cir. June 29, 2021) (unpublished); *see also United States v. Martinez*, 862 F.3d 223, 238 (2d Cir. 2017) (police officer tipped off suspects before issuance or execution of search warrants), *vacated on other grounds*, 139 S. Ct. 2772 (2019); *United States v. Ahrensfield*, 698 F.3d 1310, 1324-26 (10th Cir. 2012) (law enforcement officer disclosed existence of undercover investigation to target).

Here, Section 1512(c)(2) also applies to the Klein's conduct, which involved assaulting several law enforcement officers in an attempt to break into the U.S. Capitol through the "tunnel" at the Lower West Terrace.  In so doing, Klein hindered and delayed the certification of the Electoral College vote, an "official proceeding" as that term is defined in the obstruction statute. *See* 18 U.S.C. § 1515(a)(1)(B).  Because construing Section 1512(c)(2) to reach that conduct would neither "frustrate Congress's clear intention" nor "yield patent absurdity," this Court's "obligation is to apply the statute as Congress wrote it." *Hubbard v. United States*, 514 U.S. 695, 703 (1995) (internal quotation marks omitted).

      ii.      In contrast, reading Section 1512(c)(2) as limited only to obstructive acts akin to the document destruction or evidence tampering captured in Section 1512(c)(1) (as the defendant suggests) suffers at least three flaws. *First*, it would give rise to unnecessarily complex questions about what sort of conduct qualifies as "similar to but different from" the proscribed conduct "described in [Section 1512](c)(1)." *United States v. Singleton*, No. 06-CR-80, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006) (unpublished); *see id.* (concluding that Section 1512(c)(2) "require[s] some nexus to tangible evidence, though not necessarily tangible evidence already in existence"); *see also United States v. Hutcherson*, No. 05-CR-39, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006) (unpublished) (concluding that a violation of Section 1512(c)(2) requires proof that "an individual corruptly obstructs an official proceedings [*sic*] through his conduct in relation to a tangible object"). So construed, for example, Section 1512(c)(2) may not encompass false statements made to obstruct a proceeding – though courts have widely upheld convictions for such conduct. *See Petruk*, 781 F.3d at 447 (collecting cases).

      Limiting Section 1512(c)(2) in that way would effectively render that provision superfluous considering the comprehensive prohibitions against document and evidence destruction in both Sections 1512(c)(1) and 1519. *See Yates v. United States*, 574 U.S. 528, 541 n.4 (2015) (Section 1512(c)(1) provides a "broad ban on evidence-spoliation") (internal quotation marks omitted). By contrast, the straightforward interpretation that treats Section 1512(c)(2) as a catch-all for corrupt obstructive conduct not covered by Section 1512(c)(1) would "give effect to every clause and word" of Section 1512(c). *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013); *cf. United States v. Poindexter*, 951 F.2d 369, 385 (D.C. Cir. 1991) (explaining that limiting the catch-all provision in Section 1503's omnibus clause to obstructive acts "directed against individuals" would render that catch-all superfluous because "earlier, specific[] prohibitions" in Section 1503 "pretty well exhaust such possibilities") (internal quotation marks

7

omitted); *United States v. Watt*, 911 F. Supp. 538, 546 (D.D.C. 1995) (rejecting interpretation of the Section 1503 omnibus clause that would "serve no other purpose than to prohibit acts already prohibited in the first part of the statute" because that reading would "reduce[] the omnibus clause to mere redundancy").

The fact that Congress adopted a more general catch-all in Section 1512(c)(2) does not render superfluous other obstruction prohibitions found in Chapter 73, the criminal code's chapter on obstruction of justice. *See, e.g.*, *Montgomery*, 2021 WL 6134591, at *13 ("[T]he Court is also unpersuaded by Defendants' more general superfluity argument, which posits that, unless Section 1512(c)(2) is narrowly construed, much of Chapter 73 would be rendered superfluous."). Instead, the catch-all in Section 1512(c)(2) serves to capture "known unknowns." *Yates*, 574 U.S. at 551 (Alito, J., concurring) (quoting *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009)). Indeed, "the whole value of a generally phrased residual clause … is that it serves as a catchall" to ensure that the full range of conduct Congress sought to regulate comes within the statute, including "matters not specifically contemplated" by more specific provisions. *Beaty*, 556 U.S. at 860. In any event, "[r]edundancies across statutes are not unusual events in drafting," *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992), and the "rule[] of thumb" that statutes should be interpreted to avoid superfluity necessarily yields to the "cardinal canon" that Congress "says in a statute what it means and means in a statute what it says there," *id.* at 253-54.

Judicial treatment of the nearby omnibus clause in Section 1503, which prohibits "corruptly … influenc[ing], obstruct[ing], or imped[ing], or endeavor[ing] to influence, obstruct, or impede, the due administration of justice," 18 U.S.C. § 1503, is instructive. Drafted in "very broad language," the omnibus clause or "catchall provision," see *Aguilar*, 515 U.S. at 599, principally operates to criminalize obstructive conduct that falls outside the narrower prohibitions within Section 1503 and neighboring provisions. *See, e.g.*, *United States v. Sussman*, 709 F.3d 155, 168-

8

170 (3d Cir. 2013) (removing gold coins from safe-deposit box); *United States v. Frank*, 354 F.3d 910, 916-919 (8th Cir. 2004) (removing car to avoid seizure); *United States v. Lefkowitz*, 125 F.3d 608, 619-620 (8th Cir. 1997) (instructing employee to remove documents from a house); *United States v. Lester*, 749 F.2d 1288, 1295 (9th Cir. 1984) (hiding a witness); *United States v. Brown*, 688 F.2d 596, 597-598 (9th Cir. 1982) (warning suspect about impending search warrant to prevent discovery of heroin); *Howard*, 569 F.2d at 1333-1334 (attempting to sell grand jury transcripts). No court has held that the omnibus clause's broad language should be given an artificially narrow scope to avoid any overlap with Section 1503's other, more specific provisions. *Cf. Pasquantino v. United States*, 544 U.S. 349, 358 n.4 (2005) ("The mere fact that two federal criminal statutes criminalize similar conduct says little about the scope of either."). The same is true for the catch-all provision in Section 1512(c)(2).

Similarly, Section 1512(c)(2)'s partial overlap with other obstruction statutes does not render those other provisions superfluous. For example, the omnibus clause in 1503 and the congressional obstruction provision in 1505 both reach an "endeavor[] to influence, obstruct, or impede" the proceedings – a broader test for inchoate violations than Section 1512(c)(2)'s "attempt" standard. *See United States v. Sampson*, 898 F.3d 287, 301 (2d Cir. 2018) ("[E]fforts to witness tamper that rise to the level of an 'endeavor' yet fall short of an 'attempt' cannot be prosecuted under § 1512."); *United States v. Leisure*, 844 F.2d 1347, 1366-1367 (8th Cir. 1988) (collecting cases recognizing the difference between "endeavor" and "attempt" standards). Section 1519, which covers destruction of documents and records in contemplation of an investigation or agency proceeding, does not require a "nexus" between the obstructive act and the investigation or proceeding – but Section 1512(c)(2) does. Again, the existence of even "substantial" overlap is not "uncommon" in criminal statutes. *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014). But given that Sections 1503, 1505, and 1519 each reach conduct that Section

9

1512(c)(2) does not, the overlap provides no reason to impose an artificially limited construction on the latter provision. *See, e.g.*, *Sandlin*, 2021 WL 5865006, at \*8 ("[T]he fact that there is overlap between § 1512(c)(2) and the rest of § 1512, or other provisions in Chapter 73, is hardly remarkable.").

Importing into Section 1512(c)(2) a nexus-to-tangible-evidence-or-documents requirement would require inserting an extratextual gloss that would render the verbs in Section 1512(c)(2) nonsensical. *See Dean v. United States*, 556 U.S. 568, 572 (2009) (courts "ordinarily resist reading words or elements into a statute that do not appear on its face") (internal quotation marks omitted). The *actus reus* that those verbs encompass is obstructing, influencing, and impeding; a defendant cannot "obstruct" a document or "impede" a financial record. *Cf. Yates*, 574 U.S. at 551 (Alito, J., concurring) (rejecting interpretation of "tangible object" in Section 1519 that would include a fish in part because of a mismatch between that potential object and the statutory verbs: "How does one make a false entry in a fish?"); *id.* at 544 (plurality opinion) ("It would be unnatural, for example, to describe a killer's act of wiping his fingerprints from a gun as 'falsifying' the murder weapon.").

iii. Because "the statutory language provides a clear answer," the construction of Section 1512(c)(2) "ends there" and it is unnecessary to resort to legislative history. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999); *see Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 599 (2011) (same); *see also United States v. De Bruhl-Daniels*, 491 F. Supp. 3d 237, 251-52 (S.D. Tex. 2020) (declining to consider Section 1512's legislative history). Regardless, the legislative history of Section 1512(c)(2) – particularly when considered alongside the history of Section 1512 more generally – provides no support for a different conclusion. *See, e.g.*, *Montgomery*, 2021 WL 6134591, at \*15-17.

When Congress in 1982 originally enacted Section 1512, that legislation did not include what is now Section 1512(c). *See* VWPA, Pub. L. No. 97-291, § 4(a), 96 Stat. 1248, 1249-1250. Its title then, as now, was "Tampering with a witness, victim, or an informant." *Id.*; 18 U.S.C. § 1512. As that title suggested, Section 1512 as originally enacted targeted conduct such as using intimidation, threats, or corrupt persuasion to prevent testimony or hinder, delay, or prevent communication of information to law enforcement or the courts as well as intentionally harassing another person to hinder, delay, or prevent that person from taking certain actions. *See* Pub. L. No. 97-291, § 4(a) (now codified as Section 1512(b) and Section 1512(d)).

Twenty years later, following the collapse of the Enron Corporation, Congress passed the Sarbanes-Oxley Act of 2002. Pub. L. No. 107-204, 116 Stat. 745; *see Yates*, 574 U.S. at 535 (plurality opinion). That legislation, which principally aimed to "prevent and punish corporate fraud, protect the victims of such fraud, preserve evidence of such fraud, and hold wrongdoers accountable for their actions," S. Rep. No. 107-146, at 2 (2002), included several different provisions, *id.* at 11 (describing different components of the law); *see also* 148 Cong. Rec. H4683-84 (daily ed. July 16, 2002) (outlining new provisions). Foremost among them were two new criminal statutes, 18 U.S.C. § 1519 and 18 U.S.C. § 1520, which were intended to "clarify and close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence and the preservation of financial and audit records." S. Rep. No. 107-146, at 14. The Senate Judiciary Committee Report discussed those two provisions in detail. *See id.* at 14-16.

By contrast, the Sarbanes-Oxley Act's legislative history provides limited explanation of Congress's objective in enacting Section 1512(c). The only discussion of Section 1512 in the Senate Judiciary Committee Report, for example, noted that the pre-existing prohibition in Section 1512(b) made it a crime to induce "another person to destroy documents, but not a crime for a person to destroy the same documents personally"—a limitation that "forced" prosecutors to

11

"proceed under the legal fiction that the defendants [in then-pending *United States v. Arthur Andersen*] are being prosecuted for telling other people to shred documents, not simply for destroying evidence themselves." S. Rep. No. 107-146, at 6-7. Similarly, Senator Hatch observed that the legislation "broaden[ed]" Section 1512 by permitting prosecution of "an individual who acts alone in destroying evidence." 148 Cong. Rec. S6550 (daily ed. July 10, 2002) (statement of Sen. Hatch). At a minimum, nothing in these passing references casts doubt on the plain meaning of Section 1512(c)(2), which is reflected in the interpretation described above.

Section 1512(c) also differed from the newly enacted Sections 1519 and 1520 in that Congress added the former to an existing statutory section: Section 1512. *See Yates*, 574 U.S. at 541 (plurality opinion) (noting that, unlike Section 1519, Section 1512(c)(2) was placed among the "broad proscriptions" in the "pre-existing" Section 1512). Moreover, although Section 1512(c) as enacted in the Sarbanes-Oxley Act recognized two distinct prohibitions, *see* Pub. L. No. 107-204, § 1102, 116 Stat. 807 ("Tampering with a record *or* otherwise impeding an official proceeding") (emphasis added; capitalization altered), Congress did not amend Section 1512's title. That title, "Tampering with a witness, victim, or an informant," § 1512, thus encompassed the pre-existing provisions aimed at a defendant's obstructive conduct directed toward another person,[1] but did not reflect the newly enacted prohibitions in Section 1512(c) that criminalized a defendant's own obstructive act, either through destroying documents (§ 1512(c)(1)) or otherwise impeding a proceeding (§ 1512(c)(2)). *See Yates*, 574 U.S. at 541 n.4 (plurality opinion) (noting

---

[1] *See* § 1512(a) (applies to killing, attempting to kill, or using physical force or the threat of physical force against a person to prevent testimony or induce a witness to withhold information); § 1512(b) (applies to using intimidation, threats, or corrupt persuasion against a person to prevent testimony or hinder, delay, or prevent communication of information to law enforcement or the courts); § 1512(d) (applies to intentionally harassing another person to hinder, delay, or prevent that person from taking certain actions).

that Congress added Section 1512(c)(1), which covered evidence-spoliation, to Section 1512 "even though § 1512's preexisting title and provisions all related to witness-tampering").

Section 1512(c)'s legislative and statutory history thus offers two reasons to interpret Section 1512(c)(2) consistently with its plain text and structure. First, Section 1512(c) aimed at closing a "loophole" in Section 1512: the existing prohibitions did not adequately criminalize a defendant's *personal* obstructive conduct *not* aimed at another person. *See* 148 Cong. Rec. S6550 (daily ed. July 10, 2002) (statement of Sen. Hatch). Read together in this light, Section 1512(c)(1) criminalizes a defendant's firsthand destruction of evidence (without having to prove that the defendant induced another person to destroy evidence) in relation to an official proceeding, and Section 1512(c)(2) criminalizes a defendant's firsthand obstructive conduct that *otherwise* impedes or influences an official proceeding (though not necessarily through another person). *See Burge*, 711 F.3d at 809-10. Second, no substantive inference is reasonably drawn from the fact that the title of Section 1512 does not precisely match the "broad proscription" it in fact contains, given that the Sarbanes-Oxley Act unequivocally and broadly entitled the new provisions now codified in Section 1512(c), "Tampering with a record *or* otherwise impeding an official proceeding." Pub. L. No. 107-204, § 1102, 116 Stat. 807 (emphasis added; capitalization altered). Section 1512's title is more limited simply because Congress did not amend the pre-existing title when it added the two prohibitions in Section 1512(c) in 2002. *Cf. Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947) (describing "the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text").

Here, the allegations in the Indictment, which track the statutory language, more than adequately informed the defendant about the charge against him nothing more was or is required. *See, e.g.*, *United States v. Williamson*, 903 F.3d 124, 130-131 (D.C. Cir. 2018).

Count Thirty-Four sufficiently alleges a violation of Section 1512(c)(2) by tracking the provision's "operative statutory text." *Williamson*, 903 F.3d at 130. It is well-settled that it is "'generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Id.* (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). The indictment in this case therefore did not need to more specifically allege that the obstruction took the form of taking some action with respect to a document. *Id.*; *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 108-109 (2007). In other words, the indictment's allegations, by charging the operative statutory text, permissibly embrace two theories: (1) that defendants obstructed an official proceeding by taking some action with respect to a document; and (2) that defendants obstructed an official proceeding without taking some action with respect to a document. Even a ruling finding the second theory invalid would leave the first theory intact. For that reason alone, at this stage in the proceedings, dismissal of Count Thirty-Four would be unwarranted.

## CONCLUSION

For the foregoing reasons, and any additional reasons as may be cited at a hearing on this motion, the government respectfully requests that the defendant Klein's motion be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

```
                    BY:    /s/
                    KIMBERLY L. PASCHALL
                    Assistant United States Attorney
                    Capitol Siege Section
                    D.C. Bar No. 1015665
                    601 D Street, N.W.,
                    Washington, D.C. 20530
                    202-252-2650
                    Kimberly.Paschall@usdoj.gov
```