IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) |
| v. | ) Criminal No. 1:21-CR-00040-TNM ) ) |
| **FEDERICO GUILLERMO KLEIN,** | ) ) |
| **Defendant.** | ) ) ) |

### DEFENDANT FEDERICO KLEIN'S SENTENCING MEMORANDUM

No one person is responsible for the attack on the Capitol on January 6, 2021. Yet since his arrest in early March of 2021, the government has portrayed Defendant Federico Guillermo Klein (a/k/a "Freddie") as playing a disproportionate role in the events that day: because he is a retired Marine; because he was a presidential appointee of Donald J. Trump in the State Department; because he had been entrusted with a security clearance. What the government has steadfastly refused to ignore is that the evidence of Mr. Klein's actions on January 6, 2021, does not support the outsized role he has been accused of playing. Yes, the Court has now found that Mr. Klein was present in the West Terrace Tunnel on January 6, 2021. Yes, the Court has now found that Mr. Klein's interactions with law enforcement in the Tunnel warrant convictions under 18 U.S.C. § 111(a). And by virtue of the conduct that gave rise to those convictions, the Court has similarly found Mr. Klein guilty of additional felonies. But – and without diminishing the seriousness of the conduct with which he has now been found guilty – Mr. Klein is in fact no different than the thousands of other protestors to have now been charged with similar conduct on January 6, 2021.

Accordingly, Mr. Klein should be sentenced for his actual role in the events of the day, and not the more egregious conduct of others with which the government would have Mr. Klein

be found guilty by association. Respectfully, Mr. Klein suggests that a sentence of forty (40) days imprisonment, with credit for time served while detained pending trial, and thirty-six (36) months of probation, accomplish the goals of the Court's statutory obligation to, "impose a sentence sufficient, but not greater than necessary, to comply with" federal sentencing goals and guidelines. 18 U.S.C. § 3553(a)

I. **FACTUAL BACKGROUND**

Rather than relitigate the entirety of the events of one of the most tragic events in our nation's history, counsel for Mr. Klein intends to briefly address Mr. Klein's specific actions on that day. On January 6, 2021, Mr. Klein found himself in a tunnel leading into the Capitol Building on the Lower West Terrace. Mr. Klein did not don paramilitary gear, nor did he attempt to hide his identity, nor did he bring weapons or any other dangerous materials that he would have known were likely to injure anyone he might encounter at the Capitol Grounds or damage the Capitol grounds in any way.

Many individuals were in this enclosed space. The group inside the tunnel engaged in varying levels of physical encounters with police officers. Mr. Klein primarily was convicted for his presence in the area, his handling of a police riot shield which incidentally came into contact with police officers and which Mr. Klein never used in an offensive/attacking manner, brief encounters with two Capitol Police officers, and statements he shouted during these encounters. The Court noted that, "while [Mr. Klein] has been convicted of numerous felonies . . . I think most, if not all of those felonies, were either nonviolent or on the impeding or interfering the [sic] end of the spectrum versus more. . . violent assaults." Transcript, Jul. 20, 2023, p. 71:12-16.

## II. APPLICATION OF SECTION 3553(A) FACTORS

18 U.S.C. § 3553(a) requires the Court to, "impose a sentence sufficient, but not greater than necessary, to comply with" federal sentencing goals and guidelines. The section lists factors which intend to assist the Court in imposing a "sufficient, but not greater than necessary" sentence. Each factor is addressed in turn in the subsections below.

    a. *Nature and circumstances of the offense.*

Mr. Klein readily admits that the events of January 6, 2021 are abhorrent. Mr. Klein regrets his role in the events of that day. Mr. Klein will be sentenced because of his individual actions and participation on that day. However, no one person can be held responsible for the events of that day, and while Mr. Klein was present in an area which saw a long and intense skirmish between Capitol Police and rioters, Mr. Klein should be held responsible for his actions and his alone.

In the tunnel, many individuals engaged in violence and aggression towards members of the Capitol Police. However, Mr. Klein was never accused of such violence, and the Court very accurately has found that Mr. Klein did not engage in violence or use a dangerous or deadly weapon simply because he briefly possessed a riot shield.

    b. *History and characteristics of the defendant.*

Mr. Klein was born and raised in the Washington, D.C. area, which instilled in him a love of the country. PSR ¶ 140. Although his parents divorced when he was eight years old, both parents were integral in raising him and his brother Christian and his family situation has always been stable and normal. PSR ¶¶ 142-144. Mr. Klein served the country honorably as a member of the United States Marine Corp from February 2003 to November 2012. PSR ¶ 158. Mr. Klein was deployed to Iraq as a combat engineer from March 2005 to September 2005. PSR ¶ 158.

3

Mr. Klein received Tinnitus in his left ear from his military and receives military disability compensation for the condition. PSR ¶ 147. Mr. Klein was honorably discharged in November 2012. PSR ¶ 158. After his tenure in the military, Mr. Klein continued to serve the country as a Department of State desk officer specializing in the South American region, a GS-12 position appointed by the President. PSR ¶ 160. Mr. Klein served in this position from January 2017 until January 2021. PSR ¶ 160.

The Court should look no further than the words of his brother Christian when considering Mr. Klein's character: Christian informed the pretrial services officer that Mr. Klein loves the country, that Mr. Klein's actions on January 6, 2021 were wholly out of character, and that Mr. Klein does not pose a threat to society even though he owes a debt to society for his actions. PSR ¶ 143.

In addition, numerous members of Mr. Klein's family and support group have written letters in support validating his brother's view of his character (all such letters will be filed under seal).

   c. *Seriousness of the offense, respect for the law, and just punishment.*

As stated herein, Mr. Klein readily admits that the offenses he committed are serious. However, these offenses do not reflect Mr. Klein's true character. Mr. Klein has no relevant criminal history as reflected by a criminal history score of zero in his Presentence Report. Further, Mr. Klein remained on home confinement and personal recognizance without issue, reflecting a clear respect for the law. Further, the Court has released Mr. Klein on personal recognizance awaiting sentencing, which many of his co-defendants did not receive.

d. *Deterrence to criminal conduct and protection from further crimes.*

As stated herein, Mr. Klein has no relevant criminal history. While the most violent, dangerous, and/or incendiary participants of January 6, 2021 face significant prison time, Mr. Klein's actions do not warrant such a sentence. Further, Mr. Klein's own history and the unique nature of the events of January 6, 2021 demonstrate that Mr. Klein is not at any risk of participating in future illegal conduct. As such, there is no need for deterrence or protection from further crimes that need to be factored into Mr. Klein's sentence.

e. *Need for treatment and training.*

Mr. Klein is an occasional drinker. PSR ¶ 151. Mr. Klein smoked marijuana in social settings in his college years, but beyond that Mr. Klein has not used any illicit substances. PSR ¶ 151. Mr. Klein is mentally stable and has not been diagnosed with any mental conditions, nor is he aware of any mental conditions which run in his family. PSR ¶ 149.

f. *Sentences available.*

The first offense of conviction ("Assaulting, resisting, or impeding certain officers or employees" in violation of 18 U.S.C. § 111(a)(1)) has two possible maximum charges. Where such assault constitutes simple assault, the convicted faces a maximum fine of $250,000 or not more than one (1) year imprisonment, or both. Where the violations amount to either physical contact with the victim or were done with the intent of committing another felony, the convicted faces a maximum fine of $250,000 or not more than eight (8) years of imprisonment, or both. Mr. Klein was convicted on six counts of violating 18 U.S.C. § 111(a)(1). However, the Court did not find that Mr. Klein himself contacted any officers for all but two of the 111(a)(1) convictions. *See* Transcript of Oral Ruling, 26:9-12 ("I find the fifth element because [Mr. Klein] was acting with the intent to commit civil disorder. So even if he didn't physically touch

5

an officer for this count, the element is still met."); 28:24-25, 29:1-4 ("The rioters are physically pushing against the officers, but Mr. Klein was also acting with the intent to commit civil disorder.") (Jul. 20, 2023). This means that, for reasons outlined later in the memorandum, the proper penalty is no more than one (1) year imprisonment.

The second offense of conviction ("attempting to and in fact corruptly obstructing, influencing, and impeding an official proceeding, that is, a proceeding before Congress [] in violation of 18 U.S.C. § 1512(c) and 2.") carries a maximum fine of $250,000, not more than twenty (20) years imprisonment, or both.

The third offense of conviction ("committing or attempting to commit an act to obstruct, impede, and interfere with a law enforcement officer lawfully engaged in the performance of his official duties, incident to and during the commission of a civil disorder which in any way obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function, in violation of 18 U.S.C. § 231(a)(3)") carries a maximum fine of $250,000, not more than five (5) years of imprisonment, or both.

The fourth offense of conviction ("knowingly and with intent to impede and disrupt the orderly conduct of Government business and official functions, engaging in disorderly and disruptive conduct in and within such proximity to a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was temporarily visiting, when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions, in

violation of 18 U.S.C. § 1752(a)(2)) carries a maximum fine of $100,000, not more than one (1) year of imprisonment, or both.[1]

The fifth offense of conviction ("knowingly engaging in an act of physical violence against any person and property in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was temporarily visiting, in violation of 18 U.S.C. § 1752(a)(4)") carries a maximum fine of $100,000, not more than one (1) year of imprisonment, or both.[2]

The sixth and seventh offenses of conviction are two misdemeanors which fall under the violent entry and disorderly conduct subsections of Capitol Grounds specific offenses (40 U.S.C. § 5104(e)(2)(D), (G)). Both counts face a maximum fine of $5,000, not more than six (6) months imprisonment, or both.

    g. *Need to avoid sentencing disparities.*

Based upon the government's sentencing chart for individuals sentenced in relation to the events of January 6, 2021, the longest sentence for a defendant whose most serious offense was 18 U.S.C. § 1512(c)(2) is ninety (90) months imprisonment, but sentences have varied down to no imprisonment; twelve (12) months home detention; thirty-six (36) months' probation; 100 hours' community service; and $2,000. For 18 U.S.C. § 111(a)(1), sentences have vastly varied; the longest sentence has been one-hundred and seventy (170) months imprisonment and varied down to eight (8) months imprisonment.

---

[1] 18 U.S.C. § 1752(b)(1) imposes a term of imprisonment of not more than ten (10) years if the Court finds either use of a deadly modifier or significant bodily injury to the victim. Since the Court did not find either applied to Mr. Klein, use of this section is not appropriate.

[2] 18 U.S.C. § 1752(b)(1) imposes a term of imprisonment of not more than ten (10) years if the Court finds either use of a deadly modifier or significant bodily injury to the victim. Since the Court did not find either applied to Mr. Klein, use of this section is not appropriate.

    *h. Need to provide restitution.*

Mr. Klein agrees to voluntarily pay the recommended restitution amount. The Presentence Report indicates that restitution shall be ordered but was not calculated prior to the Presentence Report's completion. PSR ¶¶ 213-214.

**III.**    **STATUTORY AND GUIDELINE ANALYSIS**

The statute grants the Court the ability to adjust the sentencing range calculated by the statute to ensure that an appropriate sentence is reached, and requires the Court to consider factors that would ensure a sentence which accurately reflects a convicted individual's actual level of culpability. *See* 18 U.S.C. § 3553(b) ("[T]he court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."). The Presentence Investigation Report, relying upon misapplied criminal enhancements, suggest that the appropriate range of imprisonment for Mr. Klein is between one-hundred and eight (108) months and one-hundred and thirty-five (135) months. PSR ¶ 176. Ultimately, the statute orders the Court to take measures which ensure that a sentence reflects a convicted individual's actual level of culpability. *See* 18 U.S.C. § 3553(b). For the reasons contained herein, the Court should refuse to apply the proposed range and instead find that the more accurate sentence would have a base level of twenty (20) and a proposed range of thirty-three (33) to forty-one (41) months imprisonment.

    *a. Section 2J1.2(b)(1)(B). Does Not Apply.*

The Probation Officer recommends an eight (8) level enhancement, based upon "[t]he offense involved causing or threatening physical injury to a person, or property damage, in order

to obstruct the administration of justice, to wit: [Mr. Klein] caused injury or threatened to cause injury to multiple law enforcement officers, therefore, eight levels are added. USSG §2J1.2(b)(1)(B)." PSR ¶ 72.  However, relevant commentary on this section disputes whether such an application is appropriate.  *See* USSG §2J1.2(b)(1)(B), "Application Notes" ("The inclusion of 'property damage' under subsection (b)(1) is designed to address cases in which property damage is caused or threatened as a means of intimidation or retaliation (e.g., to intimidate a witness from, or retaliate against a witness for, testifying). Subsection (b)(1) is not intended to apply, for example, where the offense consisted of destroying a ledger containing an incriminating entry.").  This Court should find that the Sentencing Commission's guidance on the matter as controlling and refuse to apply the eight (8) level enhancement, on the basis that the government's attempted use of this section would usurp the purpose of §2J1.2(b)(1)(B).  *See Stinson v. United States*, 508 U.S. 36, 44-45 (1993) (Supreme Court holding that commentary should, "be treated as an agency's interpretation of its own legislative rule.").  *See also id.* at 38 (Supreme Court holding that commentary which, "interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.").  It must be noted that if the Court were to adopt the government's proposed reading of this section, anyone convicted of 18 U.S.C. § 1512(c)(2) would qualify for the eight (8) level enhancement, effectively turning the offense into a base offense level twenty-two (22) offense and creating a significantly higher minimum recommend imprisonment of forty-one (41) to fifty-one (51) months.

      With respect to Mr. Klein's conduct, a plain reading of the Guidelines confirms that it is not intended to apply to, "threatening to cause physical injury to [any] person." Rather, the Guideline is clearly intended to apply only to those persons who serve also as participants in the

9

administration of justice, such as witnesses or judicial officers. As the commentary to § 2J1.2 makes clear, reference to "property damage" was added to subsection (b)(1)(B) to include cases where, for example, a witness's property is destroyed, or threatened to be destroyed, for the purpose of intimidation. Consider, for example, the 1991 Amendment to the Guideline which, "clarifies the types of circumstances to which §§ 2J1.2(b)(1) and 2J1.2(c)(1) apply" and for which each of the amendments clearly apply to participants in the proceeding. Ultimately, this would require proving an intent to threaten the participants of the electoral college certification, and the facts adduced at trial do not support this.

However, even if the Court concluded that Mr. Klein's offenses of conviction involved, "threatening to cause physical injury to a person . . . in order to obstruct the administration of justice," because the certification of the electoral college vote is not "the administration of justice," this enhancement may not be applied. The "administration of justice" is in fact a legal term of art, so much so that it is defined within Black's Law Dictionary and has been acknowledged by this Circuit: "The maintenance of right within a political community by means of the physical force of the state" and "the state's application of the sanction of force to the rule of right." *Administration of Justice*, Black's Law Dictionary (11th ed. 2019), quoted in *United States v. Seefried*, 2022 U.S. Dist. LEXIS 196980, at *5 (D.D.C. Oct. 29, 2022). Similarly, "due administration of justice" is defined as "[t]he proper functioning and integrity of a court or other tribunal and the proceedings before it in accordance with the rights guaranteed to the parties." *Id.* A plain of § 2J1.2(b)(1)(B) would then suggest that the enhancement applies only where the obstruction of a judicial or quasi-judicial tribunal has occurred, and such is not the case with the electoral college certification, and such an interpretation has been applied in this Circuit. *See Seefried*, 2022 U.S. Dist. LEXIS 196980, at *31-32 ("If the Sentencing Commission had

10

foreseen the Capitol breach, it may well have included 'official proceeding' in the text of § 2J1.2. But the Commission did not. Given that the Court should interpret the Guidelines using traditional tools of statutory interpretation, this Court declines to rewrite § 2J1.2 to say what it does not. If the Commission wishes to expand the text of the Guideline to include official proceedings such as the electoral certification, 'it may seek to amend the language of the guidelines by submitting the change for congressional review.'" (quoting *United States v. Winstead*, 890 F.3d 1082, 1092 (D.C. Cir. 2018)).

    b. *Section 2J1.2(b)(2) Does Not Apply.*

The Probation Officer similarly recommends a three (3) level enhancement because the offense, "resulted in the substantial interference with the administration of justice, specifically, the proceeding before Congress, to wit: Congress's certification of the Electoral College vote[.] USSG § 2J1.2(b)(2)." PSR ¶ 73. As stated herein, "administration of justice" is a legal term of art and its definitions do not fall into any category whereby it can be interpreted to apply to Mr. Klein. As such, the Court should reject this proposed enhancement.

    c. *Section 2A2.2 Does Not Apply.*

The Draft Presentence Investigation Report repeatedly asserts that the conduct with which Mr. Klein was convicted constitutes, "aggravated assault," such that the base offense level for his convictions under Counts 9, 17, 27, 31, 32, 35, 43, and 51 should be calculated pursuant to USSG § 2A2.2. PSR ¶¶ 79, 93, 100, 107. However, § 2A2.2 provides that aggravated assault, "means a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury . . . with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony."

The PSR advances very limited explanations to their reasoning for classifying each assault as an "aggravated assault" such that it would warrant use of § 2A2.2, namely by asserting that Mr. Klein intended to commit another felony. *See* PSR ¶ 79 ("Count 17 involved physical contact with the victim and intent to commit another felony. [D]efendant Klein used both of his arms and his body to forcefully push against officers. As a result of defendant Klein's pushing, Officer A.G. fell to the ground."). However, Courts in this District confronting the same PSR recommendation in similar circumstances have refused to do so. Most notably, Judge Amy Berman Jackson denied such a use of the aggravated assault guidelines in a January 6 case where the underlying assault involved use of large metal sign as a dangerous weapon where it was thrown at a defensive line of police officers. *See United States v. Hamner*, 21-CR-00689-ABJ. Judge Berman Jackson disagreed with the government's attempt to use the ongoing civil disobedience as "another felony" to apply the cross-reference aggravated assault enhancement, criticizing it as an attempt at applying circular logic and reasoning:

> It strikes me that if the Commission is asking: 'Did you commit the assault with the intent to commit some other offense?' [The Commission] didn't mean with the intent to commit the exact same assault, just charged differently. [The Commission] could have easily defined 'another offense' as any offense with different elements that's a different offense, but they didn't. It's also important to note that the cross reference says you go to aggravated assault if the assault on the police officer involved the intent to commit another felony, not the same intent needed to satisfy the elements of another felony, [and] not that it was committed during the commission of another felony. This suggests that the guideline is meant to cover just the situation in the cases you cited, *where the assault on the police officer is intended to facilitate or further or advance or succeed in the commission of or evasion of apprehension for a second, different crime*.

*United States v. Hamner*, Sentencing Transcript, 20-21 (Sep. 23, 2022) (emphasis added).

More recently, and relying upon Judge Berman Jackson's analysis of the cross-reference, Judge Reggie Walton issued a significant downward departure in *United States v. Wren*, 1:21-cr-00599-RBW.  *See Donnie Wren's Sentencing Memorandum and Request for a Downward Variance*, pp. 7-16 1:21-cr-00599-RBW (ECF 154) (Oct. 10, 2023).[3]  This downward departure came even though the Court found that Mr. Wren engaged conduct that significantly impeded with police officers on the date of January 6, 2021.  Like with Mr. Klein, the Court noted that Mr. Wren did not engage in overtly violent conduct on that day, even though the government presented evidence that Mr. Wren's actions on that day were, at the very least, not incidental contact caused by being in a large crowd.  *See United States v. Wren*, 1:21-cr-00599-RBW, Transcript 10:2-11 (Jun. 26, 2023) (ECF 134) ("And since there is no indication that you actually engaged in any acts of violence or destruction of property, I will go along with that, even though I am troubled by your involvement in this case. I don't have any problems with people protesting. I think that is the American way. But it is quite another when you go to the extent that you impede the operations of police. I mean, you all are lucky that the police didn't take out guns and shoot you all.").  *See also* Press Release, Department of Justice, *Two Men from Mississippi and Alabama Sentenced for Actions During Jan. 6 Capitol Breach*, https://www.justice.gov/usao-dc/pr/two-men-mississippi-and-alabama-sentenced-actions-during-jan-6-capitol-breach (Oct. 16, 2023) ("[Co-defendant] and Wren then climbed up a railing to the Upper West Terrace and confronted a line of police officers using riot shields and attempting to clear the area. [Co-defendant] and *Wren pushed back against the police line, placing their hands on the officer's shields and leaning back into the police. Wren*

---

[3] The Docket Report reflects that on October 10, 2023, the Court in *Wren* applied a Downward Departure in response to ECF 154.  On October 23, 2023, Mr. Wren was sentenced to one year and one day of imprisonment, followed by twenty-four (24) months of supervised release.  The government had sought Mr. Wren to be sentenced to fifty-one (51) months of imprisonment.  *See Government's Sentencing Memorandum*, 1:21-cr-00599-RBW (ECF 158) (Oct. 10, 2023).

13

*leaned all his weight into the riot shield, preventing the police officer from advancing*. Wren's push against the riot shield was an early assault on the Terrace that instigated the fight between rioters and police attempting to clear the area.") (emphasis added).

Like the defendants in *Wren* and *Hamner*, any "another felony" that would apply to Mr. Klein for the underlying civil disobedience is not an independent felony to what he was already convicted of, and therefore applying the cross-reference to § 2A2.2 for aggravated assault on the basis of another felony is not appropriate.

    d. *Section 3A1.2 Does Not Apply.*

The Draft Presentence Investigation Report also suggests that a victim in this action was law enforcement and that the offenses with which Mr. Klein was convicted were motivated by the status of such law enforcement. Accordingly, the Draft Presentence Investigation Report recommends an enhancement of six (6) levels pursuant to § 3A1.2(b) of the U.S. Sentencing Guidelines.

Specifically, for the enhancement to apply, § 3A1.2(a) requires that the offense of conviction to have been, "motivated by" the victim's status as, "a government officer or employee." In the commentary, the Commission explains in pertinent part that, "motivated by such status," means that the offense of conviction was motivated by the fact that the victim was a government officer or employee. *Id.* cmt. n.3. The Commission goes on to provide an example, "where both the defendant and the victim were employed by the same government agency and the offense was motivated by a personal dispute." *Id.*

The government's theory of this case, were it to be credited, is not that Mr. Klein impeded the conduct of law enforcement because he had a grudge as against law enforcement. To the contrary, Mr. Klein was himself a government employee at the time of the offense. Rather, the

14

government's theory is that Mr. Klein joined the crowd in the Tunnel to facilitate entrance into the Capitol. The fact that the officers alleged to be victims in this case were law enforcement is incidental to the government's long-held assertion that Mr. Klein sought to interfere with the certification of the electoral college vote.

## CONCLUSION

For the reasons contained herein, Mr. Klein respectfully asks this Court to sentence him to forty (40) days of imprisonment with credit for time served during his pretrial detention, and thirty-six (36) months of probation.

**[SIGNATURE ON NEXT PAGE]**

Dated: October 27, 2023                           Respectfully submitted,

                                                       */s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
400 Fifth Street, Northwest, Suite 350
Washington, DC  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Federico Guillermo Klein*

16

## CERTIFICATE OF SERVICE

On October 27, 2023, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

            */s/ Stanley E. Woodward, Jr.*
            Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
            BRAND WOODWARD LAW, LP
            400 Fifth Street, Northwest, Suite 350
            Washington, DC  20001
            202-996-7447 (telephone)
            202-996-0113 (facsimile)
            Stanley@BrandWoodwardLaw.com