1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

2
_____

3
United States of America,        ) Criminal Action
                                 ) No. 1:21-cr-0040-TNM-8, 9
4                    Plaintiff,   )
                                 ) **Oral Ruling**
5       vs.                       ) (with Redactions)
                                 )
6       Steven Cappuccio and Federico  )
        Guillermo Klein,          ) Washington, D.C.
7                                 ) **July 20, 2023**
                    Defendants.   ) Time:  2:00 p.m.
8
_____

9
**Transcript of Oral Ruling** (with Redactions)
**Held Before
The Honorable Trevor N. McFadden
United States District Judge**

10

11

12
A P P E A R A N C E S

13
For the Government:      **Ashley Akers
                         Kaitlin Klamann
14                       Laura E. Hill**
                         UNITED STATES ATTORNEY'S OFFICE
15                       FOR THE DISTRICT OF COLUMBIA
                         601 D Street, Northwest
16                       Washington, D.C. 20579

17
On Behalf of the Defendant Steven Cappuccio:
                         **Marina T. Douenat**
18                       FEDERAL PUBLIC DEFENDER'S OFFICE
                         Western District of Texas
19                       727 E. Cesar E. Chavez Boulevard
                         San Antonio, Texas 78206

20

21
On Behalf of the Defendant Federico Guillermo Klein:
                         **Stanley E. Woodward, Jr.**
                         BRAND WOODWARD LAW, LP
22                       400 Fifth Street, Northwest
                         Washington, D.C. 20001

23

24

25

Stenographic Official Court Reporter:
                            Nancy J. Meyer
                            Registered Diplomate Reporter
                            Certified Realtime Reporter
                            333 Constitution Avenue, Northwest
                            Washington, D.C. 20001
                            202-354-3118

Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.

1                    P R O C E E D I N G S

2          THE COURTROOM DEPUTY:  Your Honor, this is Criminal

3    Case 21-40, United States of America v. Steven Cappuccio and

4    Federico Guillermo Klein.

5          Counsel, please come forward to identify yourselves for

6    the record, starting with the government.

7          MS. AKERS:  Good afternoon, Your Honor.  Ashley Akers

8    on behalf of the United States.  With me at counsel table is

9    co-counsel Laura Hill, Kaitlin Klamann; special agents

10   Benjamin Fulp and Jon Comottor; and paralegal specialist

11   Kyle Clements.

12         THE COURT:  Good morning -- or good afternoon, folks.

13         MS. DOUENAT:  Good afternoon, Your Honor.  Marina

14   Douenat on behalf of Mr. Cappuccio.

15         And I know that Mr. Stanley Woodward was here earlier.

16   And his client is here, Your Honor.

17         THE COURT:  Yeah.  Good afternoon, Ms. Douenat.  And

18   good afternoon, Mr. Cappuccio.

19         Good afternoon, Mr. Klein.

20         Ms. Akers, approach.

21         (Bench conference held on the record.)

22         THE COURT:  We talked about making sure he was here.

23         MS. AKERS:  I consulted and confirmed with special

24   counsel that his grand jury was earlier today.  And they

25   confirmed, and he confirmed that he would be here.

1          I believe my Special Agent Ben Fulp saw him in the

2     hallway about a few minutes before 2:00.  So he's out of

3     grand jury, but I don't know where he is, though.

4               THE COURT:  Nope.  That's not going to work.

5               MS. AKERS:  But we did confirm that the grand jury

6     was moved the day of your order.

7               THE COURT:  All right.  Thank you.

8               MS. AKERS:  Yep.

9               (Proceedings held in open court.)

10              (REPORTER'S NOTE:  Mr. Woodward enters.)

11              MR. WOODWARD:  I'm sorry.  I wish that I could give

12    you more about what just happened in the last 20 minutes, but

13    I'm happy to do it, actually, just ex parte.

14              THE COURT:  You can do it.  I'm unsealing this.  You

15    may proceed.  Do you want to do it ex parte, or do you think

16    you're constrained to do it ex parte by Rule 6(e)?

17              MR. WOODWARD:  That's my concern.

18              THE COURT:  Well, I'm relieving you of your

19    obligation.  You may proceed.

20              MR. WOODWARD:  The choice that I was put to was to

21    leave my client in the grand jury while he was being asked

22    specifically about questions of executive privilege, which were

23    saved until now, despite numerous representations from the

24    special counsel's office that I would be released to attend

25    this hearing before 2 o'clock.  And we had discussions even

1    about starting as early as 9 o'clock this morning so that we

2    would not be in this precise situation.

3         And, Your Honor, I apologize, but I could not leave -- I

4    felt that I could not leave my client in the grand jury when he

5    was being asked questions that potentially involved executive

6    privilege, which is not his privilege to waive.  And that's why

7    I'm late, sir.

8         THE COURT:  I understand.  I excuse you entirely.  I

9    think I made it clear to the government what I expected.  They

10   ignored my request.  I'm disappointed about this.  I mean,

11   talking about obstructions of official proceedings and the

12   government has not acted as I required in this case.  I'm upset

13   by that.

14        All right.  We can proceed.

15        You may have a seat.  Thank you for your presence here

16   today, Mr. Woodward.

17        As an initial matter, I am now summarily denying both

18   defendants' motions for judgment of acquittal as a matter of

19   law.  Where I find them guilty of counts charged in the

20   indictment, my reasoning for conviction should more than

21   justify denial of their motions.  Where I find the defendants

22   not guilty, I still think the government provided sufficient

23   evidence to present the charges to a finder of fact.

24        I make the following findings of fact and conclusions of

25   law in support of the Court's verdict in United States v.

1    Federico Klein and Steven Cappuccio.

2         This verdict is rendered in full recognition of the

3    standard jury instructions, including but not limited to the

4    government's burden to prove its case beyond a reasonable

5    doubt.  It is made having carefully considered the testimony

6    presented and the evidence and stipulations admitted during the

7    course of the trial.

8         For the most part, the parties agree on the elements of

9    the offenses as laid out in the government's trial brief, and I

10   use those here.  They disagree on two counts, obstruction and

11   assault, and I explained the elements I use for those below.

12        Before I begin, I want to make a few general remarks

13   about the credibility of the witnesses who testified before me.

14   Unlike most of the cases, this one overwhelming relied on

15   videotape evidence showing exactly what occurred during the

16   times in question.  Indeed, there are few questions here about

17   what occurred when.  The central questions are ones of intent

18   and the legal obligations of those actions.

19        This somewhat diminishes the importance of the

20   eyewitness testimony here.  I also note several eyewitnesses,

21   including some of the officers and case agents, at times

22   testified, at least in part, based on their review and

23   understanding of videos and photographs.

24        As a general matter, I found the testimony of the

25   government's witnesses to be credible.  To a person, they

1    struck me as trying to give an honest recollection of the

2    events to which they testified and were not motivated by bias

3    for or against any party.  Unless otherwise noted, I fully

4    credit their testimony in all essential respects.

5         As to the defense witnesses, I found Mike Ingersoll to

6    be a credible witness.  Indeed, his testimony largely

7    corroborated the government's evidence as to Mr. Cappuccio's

8    travel to D.C.  I will discuss my credibility determinations of

9    the expert witnesses and Mr. Cappuccio himself later on.

10        Before discussing the various charges against the

11   defendants, I note that the West Lawn, the lower west terrace,

12   and the west terrace tunnel were scenes of shocking violence

13   and hostility towards police by midafternoon on January 6th,

14   2021.  The government has introduced evidence of lengthy

15   standoffs, fights, and numerous attacks on officers throughout

16   the area.

17        Rioters sprayed officers with various chemical

18   munitions, threw objects such as fire extinguishers at them,

19   used their own shields against them, and used poles and other

20   weapons to strike them.  They also hurled insults and epithets

21   at them.  Both defendants observed these things.  Indeed, at

22   times they participated in some of these activities.  No police

23   officer should have had to endure those attacks without

24   provocation.

25        Within that context, I make the following specific

1     findings of fact and conclusions of law as to the charged

2     conduct.

3           First, I find that the government has properly

4     identified both defendants in the government exhibits showing

5     their actions and whereabouts on the Capitol Grounds on

6     January 6th, 2021.

7           Mr. Cappuccio has conceded as much.

8           As to Mr. Klein, I find that Special Agent Fulp

9     correctly identified him in the exhibits as the man

10    Mr. Woodward referred to as "our friend in the green jacket."

11          I also found that the Capitol Grounds were restricted as

12    outlined in Government's Exhibit 105 and testified to by

13    Lieutenant McCree and in stipulated testimony by Secret Service

14    Inspector Hawa in Government's Exhibit 1006.  Whether or not

15    the defendants were on -- were on proper notice of this fact

16    when they first entered the Capitol Grounds, I have no

17    difficulty in finding that at least by the time they each

18    entered the lower west terrace tunnel, they both were on proper

19    notice that they had entered a restricted area.

20          Even if they didn't see the sign posting, bike racks,

21    and snow fencing, they had seen police munitions, heard the

22    police LRAD systems ordering people to disperse, seen officers

23    struggling to evict people from the area, and witnessed others

24    climbing on scaffolding and through other self-evidently

25    nonpublic areas.

```
1          I'll turn first to Counts 9, 17, 19, 27, and 28, which
2     charge the two defendants with, at various times that day,
3     assaulting, resisting, opposing, impeding, or interfering with
4     certain officers in violation of 18 U.S.C. 111(a)(1) and/or
5     aiding and abetting others in those actions.
6          Count 9 relates to Mr. Klein and covers the time frame
7     from 2:32 p.m. to 2:34 p.m., or thereabouts, and involves his
8     activity on the west plaza.
9          The first element is that someone must assault, resist,
10    oppose, impede, intimidate, or interfere with a law enforcement
11    officer.  An assault means any intentional attempt to threaten
12    or inflict injury upon someone else when coupled with an
13    apparent present ability to do so.  An assault also requires a
14    finding by the Court that the defendant acted forcibly and
15    intended to inflict or intended to threaten injury.  The terms
16    resist, impose -- or oppose, impede, intimidate, and interfere
17    with carry their everyday, ordinary meanings.
18         Around this time, Mr. Klein had made his way to the very
19    front of a huge group of protesters who were pressing against a
20    fragile police line.  Officer Harvell testified that Mr. Klein
21    leaned -- learned -- I'm sorry -- leaned his shoulder in and
22    pushed against the officer who was trying to maintain the
23    police line.
24         Around this time, Officer Harvell and other officers are
25    shouting "Move back" repeatedly to the line of protesters.  And
```

1    I'm looking to the Government's Exhibit 410 at 2:32 and

2    21 seconds to 2:32 and 35 seconds.  Officer Harvell remembered

3    Mr. Klein's movement toward him as being intentional, forceful,

4    and aggressive.

5         While pushing into Officer Harvell, the video evidence

6    reveals Mr. Klein shouting, "I need support.  Let's go" and

7    something like:  You can't stop this or you can't stop us.

8    That's Government's Exhibit 410 at 2:32 and 41 seconds, to

9    2:33 and 20 seconds in Government's Exhibit 523 at 48 seconds.

10        In addition to Mr. Klein's actions, there were numerous

11   other rioters in his immediate vicinity also acting to break

12   the police line.  Some were acting quite violently, throwing

13   things at the officers, and self-evidently assaulting them.

14   Others, like the defendant, acted more to resist, obstruct, and

15   impede the officers by leaning into the officers, resisting

16   directions from the officers to move back, and physically

17   instructing the officers from moving the protest away from the

18   base of the lower west terrace.

19        At the very least, those rioters were resisting,

20   opposing, impeding, and interfering with officers.  Mr. Klein

21   was himself doing all of those actions.

22        The second element is that someone also does so

23   forcibly.  A person acted forcibly if he used force, attempted

24   to use force, or threatened to use force against the officer.

25        As I mentioned a moment ago, Officer Harvell testified

1  that the defendant acted forcefully, and I credit his

2  testimony.  I also think the video shows him straining against

3  Officer Harvell's baton and his person.  And I'm looking to

4  Government's Exhibit 410 at 2:32 and 35 seconds to 45 seconds

5  in Government's Exhibit 523 at 48 seconds.

6      Others around him are also acting with clear force in

7  their attacks on officers.

8      The third element is that someone did such acts

9  intentionally.

10      I also find that Mr. Klein acted intentionally here.  I

11  have carefully considered the suggestion that he was merely

12  being pushed by people behind him or that he just happened to

13  be in close proximity to Officer Harvell without acting

14  intentionally.

15      Ultimately, I reject these theories.  First, as I

16  suggested, I think Officer Harvell's credible testimony about

17  the defendant's conduct is inconsistent with the suggestion

18  that this was unintentional action.

19      Second, I think the defendant's statements -- you can't

20  stop us or this -- in asking for help from fellow rioters, are

21  fatal to any thought he may have been acting unintentionally.

22      I recognize he also said something like "God bless you

23  guys" to the officers; and I'm looking to Government's

24  Exhibit 410 at 3:23 and 45 seconds.  While that is suggestive

25  that he did not mean to assault them, he uttered it around the

1    same time he was pressing against Officer Harvell.

2         Perhaps Mr. Klein had a momentary change of heart, or

3    perhaps he was trying to ingratiate himself with the officer to

4    avoid being arrested for his misconduct.  Regardless, this one

5    statement does not counteract all the other evidence in the

6    other direction.

7         The fourth element is that any of the prohibited conduct

8    occurred against an officer who is then engaged in the

9    performance of his official duties.

10        This element is easily met, as Officer Harvell was in

11   uniform and clearly engaged in his duties as a member of the

12   Metropolitan Police Department at that time.

13        Indeed, as to all assaults alleged in this case, I

14   find that the victim officers were all, indeed, members of the

15   MPD or U.S. Capitol Police, wearing full uniform and

16   self-evidently engaged in the performance of their duties;

17   that is, protecting the U.S. Capitol and those inside from a

18   violent riot.

19        I will not mention this element for the successive

20   counts from here on, but I want to make it clear that I do find

21   this count as easily met for all 111(a) and (b) charges against

22   both defendants in this case.

23        Finally, the fifth element that someone must make

24   physical contact with the officer or act with the intent to

25   commit another felony.

1    Here, the defendant did make physical contact with

2    Officer Harvell, and there is no need to consider the other

3    felony option.

4    I, therefore, find Mr. Klein guilty of Count 9.  Since I

5    find him guilty as a principal, I do not also consider whether

6    he was guilty of aiding and abetting.

7    Count 17 charges Mr. Klein with assault on

8    Officer [sic] Gonell about 2:56 -- around 2:56 p.m. to

9    2:58 p.m. and aiding and abetting.

10    This count involves a legal dispute between the parties.

11    Mr. Klein argues that the government has not adequately

12    proven the identity of Officer Gonell and that the government

13    must do so because he is named in the indictment for this

14    count.

15    The government apparently made a strategic decision not

16    to call Officer Gonell.  While he was present during the

17    beginning of the trial, he did not testify.  His identity was

18    produced through Special Agent Fulp.

19    Special Agent Fulp identified -- testified that he

20    interviewed Officer Gonell telephonically and received an email

21    from him and that he had seen him in person before.  More,

22    Agent Fulp said while he interviewed Officer Gonell, the

23    officer was able to identify himself in the video footage

24    showing him close to Mr. Klein.

25    In my view, the video footage around this time is quite

1    chaotic, and the identification of Officer Gonell was based on

2    nothing more than pointing out a helmet, at least here at

3    trial.  That's Government's Exhibit 428 at 3:00 to 3:00 and

4    27 seconds in Government's Exhibit 501 at 6:21.  The helmet, to

5    me, is indistinguishable from those worn by other officers.

6        I think Agent Fulp was, essentially, relying on

7    Officer Gonell's own statements of his identity to Agent Fulp,

8    which would be hearsay.  Having listened carefully to

9    Agent Fulp's testimony, I am not convinced he did his own

10   analysis to identify which officer was Gonell.  In short, I'm

11   not satisfied that Agent Fulp has adequately identified

12   Officer Gonell through nonhearsay information.

13       And I want to make clear, I'm not finding any -- making

14   any adverse credibility determinations about Agent Fulp.  I

15   think he was actually pretty careful about how he testified and

16   admitted that he was primarily relying on Officer Gonell's

17   evidence to him.  So I'm not saying -- discrediting what

18   Agent Fulp said.  I just -- I think Agent Fulp was relying on

19   hearsay information to make that identification, and I can't

20   rely on that.

21       Because I'm not going to rely on Agent Fulp's

22   identification of Officer Gonell, Mr. Klein objects that

23   the government has failed to meet its burden of proof for

24   Count 17.

25       I allowed the parties to brief the issue of whether the

1    government must prove the specific identity of an officer when

2    it names that officer in an indictment, and both parties did

3    so.

4         I'm now satisfied that the government does not have to

5    prove the identity of Officer Gonell to prove a violation of

6    111(a) beyond a reasonable doubt.  The government's burden is

7    limited to proving five elements, which they list in their

8    trial brief and on page 4 of their supplemental brief.  And I'm

9    looking to ECF 680.  I note that Mr. Klein has not objected to

10   these elements but, rather, submits that proof of the officer's

11   identity is also necessary under the Fifth Amendment if it is

12   specified in the indictment.

13        None of the elements require the identity of a victim.

14   Rather, they speak in more general terms.  For example, the

15   first element requires the government to prove that the

16   defendant assaulted, resisted, opposed, impeded, intimidated,

17   or interfered with officers of the Metropolitan Police

18   Department or the U.S. Capitol Police.

19        And the fourth element requires the government to prove

20   that the person assaulted, resisted, opposed, or something

21   similar, and that the victim was an officer, an employee of the

22   United States who was engaged in the performance of his

23   official duties.

24        Similarly, the fifth element requires that the defendant

25   made physical contact with a person who's an officer or an

1    employee of the United States engaged in his official duties at

2    that time.

3        As Judge Hogan explained in a different context -- that

4    is, a motion to dismiss an indictment for a 111(a) charge --

5    the government, quote, need not prove the individual identity

6    of the law enforcement officer, but, rather, that the person --

7    that is, the defendant -- obstructed, impeded, or interfered

8    with -- I'm sorry, that the person the defendant obstructed,

9    impeded, or interfered with is a law enforcement officer.  And

10   that's from *United States v. Sargent*, 2022 WL 1124817, at *4

11   from this court, April 14th, 2022.

12       In other words, the 111(a) charge speaks to the identity

13   of a particular victim, but -- I'm sorry, speaks not to the

14   identity to a particular victim, but to his employment as a law

15   enforcement officer during the assault.

16       Another way of saying this is that the officer identity

17   is not an essential element of the 111(a) charge.  As other

18   circuits have reasoned, quote, any variance between the

19   indictment and proof at trial which does not modify the

20   elements of the crime charged will not invalidated a conviction

21   unless it prejudices the defendant.  And I'm looking to

22   *United States v. Woods*, 653 F. App'x 193, page 200, from the

23   Fourth Circuit in 2006; *United States v. Ward*, 747 F.3d 1184,

24   page 1189, from the Ninth Circuit in 2014.

25       Other circuits to face similar questions have reasoned

1    that defendants may be prejudiced from a variance from the

2    indictment if it surprises the defendant at trial or exposes

3    him to a risk of double jeopardy.  I'm looking to *United States*

4    *v. Robles-Vertiz*, 155 F.3d 725, page 729, from the

5    Fifth Circuit in 1998; in *United States v. Moore*, 189 F.3d 793,

6    page 795, from the Tenth Circuit in 1999; and *United States v.*

7    *Howard*, 619 F.3d 723, page 727, from the Seventh Circuit in

8    2020.

9         For example, in *Robles-Vertiz*, the Fifth Circuit faced a

10    situation where one victim's name was alleged in the indictment

11    and another victim's name was proven at trial.  The government

12    took the position, as they have done here, that they could have

13    charged the defendant with transporting some unknown person, so

14    the person's name was not an essential element of the offense.

15    More, the Fifth Circuit found no risk of surprise or double

16    jeopardy concerns there.

17         Similarly, I don't think surprise or double jeopardy

18    concerns are present here, especially when the government has

19    indicted -- or indicated specific times in the indictment for

20    which -- for each of the defendant's charged assaults.  I

21    understand the concern that these time periods are very

22    close to each other, but, ultimately, the government does prove

23    an assault or other obstructive behavior during each time

24    period.

25         The defendant also argues that the Fifth Amendment

1    requires the government to prove everything alleged in

2    the indictment, including the identity of the officers, lest it

3    interferes with the power of the grand jury.  He quotes

4    *Stirone v. United States*, 361 U.S. 212, page 219, from 1960,

5    but that case does not help him.

6         It speaks mostly in generalities that a court cannot

7    charge or broaden an indictment after the grand jury has

8    returned it.  And it reasons, consistent with the analysis

9    above, that an essential element of the crime -- there, a

10    Hobbs Act violation -- cannot be amended post hoc by the court

11    after the grand jury charges it in an indictment.

12         *Gaither v. United States*, 413 F.2d 1061 from the

13    D.C. Circuit in 1969, which cites *Stirone*, does not prove his

14    case either.  There, the circuit distinguished between a

15    material variance between the indictment's terms and proof at

16    trial and an actual amendment of the indictment.  And the issue

17    in that case was an amendment, not a variance, as we have here.

18    I'm looking to page 1072 of that opinion.

19         Thus, for all these reasons, I agree with the government

20    that it didn't have to prove the identity of the officer

21    that the defendant assaulted in Count 17 because identity is

22    not an essential element of the crime charged.  The government

23    merely has to prove that the defendant assaulted an officer of

24    the United States or the Metropolitan Police Department engaged

25    in official duties.

1          With that legal underbrush cleared, I'll turn to the

2     facts.

3          By 2:56 p.m., Mr. Klein had made his way up to the lower

4     west terrace tunnel where some of the most violent clashes

5     between rioters and police occurred on January 6th.  He

6     worked his way up to be in the front of the crowd of rioters

7     facing off against exhausted and outnumbered officers.

8          The first element is that someone must assault, resist,

9     oppose, impede, intimidate, or interfere with a law enforcement

10    officer.

11         Here, both Mr. Klein and others are, at the very least,

12    resisting, opposing, impeding, and interfering with the

13    officers.  Sergeant Bogner's body-worn camera shows the crowd

14    banging on the door to the tunnel trying to get in as the

15    officers hastily tried to set up a line of defense.  And I'm

16    looking to Government's Exhibit 429 at 4:42 and 40 seconds.

17         Once the rioters breached the doors, Mr. Klein and

18    others actively resisted the officers' efforts to clear people

19    from the tunnel.  I note the officers repeatedly ordered them

20    to move back, and he refused to do so.

21         He remained standing in the doorway.  He attempted to

22    grab an officer's shield, and he worked with other rioters to

23    push against the officers in line with the stolen shields.  And

24    I'm looking to Government's Exhibit 428 at 2:54 and 10 seconds

25    and Government's Exhibit 409 at 2:55:13 to :24 in Government's

1    Exhibit 501.

2         The second element is that someone does so forcibly.  A

3    defendant acts forcibly if he uses force, attempted to use

4    force, or threatened to use force against the officer.

5         The defendant is clearly acting with the requisite

6    force here.  He can be seen lending his weight and support to

7    other rioters who are pushing against the officers.  I'm

8    looking to Government's 429 at 2:57 p.m. and Government's 501

9    at 22:10.  The government -- or the defendant's pushes also

10   coincided with the heave-ho push against officers, coordinated

11   by the many other rioters in the tunnel, and I'm looking to

12   Government's Exhibit 515.

13        The third element is that someone did such acts

14   intentionally.

15        This element is also easily met.  The defendant worked

16   up to the very front of the face-off with officers in the

17   epicenter of violence at the Capitol at that time.  These were

18   his decisions, his actions.

19        Skipping over the fourth element, the fifth element is

20   that someone must make physical contact with the officer or act

21   with the intent to commit another felony.

22        This element presents a legal dispute between the

23   parties.  For this count, the government's theory is that the

24   rioters were -- in the tunnel were resisting, opposing,

25   impeding, intimidating, and interfering with officers in the

1    tunnel, all with the intent to commit another felony.

2    According to the government, they intended to commit either

3    obstruction of an official proceeding or civil disorder, both

4    felonies.

5         Mr. Klein argues that section 111 does not permit this

6    theory.  He says that even acting with felonious intent cannot

7    be a felony under 111 unless the same person committed an

8    assault.

9         I resolved this objection in the *McCaughey* Group 1 trial

10   last fall in favor of the government, and I incorporate that

11   ruling by reference here.  As explained, the words of the

12   statute appear clear enough.  Section 111(a) explicitly refers

13   to the acts of violation in section (a)(1).  True, those acts

14   encompass forcible assaults against officers, but they also

15   cover forcible opposition, interference with, and impeding

16   officers.

17        And the statute says that a felony accrues when, quote,

18   such acts involve the intent to commit another felony,

19   close quote.  The natural implication of this language means

20   that forcible interference with officers, to take one example,

21   with intent to commit another felony is a felony violation of

22   the statute.  The phrase "such acts" refers to all six verbs in

23   111(a)(1).  And those verbs go beyond assault.

24        The Fourth and Seventh Circuits agrees with this

25   interpretation of the statute, and I'm looking to

1    *United States v. Briley*, 770 F.3d 276, page 273 to -74, from

2    the Fourth Circuit in 2014; and *United States V. Stands Alone*,

3    11 F.4th 532, pages 535 to -37 from the Seventh Circuit in

4    2021.  Both circuits convincing reason from the text of the

5    statute that the verbs other than, quote, assault, carry

6    through it into the felony provisions of 111(a).

7        I am aware of contrary authority from the Tenth Circuit,

8    but that decision rests on binding precedent in that circuit

9    about a prior version of the statute.  And I'm looking to

10   *United States v. Wolfname,* 835 F.3d 1241 from the Tenth Circuit

11   in 2016.  None of these decisions are binding on the Court, but

12   I am persuaded by the text of the statute that the Fourth and

13   Seventh Circuit are correct.

14       Under this element, the rioters in the tunnel could have

15   committed felony violations of 111(a) if they either made

16   contact with an officer or acted with intent to commit another

17   felony, such as obstruction or -- of an official proceeding or

18   civil disorder.  And I will detail later when -- as I will

19   detail later when discussing Count 35, I find the evidence

20   overwhelming that rioters inside the tunnel on January 6th

21   acted with the intent to commit civil disorder.

22       At all times relevant to this count, rioters in the

23   tunnel knowingly obstructed officers as part of the civil

24   disorder as defined by that statute.  That is enough for them

25   to commit a felony violation of 111(a), at least as to that

1    element.

2          So I find that the government has met this element too.

3    So for all those reasons, I find Mr. Klein guilty of Count 17

4    as a principal and, therefore, do not also consider whether he

5    aided and abetted.

6          Agent Fulp, can I ask you to go to the grand jury and

7    tell the prosecutors there that I want to see them.

8          SPECIAL AGENT FULP:  Yes, Your Honor.

9          THE COURT:  Thank you.

10          Count 19 charges Mr. Klein with 111(a), assault on

11    Officer Carlton Wilhoit and aiding and abetting.

12          Mr. Klein levies the same legal objection to this count,

13    arguing that the count has not proven Officer Wilhoit's

14    identity and must do so because he is named in the indictment.

15    Officer Wilhoit also did not testify at trial so Special Agent

16    Fulp identified him using video.

17          Special Agent Fulp testified that he had interviewed

18    Officer Wilhoit and met him in person several years ago.

19    Agent Fulp noted that he had reviewed Sergeant Bogner's

20    body-worn-camera footage with him and Officer Wilhoit had

21    identified himself.

22          As I noted above for Officer Gonell, the video footage

23    around this time is chaotic.  Agent Fulp's identification of

24    Officer Wilhoit is more reliable than that of Officer Gonell

25    because he pointed to distinctive hair clearly visible beneath

1    the helmet from Sergeant Bogner's body-worn-camera video.

2    And I'm looking to Government's Exhibit 429 at 3:00 and

3    27 seconds.  It is still difficult to tell whether the

4    defendant assaulted, resisted, or impeded Officer Wilhoit

5    during that time frame; Officer Wilhoit specifically.

6        Nonetheless, I incorporate my prior ruling by reference

7    here to find that the government did not have to prove

8    Officer Wilhoit's identification, only that Mr. Klein

9    assaulted, resisted, impeded an MPD or Capitol Police officer

10   engaged in his official duties at this time.

11       The videos show that there was a lull in the violence

12   around this time.  Some space cleared between the officers and

13   the front row of rioters.  Officers attempted to use this time

14   to close a set of partially broken doors in an effort to create

15   a partial barrier and funnel any intruders into a narrower

16   place.  And I'm looking to Government's Exhibit 429 at

17   2:59 and 30 seconds to 3:00 and 54 seconds.  I'm also looking

18   to Government's Exhibit 515 at 10:45 to -- to 11:25; and

19   Government's Exhibit 512.

20       Had they managed to do this, it would have been

21   significantly more difficult for the rioters to break into the

22   Capitol here.  However, according to the government, Mr. Klein

23   and another rioter wedged a stolen police shield in the door,

24   preventing the officers from closing it.  And I'm looking, for

25   example, to Government's Exhibit 512.

1     Shortly afterwards, the defendant then retreated from

2     the front of the line and repeatedly said, "We need fresh

3     people," to rioters further back in the tunnel.  And I'm

4     looking to Government's Exhibit 512 at 3:26 to 3:40,

5     Government's Exhibit 612.51 at 51 seconds.

6     The first element is that someone must assault, resist,

7     oppose, impede, intimidate, or interfere with a law enforcement

8     officer.

9     The government is only proceeding on a resisting or

10    impeding theory here.  I agree that by working to wedge the

11    stolen shield into the door, Mr. Klein resisted and impeded the

12    officers.

13    The second element is that someone does so forcibly.  A

14    person acted forcibly if he used force, attempted to use force,

15    or threatened to use force against the officer.

16    I think that element is also met here.  Mr. Klein and

17    the other rioter are pushing the shield while an officer tries

18    to push it out.  This struggle over the shield would qualify as

19    a necessary force, even though neither of them directly touched

20    the victim officer.

21    The third element is that someone did such acts

22    intentionally.  I find that the government has also proven this

23    element.  I have considered Mr. Woodward's argument that the

24    defendant was possibly trying to remove the shield and that he

25    doesn't seem to have been using a lot of effort against the

1    officer.

2         But this theory is, again, fatally undermined by

3    Mr. Klein's entreaties, seconds later, for fresh people.  That

4    shows a clear intent to impede and resist the officers' efforts

5    to push the rioters out of the tunnel.  It confirms my belief

6    that he was working with the rioters to oppose the officers,

7    not struggling against the rioter who had the baton and

8    actually aiding the police.

9         Skipping over the fourth element, I find the fifth

10   element met because the defendant was acting with the intent to

11   commit civil disorder.  So even if he didn't physically touch

12   an officer for this count, the element is still met.

13        While I find Mr. Klein guilty of Count 19 as a

14   principal, I also want to make clear that in the alternative, I

15   would find him guilty of aiding and abetting other rioters as

16   to Count 19.

17        First, others must commit each of the elements of a

18   111(a) violation that I have just listed.

19        Even if the defendant did not personally oppose and

20   resist officers at that time, others, including the fellow

21   rioter who did push the shield into the door, certainly did

22   oppose and resist officers.

23        Second, the defendant knew that assaulting, resisting,

24   opposing, impeding, or interfering was going to be committed by

25   others or was being committed by others.

1        Here, the face-off with the officers in the tunnel had

2  been going on for some time at this point.  The defendant

3  clearly understood that rioters were continuing to resist and

4  impede officers there.

5        Third, the defendant performed an act in furtherance of

6  the offense.

7        The defendant's actions with the shield and calls for

8  reinforcement both qualify as acts in furtherance of others'

9  illegal conduct.

10        Fourth, the defendant knowingly performed his acts for

11  the purpose of aiding, assisting, soliciting, facilitating, or

12  encouraging others in committing the offense.

13        I think his actions, and especially his call for

14  reinforcements, easily met this element.

15        Fifth, the defendant acted with the intent that others

16  commit the offense of assaulting, resisting, opposing,

17  impeding, or interfering with law enforcement officers.

18        For the reasons I've already stated, this element is

19  also met.

20        Count 27 charged Mr. Klein with 111(a), assault against

21  officers around 3:07 to 3:14 p.m. and aiding and abetting.

22        During this time, Mr. Klein returned to the tunnel after

23  having left to flush his eyes out from the pepper spray or

24  other chemical agents.  And I'm looking to Exhibit 612.21 at

25  51 seconds in Government's Exhibit 1001.  As he made his way

1   through the throngs of rioters towards the front of the line,

2   he distributed water bottles to fellow rioters.  Near the

3   front, he joined a particularly forceful series of heave-ho

4   pushes against the officers.  I'm looking to Government's

5   Exhibit 501 at 20:47.

6        The first element is that someone must assault, resist,

7   oppose, impede, intimidate, or interfere with a law enforcement

8   officer.

9        These heave-ho actions clearly resist, impose, impede,

10   and interfere with law enforcement officers.  Mr. Klein was

11   fully part of this conduct.  There were also egregious assaults

12   against officers taking place as part of this effort, including

13   a rioter next to him who sprayed officers with some type of

14   apparent pepper spray, and the attack on Officer Hodges

15   perpetrated by Defendant Cappuccio and co-Defendant McCaughey,

16   which was also occurring feet from Mr. Klein.  That's

17   Exhibit 501 at 20:47 and Government's Exhibit 612.23.

18        The second element is that someone does so forcibly.

19        Of course, these actions were clearly forceful.

20        The third element is that someone did such acts

21   intentionally.

22        This element is also easily met for reasons I previously

23   have given.

24        Skipping over the fourth element, the fifth element is

25   that someone must make physical contact with the officer or act

1    with intent to commit another felony.

2         I think both pathways here are met.  The rioters are

3    physically pushing against the officers, but Mr. Klein was also

4    acting with the intent to commit civil disorder.

5         While I find Mr. Klein guilty of this offense as a

6    principal, I also find him guilty of aiding and abetting his

7    fellow rioters in their own illegal conduct against the

8    officers.

9         His pushing multiplied the force of their own pushes

10   against the officers.  His actions also made it harder for the

11   officers to resist specific assaults on them, like pepper spray

12   happening right next to him.  This was a coordinated effort

13   among the rioters, such that the knowing and intent elements of

14   aiding and abetting are clearly met here.

15        Next, Count 28 charges Mr. Cappuccio with impeding and

16   resisting officers from 3:08 to 3:10 p.m.

17        I find that the government has shown that, at the least,

18   he was impeding and resisting officers by his actions during

19   this time frame.  He had made his way up through the ground

20   level to just behind the second row of rioters clashing with

21   officers in the tunnel.

22        He was filming the melee with his phone in his right

23   hand and was using his left hand at various points to hold the

24   shield and press up against the front rioters.  And I'm looking

25   to Government's Exhibit 510 at 14 seconds and Government's

1    Exhibit 612.

2         I think his presence and actions, just feet from where

3    officers were clearly trying to evict rioters from the tunnel,

4    did, in fact, impede and resist the officers and made their job

5    more difficult, both through his presence and physical actions

6    acting as a second row, just behind the lead rioters.

7         The second element is that he did so forcibly.  While

8    this is a close call, I think at points he was physically

9    pressing up against the rioters in front of him who were

10   themselves pushing on the officers.  And I'm looking to

11   Government's Exhibit 510 at 14 seconds and Government's

12   Exhibit 509 at 5:30.

13        Reviewing the parties' agreed-upon elements of the

14   offense, I note that physical contact with the officers is not

15   required for this element.  Here, his physical contact was with

16   other rioters while people are yelling push, implicitly meaning

17   push into the officers.  And I think this is all sufficient for

18   that force element.

19        The third element is intentionality.  Mr. Cappuccio

20   claimed that he was just videoing the event, and he suggested

21   he thought the rioters fighting the officers were, quote,

22   idiots and had no intent to join them.

23        I reject this claim and find him incredible on this

24   point.  By the time he entered the tunnel, I believe he fully

25   realized that people inside were battling officers.  He had

1    seen people coming out of the tunnel bleeding and suffering

2    from the pepper spray.  He heard yells coming from the tunnel

3    and saw riot shields being passed out of the tunnel to cheers

4    from the crowd and, moments later, passed back in.  These

5    shields had clearly visible police insignia on them.

6         Under these circumstances his claim that he believed it

7    was Antifa, not officers, who were being assaulted by the

8    rioters or that the shields -- the rioters had access to a

9    storage locker holding shields are not credible.

10        Despite knowing this, he yelled, quote, We're going in.

11   We're going in.  They're using tear gas on us.  These are

12   statements of a participant, a co-conspirator, not a mere

13   observer.  And I'm looking to Government's Exhibit 612.21.

14        Once inside the tunnel, he made his way through the

15   crowd to the very front of the confrontation with officers.

16   There's only one reasonable conclusion from these decisions;

17   he intended the inevitable result of his actions, which was to

18   impede and resist the officers his fellow rioters were

19   fighting.

20        Skipping over the fourth element again, the fifth

21   element is that someone must make physical contact with the

22   officer or act with the intent to commit another felony.

23        While I do not find he made physical contact with an

24   officer at this point, I have no difficulty in concluding that

25   Mr. Cappuccio was also acting with intent to commit civil

1   disorder.

2       I, therefore, find him guilty as a principal in

3   Count 28.

4       I now turn to the assault -- the 111(a) assault with a

5   dangerous weapon charges.  This offense shares the five

6   elements as mentioned for violation of 111(a)(1).  In addition,

7   the government must show that the defendants used a deadly or

8   dangerous weapon.

9       An object is a deadly or dangerous weapon if it is

10  capable of causing serious bodily injury or death to another

11  person and the defendant used it in that manner.

12      As defined in 18 U.S.C. 1365(h)(3), serious bodily

13  injury means bodily injury involving a substantial risk of

14  death, extreme physical pain, protracted and obvious

15  disfigurement, or protracted loss or impairment of the function

16  of a bodily member, organ, or mental faculty.

17      In determining whether an object is a deadly or

18  dangerous weapon, I may consider both the physical

19  capabilities of the object used and the manner in which the

20  object was used.

21      Continuing with Mr. Cappuccio for the moment, I start

22  with Count 29, charging him with assault on Officer Daniel

23  Hodges.

24      The first element, assault on a law enforcement officer,

25  is clearly met here.  Mr. Cappuccio grabbed Officer Hodges' gas

1    mask, which was securely fastened around his head, and was

2    using significant force -- and using significant force managed

3    to completely pull it off Officer Hodges.  I find that he did

4    this by yanking the face mask forward and back and up and down,

5    thereby bloodying Officer Hodges' lip and twisting his neck

6    back.  And I'm looking to Government's Exhibit 501 at 20:28 and

7    Government's Exhibit 612.23.  Officer Hodges testified that

8    this felt like he was being punched in the face.

9         More, though the video does not show it, Mr. Cappuccio

10   admitted on the stand to grabbing Officer Hodges' baton at this

11   time.  Officer Hodges credibly testified that the defendant

12   then hit him over the head with it.  Mr. Cappuccio was able to

13   strike Officer Hodges' head, rather than the riot helmet,

14   because the helmet had been partially dislodged by

15   Mr. Cappuccio's violent manipulation of the gas mask.

16        Officer Hodges was completely defenseless during this

17   time, being pinned between a door frame and co-Defendant

18   McCaughey's stolen police shield, which had the full weight of

19   Mr. McCaughey himself and countless rioters behind him.

20   Indeed, Officer Hodges explained that all he could do was stare

21   helplessly at Mr. Cappuccio as he assaulted him.

22        The second element, that Mr. Cappuccio acted forcefully,

23   is manifestly met.

24        I find that the government has proven the third element,

25   intentionality, too.

1        While Mr. Cappuccio was assaulting Officer Hodges, as

2   I just described, he was giving what he described as a

3   battle yell and said, quote, How do you like me now, fucker?

4   He did this all with his phone in his mouth, which he had

5   placed there so both of his arms would be free to assault

6   Officer Hodges.

7        Mr. Cappuccio claims that his PTSD from military

8   service, which was triggered by the crowd's noise, gas,

9   and allegedly being hit himself in the tunnel, negated his

10  ability to act intentionally.  He also testified that he

11  entered the tunnel primarily because he wanted to film what

12  was going on.

13       I note that I also allowed the parties to brief whether

14  Mr. Cappuccio can offer a PTSD expert, General Xenakis,

15  regarding his state of mind.  After receiving briefing and

16  argument, I ruled that he could do so only to negate the

17  scienter requirements of specific intent crimes, in line with

18  precedent.

19       111(a) is not a specific-intent crime, and it's not

20  clear to me that 111(b) is either.  And the defense was still

21  not clear by the end of the trial as to what charges the PTSD

22  expert was relevant to.  Ultimately, I find that that doesn't

23  matter.

24       This is because I do not credit the suggestion that

25  Mr. Cappuccio's vicious attack on Officer Hodges was the result

1    of a momentary PTSD episode.  In other words, I'm rejecting

2    both the theory that Mr. Cappuccio entered the tunnel as an

3    uninvolved cameraman, and the theory that his PTSD negates his

4    scienter for any of the crimes charged.

5         On the contrary, I think his attack on Officer Hodges is

6    completely consistent with his other actions upon entering the

7    Capitol Grounds.  While videoing the mob, he yelled, quote,

8    Storm the castle, boys.  And, quote, Dirty deuce in the house,

9    a reference to missions with his unit in his military days.

10   Government's Exhibit 612.13, 612.15.

11        While continuing to film, he worked his way up to the

12   epicenter of the violence at the Capitol, the lower west

13   terrace tunnel.  Once there, and after seeing multiple indicia

14   of a battle with officers, he shouted, quote, We're going in.

15   We're going in.  They're tear-gassing us, close quote.  Upon

16   entering the tunnel, he pushed through to the very front of the

17   face-off with the officers.

18        After his alleged PTSD episode and upon hearing what he

19   claimed to be the voice of the Holy Ghost rebuking him for

20   attacking Officer Hodges, he carried away the officer's baton,

21   which he handed off to a fellow rioter, despite the likelihood

22   that the baton would be used against officers as a weapon

23   again.  And, finally, he emerged from the tunnel and promptly

24   made a gesture of victory, raising a clenched fist skyward.

25   And I'm looking to Government's Exhibit 533.1 at 34 seconds.

1    Because these actions are all of a piece with an attack

2    on an officer and quite inconsistent with Mr. Cappuccio's claim

3    that he was a hapless spectator who, in a momentary loss of

4    sanity, mindlessly attacked a defenseless and already injured

5    officer, I reject his version of events.

6    Thus, while Mr. Cappuccio may, indeed, suffer from PTSD,

7    I reject the assertion from General Xenakis that his PTSD

8    negated the requisite state of mind for any of the specific

9    intent crimes.  I discredit General Xenakis's testimony, not

10   because I find his credentials wanting, or even because his

11   overall theory is necessarily implausible, but simply on a

12   garbage in, garbage out rationale.  In other words, because

13   General Xenakis's testimony heavily relied on Mr. Cappuccio's

14   version of events, I do not credit his expert analysis.

15   However, I do not wish to suggest that Mr. Cappuccio

16   cannot raise his military training and experience, including

17   PTSD, as a mitigating factor at sentencing.  Those factors may

18   help explain how he acted here, but they do vitiate his

19   scienter.

20   Similarly, I reject the suggestion that Officer Hodges

21   somehow either imagined that he was struck over the head with

22   his baton or that Mr. Cappuccio is the one who did it.

23   Mr. Cutler -- I'm sorry.  Dr. Cutler, Mr. Cappuccio's

24   first expert, provided credible testimony on the effects of

25   stress and other factors on memory and identification.  While I

1    find his testimony very plausible in the abstract, I fully

2    credit Officer Hodges' testimony about the assault with the

3    baton and that Mr. Cappuccio was the one who did it.  I note

4    Officer Hodges was, quote, 100 percent certain about the

5    identification; and that several of the indicia Dr. Cutler

6    considers, including the certainty of the eyewitnesses, the

7    consistency of the eyewitness testimony, and the availability

8    of the confirmatory video evidence actually bolster

9    Officer Hodges' testimony.

10           Indeed, most of Officer Hodges' testimony is fully

11    corroborated by video evidence and Mr. Cappuccio's own

12    testimony.  The only real contested point, whether

13    Mr. Cappuccio struck him with the baton, in addition to

14    robbing him of it, is fully consistent with the general

15    evidence and is by far the most plausible explanation for what

16    happened.

17           Mr. Cappuccio has not seriously argued that someone else

18    struck Officer Hodges, and it is hard to imagine why

19    Officer Hodges would make this one detail up.  Given this, the

20    fact that Officer Hodges' head was uncovered for a short period

21    of time and that Mr. Cappuccio admittedly had grabbed his

22    baton during that time and was, in fact, assaulting him, no

23    other explanation for Officer Hodges' scalp contusion holds

24    water.

25           In short, I find the government has proven

1    Mr. Cappuccio's intentionality beyond a reasonable doubt on

2    this point.

3           Skipping the fourth element again, the fifth limit, that

4    of actual physical contact, is clearly met here.

5           The sixth element of the 111(b) charge is that the

6    defendant intentionally charged -- intentionally used a deadly

7    or dangerous weapon or inflicted bodily injury.  This element

8    is proven here for three independently adequate reasons.

9           First, I find Mr. Cappuccio's wrenching of

10   Officer Hodges' gas mask resulted in bodily injury within the

11   meaning of the statute.  The parties agree that bodily injury

12   is an injury that is painful and obvious, or is of a type for

13   which medical attention ordinarily would be sought.  It

14   includes a cut, abrasion, or physical pain.

15          I find that Officer Hodges' lip was caused by

16   Mr. Cappuccio's action here and qualifies.  Government's

17   Exhibit 847 shows those injuries, as does the pain to his

18   mouth, face, and neck from Mr. Cappuccio's violent wrenching of

19   his gas mask from his head.

20          Second, I find that the head contusion from the baton

21   qualifies.  Mr. Hodges got an MRI, apparently, for this wound

22   and testified to pain to his skull from being struck by the

23   baton.  This qualifies as bodily injury.

24          Third, I also find the baton is inherently and,

25   obviously, a deadly or dangerous weapon, and that even if it's

1   not, it is capable of causing serious bodily injury or death

2   when being used to strike someone about the head.  I credit the

3   testimony of Sergeant Bogner that officers are taught never to

4   strike people on the head or spine with their batons except in

5   deadly force situations, precisely because of the potential for

6   serious injury or death.

7       Finally, I reiterate that even if the PTSD expert's

8   testimony is technically relevant to this element, given that

9   it reads like a specific intent, I find that the testimony does

10  not move the needle in a way necessary to negate the relevance

11  scienter.

12      For all these reasons, I find Mr. Cappuccio guilty of

13  Count 29 as charged.

14      I will briefly interrupt my analysis of the assault

15  charges to consider Count 30, which charges Mr. Cappuccio with

16  robbery of Officer Hodges' baton.

17      The elements of robbery are self-evidently satisfied

18  based on my preceding analysis and, indeed, based on

19  Mr. Cappuccio's own admissions.

20      The first element is that he obtained property and that

21  he was not -- that he was not lawfully entitled to from a

22  person without that person's consent.

23      Here, he took the police baton from Officer Hodges as

24  shown by the testimony of both men.

25      The second element is that he used actual or threatened

1    force, violence, or intimidation to obtain the property.

2         This element is also clearly satisfied.  While

3    Officer Hodges was pinned defenseless by Mr. Cappuccio's

4    co-Defendant Mr. McCaughey, Mr. Cappuccio violently ripped off

5    Officer Hodges' gas mask with one hand and yanked his baton

6    from him with the other.  This was both force and violent.

7         The third element is that he acted knowingly.  This

8    element is also met for the reasons I believe he acted

9    intentionally during this simultaneous assault.

10        The fifth element is that the officer -- the offense was

11   committed with the -- within the special maritime or

12   territorial jurisdiction of the United States.  I find that

13   the U.S. Capitol Grounds satisfies this element for a few

14   reasons.

15        First, courts interpreting this language have reasoned

16   that a place is within the territorial jurisdiction of the

17   United States if the federal government has legislative control

18   over it.  For example, I find the reasoning of the

19   Sixth Circuit in *United States v. Gabrion*, 517 F.3d 839, from

20   2008, persuasive.

21        The Sixth Circuit conducted a lengthy analysis and found

22   that a national forest was under the territorial jurisdiction

23   of the United States because the federal government had, quote,

24   concurrent legislative jurisdiction, close quote, over the area

25   per the enclave clause in Article I, Section 8, Clause 17 of

1    the Constitution.

2         The enclave clause is, obviously, the same one

3    establishing the District of Columbia, and Congress has

4    exclusive legislative authority over the District under that

5    clause.  And I'm looking to *Banner v. United States*, 428 F.3d

6    303, page 305, from the D.C. Circuit in 2005; noting that the

7    Constitution gives Congress exclusive legislative authority in

8    all matters pertaining to the District of Columbia.

9         Under straightforward interpretation of the first

10   sentence of 18 U.S.C. 7, this element is, obviously, met

11   because the Capitol is under the exclusive jurisdiction of the

12   federal government.

13        Second, the crime took place in a, quote, needful

14   building, which is also part of the definition of the

15   territorial jurisdiction of the United States.

16   18 U.S.C. Clause 7 -- Section 7, Clause 3 also states that a

17   territorial jurisdiction is, quote, any place purchased or

18   otherwise acquired by the United States for a needful

19   building, close quote.  I can take judicial notice that the

20   robbery crime occurred in a needful building as contemplated in

21   that statute.

22        Mr. Cappuccio has not argued otherwise on either point.

23   And I, therefore, find him guilty on the robbery count.

24        Mr. Woodward, Ms. Akers, Mr. Windom, can you approach.

25            (**SEALED** bench conference on the record.)



***** SEALED *****







(Proceedings held in open court.)

1          THE COURT:  All right.  I now consider Count 31

2    charging Mr. Klein with assault of Officer Foulds under 111(a)

3    and (b).

4          As to the first element, I find Mr. Klein assaulted,

5    impeded, opposed, resisted, and interfered with Officer Foulds

6    when, as part of a larger heave-ho effort by rioters against

7    the officers, he used a stolen police shield to push against

8    Officer Foulds.  I think Government's Exhibit 430.2, 430.5

9    around 3:17 p.m. clearly shows Mr. Klein straining and pushing

10   his body against Officer Foulds.

11         Officer Foulds testified that he believed the defendant

12   was using all his force against him.  He also testified that he

13   couldn't move to escape Mr. Klein's attack and that it was

14   difficult to defend against or respond to the shield attack

15   because the person holding the shield's handles has the

16   advantage.  Officer Foulds faced the smooth, slippery front

17   surface and could muster little leverage against it.  I fully

18   credit Officer Foulds' testimony about this attack.

19         The second and third elements, that the defendant acted

20   forcibly and intentionally are self-evidently met here.

21         Skipping the fourth element, again, for the reasons I

22   previously stated, I also find the fifth element, physical

23   contact with the officer, is also met.

24         I do not, however, find the government has proven the

25   sixth element beyond a reasonable doubt.  The government is not

1    relying on a bodily injury theory, and in the first McCaughey

2    trial, I rejected out of hand the idea that a shield is a

3    per se dangerous weapon.  So the government is left to argue

4    that a shield, when used in this manner, can be considered a

5    deadly or dangerous weapon.

6        This argument has some force.  I previously convicted

7    Mr. McCaughey for using a shield to pin Officer Hodges against

8    a door frame during the same heave-ho.  I found that the

9    exertion of Mr. McCaughey's full weight and the weight of the

10    rioters behind him through a flat shield while Officer Hodges

11    was pressed against the metal door frame could cause serious

12    bodily injury.

13        But there are at least two important distinctions

14    between Mr. Klein's attack on Officer Foulds and

15    Mr. McCaughey's attack on Officer Hodges.

16        First, Officer Hodges screamed out in pain during this

17    attack, and he testified about significant pain caused by this

18    attack, separate and apart from the injuries being caused

19    simultaneously by Mr. Cappuccio that resulted in him visiting a

20    doctor the next day.

21        But here, Officer Foulds merely said he was, quote,

22    exhausted during this attack and testified to no injuries

23    or medical visits because of his interaction with the

24    defendant.

25        I think these are important distinguishers.  While it

1    is not necessary for the government to show physical

2    injury under this theory, the lack of an injury is suggestive

3    here.

4        Second, while Officer Hodges was pinned against a metal

5    door frame throughout the attack, it's not clear to me that

6    Officer Foulds was really pinned against the wall as the

7    government claims.  As I review Government's Exhibit 430 at

8    3:15 and 51 seconds to 3:16 and 26 seconds; Government's

9    Exhibit 501 at 24:02; and Government's Exhibit 511 at 3 to

10   9 seconds, I can't say beyond a reasonable doubt that

11   Officer Foulds was actually pinned against the wall.  Indeed,

12   it looks to me like at points Officer Foulds slides along the

13   wall to evade the rioters.

14       In short, I do not think the two situations are

15   comparable, and I do not believe the mere use of the shield to

16   push against officers is a manner likely to cause serious

17   bodily injury or death.  Indeed, while of course illegal,

18   Mr. Klein's actions are not that different from what other

19   officers were doing with their shields to try to push rioters

20   out of the tunnel.

21       I, therefore, find Mr. Klein guilty of 111(a) on

22   Count 31 but not guilty of 111(b).

23       The final assault count is 32, which charges Mr. Klein

24   with assault of Officer Morris Moore under 111(a) and (b).

25       I'm not going to go through the various elements of the

1    offense in detail here because the situation is so similar to

2    Count 31, and my analysis as to the various elements is also

3    substantially similar.

4         In this count officers have now gotten the upper hand

5    over the rioters, and the officers are slowly pushing them

6    out of the tunnel onto the lower west terrace.  Mr. Klein

7    strained mightily to resist the police actions by, again,

8    using the stolen shield to push against Officer Moore who

9    was at the front of one side of the police line.  Although

10   in this instance he's no longer able to make headway against

11   the police, it is not for a lack of trying on Mr. Klein's

12   part.

13        While he unsuccessfully tried to push Officer Moore back

14   into the tunnel, a fellow rioter grabbed on to Officer Moore's

15   baton and tried to pull it away from him.  Officer Moore

16   testified that because he was focused on battling Mr. Klein, he

17   was not able to resist the other rioter who actually pulled him

18   off the police line and into the crowd of rioters on the lower

19   west terrace.

20        The government rightly points out this created a very

21   dangerous situation for Officer Moore who could have suffered a

22   similar attack to the vicious assault Officer Fanone endured in

23   the same area and around the same time.

24        The government uses the potential bodily injury to try

25   to justify a 111(b) enhancement, suggesting that Mr. Klein was,

1    in part, responsible for putting Officer Moore in that

2    situation.  But the government is certainly incorrect in

3    suggesting that Mr. Klein's use of the shield to push

4    Officer Moore into the tunnel somehow transforms the shield

5    into a weapon capable of causing serious bodily injury.

6        This is so because Officer Moore was pulled by another

7    rioter in the opposite direction Mr. Klein was pushing him and,

8    thus, into a dangerous mob.  In this situation, the mob is the,

9    quote, unquote, object capable of causing serious bodily

10    injury, not the shield.  The more plausible explanation is that

11    Officer Moore faced the danger of the mob despite Mr. Klein's

12    efforts to push him in the opposite direction, not because of

13    his efforts, and much less because of the shield.

14        As to Count 32, I, therefore, find Mr. Klein guilty of

15    111(a) but not guilty of 111(b).

16        Next, the government charges both defendants in Count 34

17    with obstruction of an official proceeding in violation of

18    18 U.S.C. 1512(c)(2).

19        The elements for this crime are as follows:

20        First, the defendant attempted to or did obstruct or

21    impede an official proceeding.

22        Second, the defendant intended to obstruct or impede an

23    official proceeding.

24        Third, the defendant acted knowingly, with awareness

25    that the natural and probable effect of his conduct would be to

1       obstruct or impede the official proceeding.

2              And fourth, that the defendant acted corruptly.

3              I think the government has proven the first element as

4       to both defendants.  I find that their actions, battling police

5       officers in the tunnel leading into the Capitol Building, had

6       the probable and natural effect of obstructing and impeding the

7       certification of the electoral.  The -- it was impossible for

8       this official proceeding to continue, especially given the

9       presence of so many other rioters with whom they were working

10      in concert.

11             Inspector Hawa's testimony makes clear that

12      Capitol Police stopped the certification because the rioters

13      outside -- because of the rioters outside and inside the

14      building.  And I'm looking at Government's Exhibit 1006,

15      pages 16 and 17.

16             To show the defendant's intent, the government notes

17      that they traveled to the Capitol and each was involved in a

18      protracted and violent struggle to get into the Capitol.

19             I agree with the defendants -- I'm sorry.  I agree that

20      the defendants' decision to involve themselves in a violent

21      struggle to enter the building is important evidence of their

22      intent.  That's where the certification was supposed to be

23      occurring, and it is natural to assume that someone who's

24      willing to battle police to get inside a building must have a

25      great interest in what is going on inside.

1    These actions, combined with the widely publicized "Stop

2    the Steal" rally earlier in the morning, certainly suggest they

3    intended to "Stop the Steal" by breaking into the

4    Capitol Building and preventing the certification.

5    As to Mr. Klein, I find that the government has proven

6    the second element.  I believe he intended to obstruct and

7    impede the certification.  In addition to the evidence of his

8    actions on January 6th I just mentioned, the government

9    introduced text messages showing his detailed knowledge of the

10    certification proceeding prior to January 6th and confidence

11    that Vice President Pence would, quote, do the right thing,

12    close quote, by refusing to certify the election, ultimately

13    ensuring that President Trump would be reelected.  That's

14    Government's Exhibit 623.57 and 623.58.

15    The government also introduced evidence showing

16    Mr. Klein felt obligated to be at the "Stop the Steal"

17    election [sic] because Mr. Trump appointed him.  He remarked

18    that, quote, As an appointee, I shouldn't be anywhere else.

19    That's Government's Exhibit 623.18.

20    At one point in the week preceding January 6th, the

21    defendant texted a friend, quote, I'm a ground pounder, so

22    staying here for the eventual secession and/or fighting,

23    close quote, an apparent reference to January 6th.  That's from

24    Government's Exhibit 623.54.

25    More, other text messages show after January 6th,

1    Mr. Klein's support for those who did break into the

2    Capitol Building and fury at Vice President Pence for, quote,

3    betraying the rioters on January 6th.  And I'm looking to

4    Government's Exhibit 623.28, 623.44, and 623.66.  He described

5    it as a, quote, act of the people against an illegitimate

6    government, close quote, from 623.49.

7        And days after January 6th, Mr. Klein stated that he was

8    resigning because he was the political -- he was the political

9    appointee of a President who had been, quote, overthrown, from

10   Government's Exhibit 623.57.

11       Having considered all the evidence, I find that there's

12   only one reasonable explanation for his actions on January 6th.

13   He expected that Vice President Pence would not certify the

14   election.  And when he discovered that the Vice President was,

15   in fact, going to certify the election, he sought to take

16   matters into his own hands, to join others to stop the

17   certification from occurring.

18       For the same reasons, I find the government has proven

19   the third element that he acted knowingly.

20       Finally, I find that he acted corruptly; that is, he

21   used unlawful means, assaulting police officers, and with

22   consciousness of wrongdoing.  No one would think battling

23   police officers in these circumstances was acceptable.  I

24   should note that even accepting the defendants' definition of

25   corruptly, borrowed from Judge Walker's concurrence in

1    *United States v. Fischer*, 64 F.4th 329, page 365 from the

2    D.C. Circuit in 2023, which requires that a, quote, defendant

3    act with an intent to procure an unlawful benefit either for

4    himself or some other person, close quote, I would easily find

5    the government has satisfied this element.

6         I think Mr. Klein was acting to ensure the certification

7    of Donald Trump as President and, therefore, benefiting both

8    President Trump and Mr. Klein himself who, as a political

9    appointee, would lose his job if Joe Biden was certified as

10   President.

11        And, of course, Mr. Klein knew that storming the

12   Capitol Building was an illegal way to accomplish these

13   objectives.  So whether using the government's proposed

14   definition of corrupt intent or the defense's, I find that the

15   government has proven this element.

16        For all these reasons, I find Mr. Klein guilty on

17   Count 34.  Because I find him guilty as a principal, I do

18   not go on to consider if he's also guilty of aiding and

19   abetting.

20        Turning now to Mr. Cappuccio's intent, the government

21   notes that he filmed a portion of the rally in which President

22   Trump said, quote, This year they rigged an election.  They've

23   rigged like they've never rigged before.  All of us here today

24   do not want our election victory stolen, which is what they're

25   doing.  We will never give up.  We will never concede.  We will

1    not take it anymore.  We will "Stop the Steal."  Close quote.

2         The government also points to relatively weak evidence

3    of Mr. Cappuccio's advance knowledge; primarily, his being a

4    passenger in a car that joined the, quote, Trump train to the

5    "Stop the Steal" rally and his occasional statements on the

6    Capitol Grounds about kicking in doors, storming the castle,

7    and the Capitol being, quote, Our house.

8         Those statements seem to be vague, reactionary outbursts

9    about what is going on around him rather than knowledge of what

10   was going on inside the Capitol at the time.  I also credit the

11   part of Mr. Cappuccio's testimony where he explained that he

12   was only an occasional news consumer and that he had little to

13   no prior involvement in politics.  He didn't seem to know or

14   have knowledge about how the certification worked or how his

15   actions might be impacting it.

16        For all these reasons, I find that the government has

17   not met its burden on this element.

18        The government's evidence against Mr. Cappuccio in this

19   count is decidedly thinner than its evidence against Mr. Klein.

20   Although I found incredible several of Mr. Cappuccio's

21   statements on the stand, there's nothing to refute his broader

22   claim that he was not very political and knew little about the

23   certification process.

24        While it is certainly plausible, perhaps even likely

25   that he learned enough from the "Stop the Steal" rally and his

1    time on the Capitol Grounds, that he -- that when he discovered

2    that Vice President Pence was going to certify the election of

3    Mr. Biden, he then decided to join his fellow rioters in trying

4    to prevent this.  It is also plausible that he just got caught

5    up in the momentum of the crowd and when he saw officers

6    injuring his fellow, quote, unquote, deplorables, he got angry

7    and lashed out against the officers.  I think his actions are

8    also consistent with the dangers of mob mentality.

9          I, therefore, find Mr. Cappuccio not guilty on Count 34.

10          I move next to Count 35, which charges both defendants

11   with civil disorder in violation of 18 U.S.C. 231(a)(3).  I

12   have already previewed my verdicts on this.

13          The first element of this defense is that the defendants

14   knowingly committed an act or attempted to commit an act with

15   the intended purpose of obstructing, impeding, or interfering

16   with one or more law enforcement officers.

17          Much of what I've already said applies to this element.

18          Each defendant knowingly engaged in multiple actions to

19   impede the work of law enforcement officers.

20          The second element is that the -- at the time of the

21   defendants' actions, the law enforcement officers were engaged

22   in the lawful performance of their official duties incident to

23   and during a civil disorder.

24          As I've already said, these officers were, obviously,

25   engaged in lawful performance of their official duties.

1    The statute defines civil disorder as any public

2    disturbance involving acts of violence by assemblages of three

3    or more persons which causes an immediate danger of or results

4    in damage or injury to the property or person of any other

5    individual.

6    The events on January 6th qualify.  Again, this is

7    largely self-evident from the totality of the video evidence

8    and testimony in this case.  Thousands of rioters gathered on

9    the Capitol that day and committed numerous acts of violence

10   against officers.

11   For example, this trial featured video of Mr. Cappuccio

12   forcibly grabbing the mask off the face of Officer Hodges in

13   the tunnel, while another rioter had the officer pinned against

14   a metal door frame using a riot shield.  This is Government's

15   Exhibit 501 at 20:45.

16   In another -- in other footage, rioters are seen

17   spraying the line of officers with some kind of pepper spray.

18   It's Government Exhibit 612 at 612.23.  And we heard testimony

19   about Officer Fanone being dragged into the mob to suffer

20   further assaults, such that he collapsed when he was finally

21   pulled back to safety.  The video evidence shows beyond any

22   reasonable doubt that the numerous acts of violence occurred in

23   the Capitol that day.

24   The third element is that the civil disorder in any way

25   or degree obstructed, delayed, or adversely affected either

1    interstate commerce or the movement of any article or commodity

2    in interstate commerce or the conduct or function -- or

3    performance of any federally protected function.

4         I've reviewed the evidence submitted by the government

5    as to the performance of Safeway on January 6th.  According to

6    Government's Exhibit 115, Safeway closed its D.C. locations at

7    4:00 p.m. on January 6th.  When Safeway communicated that

8    decision to its employees, Mayor Bowser had already announced a

9    citywide curfew to begin at 6:00 p.m. that night, according to

10   Government's Exhibit 113, pages 120 to -21.

11        Safeway's decision to close early clearly hurt its

12   business and obstructed interstate commerce.  Government's

13   Exhibit 116 shows that almost every Safeway location in the

14   District suffered large decreases in sales and revenue

15   compared to the same date one year earlier, and inventory

16   shipments to Safeway were disturbed according to Government's

17   Exhibit 117.  So interstate commerce was obstructed at Safeway

18   on January 6th.

19        For these reasons, I find both defendants guilty on

20   Count 35.

21        Before I proceed to the next counts, I want to make a

22   few observations that generally relate to them and both

23   defendants.

24        First, a restricted building or grounds means any

25   posted, cordoned off, or otherwise restricted area of a

1    building or grounds where a person protected by the

2    Secret Service is or will be temporarily visited -- visiting.

3         The parties have stipulated to the admissibility of the

4    testimony from Daniel Schwager discussing that the

5    Vice President was visiting the Capitol and presiding over the

6    Joint Session of Congress on January 6th, 2021.  That's

7    Government Exhibit 1007.

8         Also in stipulated testimony, Inspector Hawa of the

9    Secret Service explained the boundaries and process for

10   creating the restricted area on January 6th, a map of which is

11   in evidence at Government's Exhibit 105.

12        I credit this testimony that the restricted area on that

13   day extended from the West Front of the Capitol down the

14   West Lawn to the Garfield and Peace memorials.  That's laid out

15   in Government's Exhibit 1006.  More, Lieutenant McCree

16   testified that the perimeter was set up with a combination of

17   snow fencing and bike racks which were marked with area closed

18   signs.

19        I recognize that by the time the defendants entered the

20   area, some of the perimeter may have been damaged or removed.

21   Nonetheless, by the time they entered the tunnel, I have no

22   doubt that both of them knew they could not be there.  In other

23   words, they'd entered a restricted area.  They saw others

24   climbing up scaffolding, saw rioters and police alike suffering

25   from the effects of chemical irritants in the air, and suffered

1    from these themselves.  They heard the LRAD system blaring and

2    various other alarms sounding in the tunnel.  And, of course,

3    it was perfectly obvious to them that the police were trying to

4    get them out of the tunnel.

5        So I find that both of them knowingly entered a

6    restricted area on January 6th.

7        Counts 42 and 43 charge the defendants with disorderly

8    or disruptive conduct in a restricted building or grounds with

9    a deadly or dangerous weapon.

10       The first element is that the defendants engaged in

11   disorderly or disruptive conduct in or in close proximity to

12   any restricted building or grounds.

13       Disorderly conduct occurs when a person is unreasonably

14   loud or disruptive under the circumstances, or interferes with

15   another person by jostling against or unnecessarily crowding

16   that person.  Disruptive conduct is a disturbance that

17   interrupts an event, activity, or the normal course in the

18   process.

19       For many of the reasons discussed, both defendants

20   engaged in disorderly conduct.  They jostled against police

21   officers in the tunnel and pressed up against the officers at

22   various times.

23       A restricted building or grounds means any posted,

24   cordoned off, or otherwise restricted area of a building or

25   grounds where a person protected by the Secret Service is or

1    will be temporarily visiting.  I've already explained why the

2    government has met this portion of the element.

3        The second element is that the defendants engaged in

4    their conduct knowingly and with the intent to impede or

5    disrupt the orderly conduct of business, government business,

6    or official functions.

7        As discussed in the other counts, I find that the

8    defendants knowingly engaged in disruptive conduct and they had

9    an intent to disrupt the orderly conduct of business.  As to

10   Mr. Klein, I've already explained that he intended to obstruct

11   the certification inside the Capitol.  I must find beyond a

12   reasonable doubt that based on his effort to enter the

13   building, he intended to at least disrupt the normal flow of

14   congressional business.

15       As for Mr. Cappuccio, he went to lengths to disrupt the

16   orderly business of the police officers' duties on January 6th;

17   specifically, their attempts to secure and protect the Capitol

18   from an unruly mob.  I also find that his conduct meets the

19   elements beyond a reasonable doubt.

20       The third element is that the defendants' conduct

21   occurred when, or so that, their conduct, in fact, impeded or

22   disrupted the orderly conduct of government business or

23   official functions.

24       This element is easily met per Inspector Hawa's

25   stipulated testimony.  The Capitol went into lockdown at

1    around 2:00 p.m. because rioters had breached the security

2    perimeter.  And I'm looking to Government's Exhibit 106 at

3    pages 16 and 17.  The Capitol remained in lockdown until

4    later that evening because of the continued presence of the

5    rioters.

6         The fourth and final element, that the defendant used or

7    carried a deadly or dangerous weapon.  Deadly or dangerous

8    weapon has the same definition as above in Counts 29, 31, and

9    32.

10        My analysis on this element is the same as it is in

11   those prior counts.  Accordingly, I find Defendant Cappuccio

12   guilty on Count 42 of disorderly -- or I'm sorry, of disruptive

13   conduct with a dangerous weapon.

14        For Defendant Klein, I find him guilty on Count 43

15   of disruptive conduct under 18 U.S.C. 1752(a)(2), but not

16   guilty of the dangerous weapon enhancement found in

17   1752(b)(1)(A).

18        Counts 50 and 51 charge Mr. Cappuccio and Mr. Klein with

19   physical violence in a restricted building or grounds with a

20   deadly or dangerous weapon.

21        The first element is that the defendants engaged in any

22   act of physical violence against any person or property in a

23   restricted building or grounds.

24        The term restricted building or grounds has the same

25   definition I've already mentioned, and as I say, they had

1    entered a restricted area.

2        Both defendants engaged in physical acts of violence.

3    They both pushed against officers in the tunnel.  As I've

4    discussed, Mr. Cappuccio had an altercation with Officer Hodges

5    where he violently assaulted the officer.  And Mr. Klein used a

6    shield to press into the body of Officer Foulds.  Regardless of

7    whether the shields are dangerous weapons, these actions

8    constitute acts of physical violence.

9        The second element is the defendants acted knowingly.

10        Again, much of what I've said is relevant here as well.

11    When near the front of the officer line, Mr. Cappuccio and

12    Mr. Klein did not retreat; instead, pressing forward towards

13    the officers.  And as discussed, Mr. Cappuccio had a violent

14    interaction with Officer Hodges when he grabbed his gas mask

15    and stole his baton, leaving him defenseless against other

16    rioters.

17        More, I note that Mr. Klein left the tunnel after

18    getting pepper-sprayed and then reentered to, again, push

19    against the line of officers, despite witnessing violence and

20    disorderly conduct within the tunnel.

21        In light of that evidence, I find that both men

22    knowingly undertook their acts of physical violence.

23        The third element is that in doing such acts, they used

24    or carried deadly or dangerous weapons.

25        My conclusion on this element is the same as it is in

1        those prior counts.

2              Accordingly, I find Mr. Cappuccio guilty on Count 50 of

3        physical violence with a dangerous weapon.

4              And as before, I find Mr. Klein guilty on Count 51 under

5        18 U.S.C. 1752(a)(4), but not guilty of the dangerous weapon

6        enhancement found in 1752(b)(1)(A).

7              Count 52 charges both defendants with disorderly or

8        disruptive conduct in a Capitol Building or Grounds in

9        violation of 40 U.S.C. 5104(e)(2)(D).

10             The first element of this offense is that the defendants

11       engaged in disorderly or disruptive conduct in any of the

12       United States Capitol Buildings, which includes, of course, the

13       Capitol itself.

14             And disorderly or disruptive conduct has the same

15       definition as mentioned already by the Court in Counts 42 and

16       43.

17             I've already described at length how the defendants

18       engaged in disorderly or disruptive conduct.  This element is

19       readily satisfied by my rulings on the other counts, especially

20       in civil disorder.  I also found -- find that the tunnel counts

21       as the Capitol Building for purposes of this offense.

22             The second element is that the defense did so -- the

23       defendants did so with the intent to impede, disrupt, or

24       disturb the orderly conduct of a session of Congress or either

25       House of Congress.

1          For Mr. Klein, much of what I said about his wanting to

2     obstruct the certification process applies here.  And so I find

3     that the government has met that element.

4          However, I do not think the government has proven this

5     element beyond a reasonable doubt as to Mr. Cappuccio.  As I

6     reasoned above for the obstruction count, I don't think his

7     vague statements or the fact that he heard former

8     President Trump speak is enough to prove that he had an intent

9     to impede, disrupt, or disturb Congress.  His actions are also

10    consistent with someone who participated in mob violence, but

11    without any particular grand plan or rationale underlying his

12    actions.

13         The third and final element is that the defendants act

14    willfully and knowingly.

15         A defendant acts willfully if he acts with intent to do

16    something that the law forbids; that is, to disobey or

17    disregard the law.

18         I've already described how Mr. Klein acted knowingly.

19    I've also decided that he acted willfully.  He undertook these

20    actions with the intent at least to enter a restricted area and

21    disturb congressional business.

22         Therefore, I find Mr. Klein guilty on Count 52 but

23    Mr. Cappuccio not guilty.

24         Finally, Count 53 charges both defendants with acts of

25    physical violence in the Capitol Grounds or Building in

1    violation of 40 U.S.C. 5104.

2        The first element is that the defendants engaged in an

3    act of physical violence in the Capitol Grounds or in any of

4    the Capitol Buildings.

5        An act of physical violence is defined as any act

6    involving an assault or other infliction or threat of

7    infliction of death or bodily harm or an individual; or two,

8    damage to or destruction of real or personal property.

9        For Mr. Cappuccio, his altercation with Officer Hodges,

10   obviously, qualifies because it involved an assault on the

11   officer using his gas mask and baton.  And Officer Hodges

12   testified that he suffered bodily injury from that interaction;

13   namely, a busted lip, a contusion on his head.

14       For Mr. Klein, I've already found that he assaulted

15   another officer in the tunnel looking, at the very least, to

16   Count 31.  So this element is met on that basis.

17       The second element is that the defendants did so

18   willfully and knowingly.

19       As discussed before, I conclude that Mr. Cappuccio and

20   Mr. Klein acted knowingly and with the knowledge that the law

21   prohibited their actions.

22       Accordingly, I find both defendants guilty on Count 53.

23       Ms. Akers, do you have any questions as to any of my

24   verdicts?

25            MS. AKERS:  No, Your Honor.

1          THE COURT:  Mr. Woodward, do you have any questions

2     as to any of my verdicts?

3          MR. WOODWARD:  No, Your Honor.

4          THE COURT:  And Ms. Douenat?

5          MS. DOUENAT:  No, Your Honor.

6          THE COURT:  All right.  Ms. Chaclan, do you have a

7     proposed sentencing date?

8          THE COURTROOM DEPUTY:  October 19th at 10:00 a.m.

9          MS. DOUENAT:  Can you repeat that.

10         THE COURTROOM DEPUTY:  October 19th at 10:00 a.m.

11         THE COURT:  Ms. Akers, does that work for the

12    government?

13         MS. AKERS:  Yes, Your Honor.

14         THE COURT:  All right.  Mr. Woodward, does that work

15    for you?

16         MR. WOODWARD:  No, sir.  I'm sorry.  I'm in trial in

17    federal district court in Maryland.

18         THE COURT:  All right.  When do you get out?

19         MR. WOODWARD:  Well, I switch to a trial in this

20    court the first week of November.  And that's with Judge Cobb.

21    I'm sure she would accommodate a Friday, if you have one.

22         THE COURT:  Okay.  Let's deal with that in just a

23    moment.  Ms. Douenat, does October 19th work for you?

24         MS. DOUENAT:  It does.

25         THE COURT:  All right.  So we'll set -- I'm sorry --

1     Mr. Cappuccio's sentencing for October 19th, we said?

2             THE COURTROOM DEPUTY:  Yes.

3             THE COURT:  At 10:00 a.m.

4         And, Mr. Woodward, you suggested a Friday in November?

5             MR. WOODWARD:  Sir.

6             THE COURT:  November 3rd at 10:00 a.m., does that

7     work for the government?

8             MS. AKERS:  Yes, Your Honor.

9             THE COURT:  And Mr. Woodward?

10            MR. WOODWARD:  Yes, sir.  I'll just run that by

11    Judge Cobb as soon as possible and make sure.

12            THE COURT:  If you need to file a motion to continue,

13    that's fine.

14            MR. WOODWARD:  Yes, sir.

15            THE COURT:  So we'll set Mr. Klein's sentencing for

16    November 3rd at 10:00 a.m.

17        As to both defendants, a written presentence report

18    will be prepared by the probation office to assist me in

19    sentencing.  You'll be asked to give information for the

20    report, and your attorney may be present, if you wish.  You and

21    your attorney will have an opportunity to read the presentence

22    report and file any objections to it before I see it and,

23    again, before your sentencing.

24        You and your attorney will have an opportunity to speak

25    to me at your sentencing hearing.  Any victims of the offense

1   will also have an opportunity to be heard at the sentencing

2   hearing.

3        Ms. Akers, are you seeking a change in release

4   conditions as to Mr. Klein?

5            MS. AKERS:  Yes, Your Honor.

6            THE COURT:  All right.  I'll hear you on that.

7            MS. AKERS:  The government's asking for step-back for

8   Mr. Klein.  Mr. Klein has now been convicted of numerous

9   serious felonies, including seven felony charges, six of which

10  were assaultive charges.  He's no longer presumed innocent.  He

11  faces serious time of incarceration.  And, thus, the government

12  believes it's appropriate to step him back.

13           THE COURT:  All right.  So my recollection is the

14  government has not been asking for step-back typically with --

15  on 111(a) charges in front of me.

16        Is this case different from those other ones?

17           MS. AKERS:  The government's position as of late

18  has been to ask for step-back for 111(a) convictions.  I would

19  note that that's not always the case.  It's a case-by-case

20  basis.

21           THE COURT:  Understood.  But is there something

22  specific here as to the defendant that would suggest that I

23  should treat him differently as to how I handled his

24  co-defendants?

25           MS. AKERS:  No, Your Honor.

1          THE COURT:  All right.  He has no criminal history;

2     is that correct?  Is that your recollection?

3          MS. AKERS:  I believe that's correct, Your Honor.

4          THE COURT:  All right.

5          MS. AKERS:  Well, actually, hold on one moment.

6          THE COURT:  Okay.

7          MS. AKERS:  That's correct, Your Honor.

8          THE COURT:  All right.  Do you wish to be heard,

9     Mr. Woodward?

10          MR. WOODWARD:  I would only note that Mr. Klein has

11     been on supervised release, home detention, for some time now

12     without incident.  In fact, it's my recollection that as long

13     as his case has been with Your Honor, there have been no

14     issues.

15          Shortly after his case -- the indictment was superseded

16     to bring him before Your Honor, Your Honor issued an

17     admonishment concerning allegations that came up, that you did

18     not directly address with your predecessor.  And since that

19     time, there's been no suggestion that Mr. Klein has failed or

20     otherwise abided by the conditions of his release.

21          And so we would submit that the government has not

22     argued or, let alone, proven that Mr. Klein presents any new

23     danger to the community or to others.  And the government has

24     never argued that Mr. Klein is a flight risk.

25          And so, respectfully, we would ask that his conditions

1    of release remain the same pending sentencing.

2              THE COURT:    Okay.    Under the statute, the defendant

3    must show and the Court must find by clear and convincing

4    evidence that the defendant is not likely to flee or pose a

5    danger to the safety of any other person or the community to

6    continue release pending sentencing.

7              I think this is a close call.    Obviously, the burden

8    shifts to the defendant at this point.    But I note that the

9    defendant has no prior criminal record.    He has been compliant,

10   as Mr. Woodward points out, at least as long as he's been in

11   front of me, which has now been well over a year.

12             And that while he has been convicted of numerous

13   felonies, as Ms. Akers points out, I think most, if not all of

14   those felonies, were either nonviolent or on the impeding or

15   interfering the end of the spectrum versus more -- more violent

16   assaults.    I also note that while -- I think both the

17   government and I need to consider each situation in a

18   case-by-case basis, as I suggested.

19             I convicted several of the defendants -- co-defendants

20   earlier on 111(a) charges, and I did not find that they posed a

21   danger to the community at this stage, and the government did

22   not suggest otherwise.

23             So for all those reasons, I will allow Defendant Klein

24   to remain on his current release conditions.

25             Sir, I'll direct you to continue to abide by those

```
 1        release conditions and report for sentencing at your sentencing

 2        date.

 3               Ms. Akers.

 4               MS. AKERS:  Your Honor, could the government be heard

 5        on an additional imposition of that condition?

 6               THE COURT:  Yes.

 7               MS. AKERS:  And could we actually be heard at the

 8        bench for this one?

 9               THE COURT:  Yes.

10               MS. AKERS:  Thank you.

11               THE COURT:  Mr. Woodward, if you can approach.

12               (Bench conference on the record.)

13               MS. AKERS:  Thank you, Your Honor.

14           After the conclusion of Ms. Banasyak's testimony, the

15        defendant contacted her and had several people contact her.

16        She's been getting text messages.

17           So we would ask as a condition of his release that he

18        not contact the witnesses, directly or indirectly, who

19        testified at trial.

20               THE COURT:  Okay.  Any objection to that?

21               MR. WOODWARD:  I don't -- I think I'd like the Court

22        to see his message.

23               THE COURT:  I mean, she's not suggesting witness

24        tampering.  But is there some reason -- I mean, they're not --

25               MR. WOODWARD:  There's --
```

```
1                THE COURT:  I mean, they're not in a relationship
2       anymore.
3                MR. WOODWARD:  Correct.  We don't object.
4                THE COURT:  Okay.  So I'm going to make this generic.
5       I want you to make clear to him what we have in mind.
6                MR. WOODWARD:  Trust me, I have made that clear to
7       him.
8                (Proceedings held in open court.)
9                THE COURT:  Mr. Klein, in addition to your current
10      release conditions, I'm directing you not to have conduct --
11      I'm sorry, have contact with any of the witnesses in this case
12      or to have any third parties contact any of the witnesses on
13      your behalf.
14           Do you understand that, sir?
15                DEFENDANT KLEIN:  Yes, Your Honor.
16                THE COURT:  You're free to go.  I'll see you at your
17      sentencing date.
18                MS. AKERS:  I'm sorry.  One more thing.
19                THE COURT:  Okay.
20                MS. AKERS:  Your Honor mentioned when going through
21      the analysis for release, the convictions on 18 U.S.C. 111.
22      Mr. Klein was also convicted on 18 U.S.C. 1752(a)(4), which is
23      a crime of violence.  So I wanted to be sure --
24                THE COURT:  Remind me, which one is that?
25                MS. AKERS:  It's Count 51, Your Honor.
```

```
1              THE COURT:  There are a lot of counts.

2              MS. AKERS:  Yes.  I agree.

3              THE COURT:  All right.  Is that the one where there

4    was not a -- I found not guilty on the deadly or dangerous

5    weapon?

6              MS. AKERS:  That's correct, Your Honor.  The

7    18 U.S.C. 1752(a)(4) is still a crime of violence.  So I just

8    want to make sure Your Honor is aware of that and takes that

9    into consideration when releasing him.

10             THE COURT:  Okay.  I appreciate your point.  I'm

11   still making the same findings.

12             MS. AKERS:  Thank you.

13             THE COURT:  Thank you.

14        You may go.

15        Ms. Douenat, I'll --

16        I take it you're seeking step-back as to Defendant

17   Cappuccio?

18             MS. AKERS:  Yes.  Now that Defendant Cappuccio has

19   been committed -- or convicted of a crime of violence, we would

20   seek a step-back.

21             THE COURT:  All right.  Ms. Douenat.

22             MS. DOUENAT:  Yes, Your Honor.  I would just like to

23   note for the record that Mr. Cappuccio has appeared every

24   single time that the Court has mandated and has showed up to

25   the airport three hours in advance knowing that TSA was going
```

1    to give him a hard time every time.

2         Yes, I understand that now there's convictions in the

3    books, Your Honor.  But Mr. Cappuccio has abided by all

4    conditions of supervised release for the last almost two years,

5    since he was arrested in August of 2021.  He has no reason

6    to -- to not show up, Your Honor, to Court.  He's got six kids

7    and a grandchild and his wife and his whole family in the

8    United States.  And so there's no reason for him not to appear,

9    Your Honor.

10        Mr. Cappuccio is also, as the Court is aware, a veteran

11   and is being treated by the VA in San Antonio.  We would like

12   the opportunity to also be able to fill out some forms to --

13   to -- which we would need Mr. Cappuccio's assistance in so when

14   he does appear in Court for sentencing, his wife can then get

15   benefits, since his benefits will cease after 60 days.

16        And so I understand this is not the Court's problem, but

17   these are the reasons why Mr. Cappuccio will show up.  He's not

18   a flight risk.  And there's no -- in his 50 years, Your Honor,

19   there's no -- there's been no issue aside from the -- the

20   matter that the Court has heard showing that he is a danger to

21   the community.

22        THE COURT:  All right.  I find that the defendant

23   cannot meet his burden at this stage.  The Court has convicted

24   the defendant of an extremely serious violent assault on an

25   officer.  I've also found his testimony to be incredible at

1    several points, which gives me pause about trusting the

2    defendant on release.

3          So at this point, therefore, I'll ask the marshals to

4    take the defendant into custody.

5          Ms. Akers, anything further for the government?

6          MS. AKERS:  No, Your Honor.

7          THE COURT:  And Mr. Woodward?

8          MR. WOODWARD:  No, Your Honor.

9          THE COURT:  And Ms. Douenat?

10         MS. DOUENAT:  No, Your Honor.

11         THE COURT:  Thank you, folks.

12         (Proceedings were concluded at 4:09 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1        CERTIFICATE OF STENOGRAPHIC OFFICIAL COURT REPORTER

2

3            I, Nancy J. Meyer, Registered Diplomate Reporter,

4    Certified Realtime Reporter, do hereby certify that the above

5    and foregoing constitutes a true and accurate transcript of my

6    stenograph notes and is a full, true, and complete transcript

7    of the proceedings to the best of my ability.

8

9                      Dated this 26th day of July, 2023.

10

11                      /s/ Nancy J. Meyer
                        Nancy J. Meyer
12                      Official Court Reporter
                        Registered Diplomate Reporter
13                      Certified Realtime Reporter
                        333 Constitution Avenue Northwest
14                      Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25

## 1

**1** [1] - 21:9
**10** [1] - 19:24
**100** [1] - 37:4
**1001** [1] - 27:25
**1006** [3] - 8:14, 51:14, 59:15
**1007** [1] - 59:7
**105** [2] - 8:12, 59:11
**106** [1] - 62:2
**1061** [1] - 18:12
**1072** [1] - 18:18
**10:00** [5] - 67:8, 67:10, 68:3, 68:6, 68:16
**10:45** [1] - 24:18
**11** [1] - 22:3
**111** [3] - 21:5, 21:7, 73:21
**111a** [20] - 12:21, 15:6, 16:4, 16:12, 16:17, 21:12, 22:15, 22:25, 23:10, 26:18, 27:20, 32:4, 34:19, 46:2, 48:21, 48:24, 50:15, 69:15, 69:18, 71:20
**111(a)** [1] - 22:6
**111(a)(1** [1] - 9:4
**111(a)(1)** [2] - 21:23, 32:6
**111(b** [3] - 34:20, 38:5, 49:25
**111(b)** [2] - 48:22, 50:15
**1124817** [1] - 16:10
**113** [1] - 58:10
**115** [1] - 58:6
**116** [1] - 58:13
**117** [1] - 58:17
**1184** [1] - 16:23
**1189** [1] - 16:24
**11:25** [1] - 24:18
**120** [1] - 58:10
**1241** [1] - 22:10
**1365(h)(3** [1] - 32:12
**14** [2] - 29:25, 30:11
**14th** [1] - 16:11
**1512(c)(2)** [1] - 50:18
**155** [1] - 17:4
**16** [2] - 51:15, 62:3
**17** [8] - 9:1, 13:7, 14:24, 18:21, 23:3, 40:25, 51:15, 62:3
**1752(a)(2** [1] - 62:15
**1752(a)(4** [3] - 64:5, 73:22, 74:7
**1752(b)(1)(A)** [2] - 62:17, 64:6
**18** [11] - 9:4, 32:12,

41:10, 41:16, 50:18, 56:11, 62:15, 64:5, 73:21, 73:22, 74:7
**189** [1] - 17:5
**19** [4] - 9:1, 23:10, 26:13, 26:16
**193** [1] - 16:22
**1960** [1] - 18:4
**1969** [1] - 18:13
**1998** [1] - 17:5
**1999** [1] - 17:6
**19th** [4] - 67:8, 67:10, 67:23, 68:1

## 2

**2** [1] - 4:25
**20** [2] - 4:12, 10:9
**200** [1] - 16:22
**2005** [1] - 41:6
**2006** [1] - 16:23
**2008** [1] - 40:20
**2014** [2] - 16:24, 22:2
**2016** [1] - 22:11
**2020** [1] - 17:8
**2021** [5] - 7:14, 8:6, 22:4, 59:6, 75:5
**2022** [2] - 16:10, 16:11
**2023** [1] - 54:2
**20:28** [1] - 33:6
**20:45** [1] - 57:15
**20:47** [2] - 28:5, 28:17
**21** [2] - 10:2, 58:10
**21-40** [1] - 3:3
**212** [1] - 18:4
**219** [1] - 18:4
**22:10** [1] - 20:9
**231(a)(3)** [1] - 56:11
**24** [1] - 19:25
**24:02** [1] - 48:9
**26** [1] - 48:8
**27** [4] - 9:1, 14:4, 24:3, 27:20
**273** [1] - 22:1
**276** [1] - 22:1
**28** [3] - 9:1, 29:15, 32:3
**29** [3] - 32:22, 39:13, 62:8
**2:00** [2] - 4:2, 62:1
**2:32** [5] - 9:7, 10:1, 10:2, 10:8, 11:4
**2:33** [1] - 10:9
**2:34** [1] - 9:7
**2:54** [1] - 19:24
**2:55:13** [1] - 19:25
**2:56** [3] - 13:8, 19:3
**2:57** [1] - 20:8
**2:58** [1] - 13:9
**2:59** [1] - 24:17

## 3

**3** [2] - 41:16, 48:9
**30** [2] - 24:17, 39:15
**303** [1] - 41:6
**305** [1] - 41:6
**31** [5] - 46:1, 48:22, 49:2, 62:8, 66:16
**32** [3] - 48:23, 50:14, 62:9
**329** [1] - 54:1
**34** [4] - 35:25, 50:16, 54:17, 56:9
**35** [5] - 10:2, 11:4, 22:19, 56:10, 58:20
**361** [1] - 18:4
**365** [1] - 54:1
**37** [1] - 22:3
**3:00** [4] - 14:3, 24:2, 24:17
**3:07** [1] - 27:21
**3:08** [1] - 29:16
**3:10** [1] - 29:16
**3:14** [1] - 27:21
**3:15** [1] - 48:8
**3:16** [1] - 48:8
**3:17** [1] - 46:9
**3:23** [1] - 11:24
**3:26** [1] - 25:4
**3:40** [1] - 25:4
**3rd** [2] - 68:6, 68:16

## 4

**4** [2] - 15:8, 16:10
**40** [3] - 19:16, 64:9, 66:1
**409** [1] - 19:25
**41** [1] - 10:8
**410** [4] - 10:1, 10:8, 11:4, 11:24
**413** [1] - 18:12
**42** [3] - 60:7, 62:12, 64:15
**428** [3] - 14:3, 19:24, 41:5
**429** [4] - 19:16, 20:8, 24:2, 24:16
**43** [3] - 60:7, 62:14, 64:16
**430** [1] - 48:7
**430.2** [1] - 46:8
**430.5** [1] - 46:8
**45** [2] - 11:4, 11:24
**48** [2] - 10:9, 11:5
**4:00** [1] - 58:7
**4:09** [1] - 76:12
**4:42** [1] - 19:16

## 5

**50** [3] - 62:18, 64:2, 75:18
**501** [8] - 14:4, 20:1, 20:8, 28:5, 28:17, 33:6, 48:9, 57:15
**509** [1] - 30:12
**51** [6] - 25:5, 27:25, 48:8, 62:18, 64:4, 73:25
**510** [2] - 29:25, 30:11
**5104** [1] - 66:1
**5104(e)(2)(D)** [1] - 64:9
**511** [1] - 48:9
**512** [3] - 24:19, 24:25, 25:4
**515** [2] - 20:12, 24:18
**517** [1] - 40:19
**52** [2] - 64:7, 65:22
**523** [2] - 10:9, 11:5
**53** [2] - 65:24, 66:22
**532** [1] - 22:3
**533.1** [1] - 35:25
**535** [1] - 22:3
**54** [1] - 24:17
**5:30** [1] - 30:12

## 6

**6(e** [1] - 4:16
**60** [1] - 75:15
**612** [2] - 30:1, 57:18
**612.13** [1] - 35:10
**612.15** [1] - 35:10
**612.21** [2] - 27:24, 31:13
**612.23** [3] - 28:17, 33:7, 57:18
**612.51** [1] - 25:5
**619** [1] - 17:7
**623.18** [1] - 52:19
**623.28** [1] - 53:4
**623.44** [1] - 53:4
**623.49** [1] - 53:6
**623.54** [1] - 52:24
**623.57** [2] - 52:14, 53:10
**623.58** [1] - 52:14
**623.66** [1] - 53:4
**64** [1] - 54:1
**653** [1] - 16:22
**680** [1] - 15:9
**6:00** [1] - 58:9
**6:21** [1] - 14:4
**6th** [20] - 7:13, 8:6, 19:5, 22:20, 52:8, 52:10, 52:20, 52:23, 52:25, 53:3, 53:7,

53:12, 57:6, 58:5, 58:7, 58:18, 59:6, 59:10, 60:6, 61:16

## 7

**7** [3] - 41:10, 41:16
**723** [1] - 17:7
**725** [1] - 17:4
**727** [1] - 17:7
**729** [1] - 17:4
**74** [1] - 22:1
**747** [1] - 16:23
**770** [1] - 22:1
**793** [1] - 17:5
**795** [1] - 17:6

## 8

**8** [1] - 40:25
**835** [1] - 22:10
**839** [1] - 40:19
**847** [1] - 38:17

## 9

**9** [5] - 5:1, 9:1, 9:6, 13:4, 48:10

## A

**a)(1)** [1] - 21:13
**a.m** [5] - 67:8, 67:10, 68:3, 68:6, 68:16
**abetted** [1] - 23:5
**abetting** [9] - 9:5, 13:6, 13:9, 23:11, 26:15, 27:21, 29:6, 29:14, 54:19
**abide** [1] - 71:25
**abided** [2] - 70:20, 75:3
**ability** [2] - 9:13, 34:10
**able** [5] - 13:23, 33:12, 49:10, 49:17, 75:12
**abrasion** [1] - 38:14
**abstract** [1] - 37:1
**acceptable** [1] - 53:23
**accepting** [1] - 53:24
**access** [1] - 31:8
**accommodate** [1] - 67:21
**accomplish** [1] - 54:12
**according** [5] - 21:2, 24:22, 58:5, 58:9, 58:16
**accordingly** [3] - 62:11, 64:2, 66:22
**accrues** [1] - 21:17
**acquired** [1] - 41:18

**acquittal** [1] - 5:18
**Act** [1] - 18:10
**act** [15] - 12:24, 20:20, 27:5, 28:25, 31:22, 34:10, 53:5, 54:3, 56:14, 62:22, 65:13, 66:3, 66:5
**acted** [23] - 5:12, 9:14, 10:14, 10:23, 11:1, 11:10, 22:16, 22:21, 25:14, 27:15, 33:22, 36:18, 40:7, 40:8, 46:19, 50:24, 51:2, 53:19, 53:20, 63:9, 65:18, 65:19, 66:20
**acting** [12] - 10:11, 10:12, 11:6, 11:13, 11:21, 20:5, 21:6, 26:10, 29:4, 30:6, 31:25, 54:6
**action** [2] - 11:18, 38:16
**actions** [32] - 6:18, 8:5, 9:5, 10:10, 10:21, 20:18, 27:7, 27:13, 28:9, 28:19, 29:10, 29:18, 30:2, 30:5, 31:17, 35:6, 36:1, 48:18, 49:7, 51:4, 52:1, 52:8, 53:12, 55:15, 56:7, 56:18, 56:21, 63:7, 65:9, 65:12, 65:20, 66:21
**actively** [1] - 19:18
**activities** [1] - 7:22
**activity** [2] - 9:8, 60:17
**acts** [21] - 11:8, 20:3, 20:13, 21:13, 21:18, 21:22, 25:21, 27:8, 27:10, 28:20, 57:2, 57:9, 57:22, 63:2, 63:8, 63:22, 63:23, 65:15, 65:24
**actual** [3] - 18:16, 38:4, 39:25
**addition** [5] - 10:10, 32:6, 37:13, 52:7, 73:9
**additional** [1] - 72:5
**address** [1] - 70:18
**adequate** [1] - 38:8
**adequately** [2] - 13:11, 14:11
**admissibility** [1] - 59:3
**admissions** [1] - 39:19
**admitted** [3] - 6:6, 14:16, 33:10

**admittedly** [1] - 37:21
**admonishment** [1] - 70:17
**advance** [2] - 55:3, 74:25
**advantage** [1] - 46:16
**adverse** [1] - 14:14
**adversely** [1] - 57:25
**affected** [1] - 57:25
**afternoon** [6] - 3:7, 3:12, 3:13, 3:17, 3:18, 3:19
**afterwards** [1] - 25:1
**AGENT** [1] - 23:8
**Agent** [18] - 4:1, 8:8, 13:18, 13:19, 13:22, 14:6, 14:7, 14:9, 14:11, 14:14, 14:18, 14:21, 23:6, 23:15, 23:17, 23:19, 23:23
**agents** [3] - 3:9, 6:21, 27:24
**aggressive** [1] - 10:4
**ago** [2] - 10:25, 23:18
**agree** [7] - 6:8, 18:19, 25:10, 38:11, 51:19, 74:2
**agreed** [1] - 30:13
**agreed-upon** [1] - 30:13
**agrees** [1] - 21:24
**aided** [1] - 23:5
**aiding** [11] - 9:5, 13:6, 13:9, 23:11, 26:8, 26:15, 27:11, 27:21, 29:6, 29:14, 54:18
**air** [1] - 59:25
**airport** [1] - 74:25
**AKERS** [26] - 3:7, 3:23, 4:5, 4:8, 66:25, 67:13, 68:8, 69:5, 69:7, 69:17, 69:25, 70:3, 70:5, 70:7, 72:4, 72:7, 72:10, 72:13, 73:18, 73:20, 73:25, 74:2, 74:6, 74:12, 74:18, 76:6
**Akers** [9] - 3:7, 3:20, 41:24, 66:23, 67:11, 69:3, 71:13, 72:3, 76:5
**alarms** [1] - 60:2
**alike** [1] - 59:24
**allegations** [1] - 70:17
**alleged** [4] - 12:13, 17:10, 18:1, 35:18
**allegedly** [1] - 34:9
**allow** [1] - 71:23
**allowed** [2] - 14:25, 34:13

**almost** [2] - 58:13, 75:4
**alone** [1] - 70:22
**Alone** [1] - 22:2
**altercation** [2] - 63:4, 66:9
**alternative** [1] - 26:14
**amended** [1] - 18:10
**Amendment** [2] - 15:11, 17:25
**amendment** [2] - 18:16, 18:17
**America** [1] - 3:3
**analysis** [9] - 14:10, 18:8, 36:14, 39:14, 39:18, 40:21, 49:2, 62:10, 73:21
**angry** [1] - 56:6
**announced** [1] - 58:8
**Antifa** [1] - 31:7
**Antonio** [1] - 75:11
**apart** [1] - 47:18
**apologize** [1] - 5:3
**App'x** [1] - 16:22
**apparent** [3] - 9:13, 28:14, 52:23
**appear** [3] - 21:12, 75:8, 75:14
**appeared** [1] - 74:23
**applies** [2] - 56:17, 65:2
**appointed** [1] - 52:17
**appointee** [3] - 52:18, 53:9, 54:9
**appreciate** [1] - 74:10
**approach** [3] - 3:20, 41:24, 72:11
**appropriate** [1] - 69:12
**April** [1] - 16:11
**area** [15] - 7:16, 8:19, 8:23, 40:24, 49:23, 58:25, 59:10, 59:12, 59:17, 59:20, 59:23, 60:6, 60:24, 63:1, 65:20
**areas** [1] - 8:25
**argue** [1] - 47:3
**argued** [4] - 37:17, 41:22, 70:22, 70:24
**argues** [3] - 13:11, 17:25, 21:5
**arguing** [1] - 23:13
**argument** [3] - 25:23, 34:16, 47:6
**arms** [1] - 34:5
**arrested** [2] - 12:4, 75:5
**Article** [1] - 40:25
**article** [1] - 58:1

**Ashley** [1] - 3:7
**aside** [1] - 75:19
**assault** [31] - 6:11, 9:9, 9:11, 9:13, 11:25, 13:7, 16:15, 17:23, 19:8, 21:8, 21:23, 22:5, 23:10, 25:6, 27:20, 28:6, 32:4, 32:22, 32:24, 34:5, 37:2, 39:14, 40:9, 46:2, 48:23, 48:24, 49:22, 66:6, 66:10, 75:24
**assaulted** [1] - 15:16, 15:20, 18:21, 18:23, 24:4, 24:9, 31:7, 33:21, 46:4, 63:5, 66:14
**assaulting** [7] - 9:3, 10:13, 26:23, 27:16, 34:1, 37:22, 53:21
**assaultive** [1] - 69:10
**assaults** [7] - 12:13, 17:20, 21:14, 28:11, 29:11, 57:20, 71:16
**assemblages** [1] - 57:2
**assertion** [1] - 36:7
**assist** [1] - 68:18
**assistance** [1] - 75:13
**assisting** [1] - 27:11
**assume** [1] - 51:23
**attack** [14] - 28:14, 34:25, 35:5, 36:1, 46:13, 46:14, 46:18, 47:14, 47:15, 47:17, 47:18, 47:22, 48:5, 49:22
**attacked** [1] - 36:4
**attacking** [1] - 35:20
**attacks** [3] - 7:15, 7:23, 11:7
**attempt** [1] - 9:11
**attempted** [7] - 10:23, 19:21, 20:3, 24:13, 25:14, 50:20, 56:14
**attempts** [1] - 61:17
**attend** [1] - 4:24
**attention** [1] - 38:13
**attorney** [3] - 68:20, 68:21, 68:24
**August** [1] - 75:5
**authority** [3] - 22:7, 41:4, 41:7
**availability** [1] - 37:7
**avoid** [1] - 12:4
**aware** [3] - 22:7, 74:8, 75:10
**awareness** [1] - 50:24

**B**

**b)** [2] - 46:3, 48:24
**Banasyak's** [1] - 72:14
**banging** [1] - 19:14
**Banner** [1] - 41:5
**barrier** [1] - 24:15
**base** [1] - 10:18
**based** [5] - 6:22, 14:1, 39:18, 61:12
**basis** [3] - 66:16, 69:20, 71:18
**baton** [11] - 11:3, 26:7, 33:10, 35:20, 35:22, 36:22, 37:3, 37:13, 37:22, 38:20, 38:23, 38:24, 39:16, 39:23, 40:5, 49:15, 63:15, 66:11
**batons** [1] - 39:4
**battle** [3] - 34:3, 35:14, 51:24
**battling** [4] - 30:25, 49:16, 51:4, 53:22
**begin** [2] - 6:12, 58:9
**beginning** [1] - 13:17
**behalf** [3] - 3:8, 3:14, 73:13
**behavior** [1] - 17:23
**behind** [5] - 11:12, 29:20, 30:6, 33:19, 47:10
**belief** [1] - 26:5
**believes** [1] - 69:12
**below** [1] - 6:11
**Ben** [1] - 4:1
**bench** [2] - 41:25, 72:8
**Bench** [3] - 3:21, 72:12
**beneath** [1] - 23:25
**benefit** [1] - 54:3
**benefiting** [1] - 54:7
**benefits** [2] - 75:15
**Benjamin** [1] - 3:10
**betraying** [1] - 53:3
**between** [9] - 13:10, 16:18, 18:14, 18:15, 19:5, 20:22, 24:12, 33:17, 47:14
**beyond** [10] - 6:4, 15:6, 21:23, 38:1, 46:25, 48:10, 57:21, 61:11, 61:19, 65:5
**bias** [1] - 7:2
**Biden** [2] - 54:9, 56:3
**bike** [2] - 8:20, 59:17
**binding** [2] - 22:8, 22:11
**blaring** [1] - 60:1

**bleeding** [1] - 31:1
**bless** [1] - 11:22
**bloodying** [1] - 33:5
**bodily** [17] - 32:10, 32:12, 32:13, 32:16, 38:7, 38:10, 38:11, 38:23, 39:1, 47:1, 47:12, 48:17, 49:24, 50:5, 50:9, 66:7, 66:12
**body** [5] - 19:13, 23:20, 24:1, 46:10, 63:6
**body-worn** [1] - 19:13
**body-worn-camera** [2] - 23:20, 24:1
**Bogner** [1] - 39:3
**Bogner's** [2] - 19:13, 23:19, 24:1
**bolster** [1] - 37:8
**books** [1] - 75:3
**borrowed** [1] - 53:25
**bottles** [1] - 28:2
**boundaries** [1] - 59:9
**Bowser** [1] - 58:8
**boys** [1] - 35:8
**breached** [2] - 19:17, 62:1
**break** [3] - 10:11, 24:21, 53:1
**breaking** [1] - 52:3
**brief** [5] - 6:9, 14:25, 15:8, 34:13
**briefing** [1] - 34:15
**briefly** [1] - 39:14
**Briley** [1] - 22:1
**bring** [1] - 70:16
**broaden** [1] - 18:7
**broader** [1] - 55:21
**broken** [1] - 24:14
**building** [16] - 41:14, 41:19, 41:20, 51:14, 51:21, 51:24, 58:24, 59:1, 60:8, 60:12, 60:23, 60:24, 61:13, 62:19, 62:23, 62:24
**Building** [7] - 51:5, 52:4, 53:2, 54:12, 64:8, 64:21, 65:25
**Buildings** [2] - 64:12, 66:4
**burden** [6] - 6:4, 14:23, 15:6, 55:17, 71:7, 75:23
**business** [8] - 58:12, 61:5, 61:9, 61:14, 61:16, 61:22, 65:21
**busted** [1] - 66:13

# C

**camera** [3] - 19:13, 23:20, 24:1
**cameraman** [1] - 35:3
**cannot** [5] - 18:6, 18:10, 21:6, 36:16, 75:23
**capabilities** [1] - 32:19
**capable** [4] - 32:10, 39:1, 50:5, 50:9
**Capitol** [39] - 8:5, 8:11, 8:16, 12:15, 12:17, 15:18, 20:17, 24:9, 24:22, 35:7, 35:12, 40:13, 41:11, 51:5, 51:12, 51:17, 51:18, 52:4, 53:2, 54:12, 55:6, 55:7, 55:10, 56:1, 57:9, 57:23, 59:5, 59:13, 61:11, 61:17, 61:25, 62:3, 64:8, 64:12, 64:13, 64:21, 65:25, 66:3, 66:4
**Cappuccio** [52] - 3:3, 3:14, 3:18, 6:1, 7:9, 8:7, 28:15, 29:15, 30:19, 31:25, 32:21, 32:25, 33:9, 33:12, 33:21, 33:22, 34:1, 34:7, 34:14, 35:2, 36:6, 36:15, 36:22, 37:3, 37:13, 37:17, 37:21, 39:12, 39:15, 40:4, 41:22, 47:19, 55:18, 56:9, 57:11, 61:15, 62:11, 62:18, 63:4, 63:11, 63:13, 64:2, 65:5, 65:23, 66:9, 66:19, 74:17, 74:18, 74:23, 75:3, 75:10, 75:17
**Cappuccio's** [19] - 7:7, 33:15, 34:25, 36:2, 36:13, 36:23, 37:11, 38:1, 38:9, 38:16, 38:18, 39:19, 40:3, 54:20, 55:3, 55:11, 55:20, 68:1, 75:13
**car** [1] - 55:4
**careful** [1] - 14:15
**carefully** [3] - 6:5, 11:11, 14:8
**Carlton** [1] - 23:11
**carried** [3] - 35:20, 62:7, 63:24
**carry** [2] - 9:17, 22:5

**case** [18] - 5:12, 6:4, 6:21, 12:13, 12:22, 18:5, 18:14, 18:17, 57:8, 69:16, 69:19, 70:13, 70:15, 71:18, 73:11
**Case** [1] - 3:3
**case-by-case** [2] - 69:19, 71:18
**cases** [1] - 6:14
**castle** [2] - 35:8, 55:6
**caught** [1] - 56:4
**caused** [3] - 38:15, 47:17, 47:18
**causes** [1] - 57:3
**causing** [4] - 32:10, 39:1, 50:5, 50:9
**cease** [1] - 75:15
**central** [1] - 6:17
**certain** [2] - 9:4, 37:4
**certainly** [4] - 26:21, 50:2, 52:2, 55:24
**certainty** [1] - 37:6
**certification** [12] - 51:7, 51:12, 51:22, 52:4, 52:7, 52:10, 53:17, 54:6, 55:14, 55:23, 61:11, 65:2
**certified** [1] - 54:9
**certify** [4] - 52:12, 53:13, 53:15, 56:2
**Chaclan** [1] - 67:6
**change** [2] - 12:2, 69:3
**chaotic** [2] - 14:1, 23:23
**charge** [8] - 9:2, 16:4, 16:12, 16:17, 18:7, 38:5, 60:7, 62:18
**charged** [10] - 5:19, 8:1, 16:20, 17:13, 17:20, 18:22, 27:20, 35:4, 38:6, 39:13
**charges** [20] - 5:23, 7:10, 12:21, 13:7, 18:11, 23:10, 29:15, 32:5, 34:21, 39:15, 48:23, 50:16, 56:10, 64:7, 65:24, 69:9, 69:10, 69:15, 71:20
**charging** [2] - 32:22, 46:2
**cheers** [1] - 31:3
**chemical** [3] - 7:17, 27:24, 59:25
**choice** [1] - 4:20
**Circuit** [17] - 16:23, 16:24, 17:5, 17:6, 17:7, 17:9, 17:15, 18:13, 22:2, 22:3,

22:7, 22:10, 22:13, 40:19, 40:21, 41:6, 54:2
**circuit** [2] - 18:14, 22:8
**Circuits** [1] - 21:24
**circuits** [3] - 16:18, 16:25, 22:4
**circumstances** [3] - 31:6, 53:23, 60:14
**cites** [1] - 18:13
**citywide** [1] - 58:9
**civil** [12] - 21:3, 22:18, 22:21, 22:23, 26:11, 29:4, 31:25, 56:11, 56:23, 57:1, 57:24, 64:20
**claim** [4] - 30:23, 31:6, 36:2, 55:22
**claimed** [2] - 30:20, 35:19
**claims** [2] - 34:7, 48:7
**clashes** [1] - 19:4
**clashing** [1] - 29:20
**clause** [3] - 40:25, 41:2, 41:5
**Clause** [3] - 40:25, 41:16
**clear** [15] - 5:9, 11:6, 12:20, 14:13, 19:18, 21:12, 26:4, 26:14, 34:20, 34:21, 48:5, 51:11, 71:3, 73:5, 73:6
**cleared** [2] - 19:1, 24:12
**clearly** [14] - 12:11, 20:5, 23:25, 27:3, 28:9, 28:19, 29:14, 30:3, 31:5, 32:25, 38:4, 40:2, 46:9, 58:11
**Clements** [1] - 3:11
**clenched** [1] - 35:24
**client** [3] - 3:16, 4:21, 5:4
**climbing** [1] - 8:24, 59:24
**close** [17] - 11:13, 13:24, 17:22, 21:19, 24:14, 30:8, 35:15, 40:24, 41:19, 52:12, 52:23, 53:6, 54:4, 55:1, 58:11, 60:11, 71:7
**closed** [2] - 58:6, 59:17
**closing** [1] - 24:24
**co** - 3:9, 28:15, 31:12, 33:17, 40:4,

69:24, 71:19
**co-conspirator** [1] - 31:12
**co-counsel** [1] - 3:9
**co-Defendant** [3] - 28:15, 33:17, 40:4
**co-defendants** [2] - 69:24, 71:19
**Cobb** [2] - 67:20, 68:11
**coincided** [1] - 20:10
**collapsed** [1] - 57:20
**Columbia** [2] - 41:3, 41:8
**combination** [1] - 59:16
**combined** [1] - 52:1
**coming** [2] - 31:1, 31:2
**commerce** [4] - 58:1, 58:2, 58:12, 58:17
**commit** [17] - 12:25, 20:21, 21:1, 21:2, 21:18, 21:21, 22:16, 22:21, 22:25, 26:11, 26:17, 27:16, 29:1, 29:4, 31:22, 31:25, 56:14
**committed** [8] - 21:7, 22:15, 26:24, 26:25, 40:11, 56:14, 57:9, 74:19
**committing** [1] - 27:12
**commodity** [1] - 58:1
**communicated** [1] - 58:7
**community** [4] - 70:23, 71:5, 71:21, 75:21
**Comottor** [1] - 3:10
**comparable** [1] - 48:15
**compared** [1] - 58:15
**completely** [3] - 33:3, 33:16, 35:6
**compliant** [1] - 71:9
**concede** [1] - 54:25
**conceded** [1] - 8:7
**concern** [2] - 4:17, 17:21
**concerning** [1] - 70:17
**concerns** [2] - 17:16, 17:18
**concert** [1] - 51:10
**conclude** [1] - 66:19
**concluded** [1] - 76:12
**concluding** [1] - 31:24
**conclusion** [3] - 31:16, 63:25, 72:14
**conclusions** [2] -

5:24, 8:1

**concurrence** [1] - 53:25

**concurrent** [1] - 40:24

**condition** [2] - 72:5, 72:17

**conditions** [7] - 69:4, 70:20, 70:25, 71:24, 72:1, 73:10, 75:4

**conduct** [30] - 8:2, 11:17, 12:7, 27:9, 28:11, 29:7, 50:25, 58:2, 60:8, 60:11, 60:13, 60:16, 60:20, 61:4, 61:5, 61:8, 61:9, 61:18, 61:20, 61:21, 61:22, 62:13, 62:15, 63:20, 64:8, 64:11, 64:14, 64:18, 64:24, 73:10

**conducted** [1] - 40:21

**conference** [3] - 3:21, 41:25, 72:12

**confidence** [1] - 52:10

**confirm** [1] - 4:5

**confirmatory** [1] - 37:8

**confirmed** [3] - 3:23, 3:25

**confirms** [1] - 26:5

**confrontation** [1] - 31:15

**Congress** [6] - 41:3, 41:7, 59:6, 64:24, 64:25, 65:9

**congressional** [2] - 61:14, 65:21

**consciousness** [1] - 53:22

**consent** [1] - 39:22

**consider** [8] - 13:2, 13:5, 23:4, 32:18, 39:15, 46:1, 54:18, 71:17

**consideration** [1] - 74:9

**considered** [5] - 6:5, 11:11, 25:23, 47:4, 53:11

**considers** [1] - 37:6

**consistency** [1] - 37:7

**consistent** [5] - 18:8, 35:6, 37:14, 56:8, 65:10

**conspirator** [1] - 31:12

**constitute** [1] - 63:8

**Constitution** [2] - 41:1, 41:7

**constrained** [1] - 4:16

**consulted** [1] - 3:23

**consumer** [1] - 55:12

**contact** [16] - 12:24, 13:1, 15:25, 20:20, 22:16, 28:25, 30:14, 30:15, 31:21, 31:23, 38:4, 46:23, 72:15, 72:18, 73:11, 73:12

**contacted** [1] - 72:15

**contemplated** [1] - 41:20

**contested** [1] - 37:12

**context** [2] - 7:25, 16:3

**continue** [4] - 51:8, 68:12, 71:6, 71:25

**continued** [1] - 62:4

**continuing** [3] - 27:3, 32:21, 35:11

**contrary** [2] - 22:7, 35:5

**control** [1] - 40:17

**contusion** [3] - 37:23, 38:20, 66:13

**convicted** [7] - 47:6, 69:8, 71:12, 71:19, 73:22, 74:19, 75:23

**conviction** [2] - 5:20, 16:20

**convictions** [3] - 69:18, 73:21, 75:2

**convinced** [1] - 14:9

**convincing** [2] - 22:4, 71:3

**coordinated** [2] - 20:10, 29:12

**cordoned** [2] - 58:25, 60:24

**correct** [6] - 22:13, 70:2, 70:3, 70:7, 73:3, 74:6

**correctly** [1] - 8:9

**corroborated** [2] - 7:7, 37:11

**corrupt** [1] - 54:14

**corruptly** [3] - 51:2, 53:20, 53:25

**counsel** [4] - 3:5, 3:8, 3:9, 3:24

**counsel's** [1] - 4:24

**count** [13] - 12:21, 13:10, 13:14, 20:23, 22:22, 23:12, 23:13, 26:12, 41:23, 48:23, 49:4, 55:19, 65:6

**Count** [35] - 9:6, 13:4, 13:7, 14:24, 18:21, 22:19, 23:3, 23:10, 26:13, 26:16, 27:20, 29:15, 32:3, 32:22,

39:13, 39:15, 46:1, 48:22, 49:2, 50:14, 50:16, 54:17, 56:9, 56:10, 58:20, 62:12, 62:14, 64:2, 64:4, 64:7, 65:22, 65:24, 66:16, 66:22, 73:25

**counteract** [1] - 12:5

**countless** [1] - 33:19

**counts** [10] - 5:19, 6:10, 12:20, 58:21, 61:7, 62:11, 64:1, 64:19, 64:20, 74:1

**Counts** [5] - 9:1, 60:7, 62:8, 62:18, 64:15

**coupled** [1] - 9:12

**course** [7] - 6:7, 28:19, 48:17, 54:11, 60:2, 60:17, 64:12

**Court** [11] - 9:14, 22:11, 64:15, 71:3, 72:21, 74:24, 75:6, 75:10, 75:14, 75:20, 75:23

**COURT** [51] - 3:12, 3:17, 3:22, 4:4, 4:7, 4:14, 4:18, 5:8, 23:9, 46:1, 67:1, 67:4, 67:6, 67:11, 67:14, 67:18, 67:22, 67:25, 68:3, 68:6, 68:9, 68:12, 68:15, 69:6, 69:13, 69:21, 70:1, 70:4, 70:6, 70:8, 71:2, 72:6, 72:9, 72:11, 72:20, 72:23, 73:1, 73:4, 73:9, 73:16, 73:19, 73:24, 74:1, 74:3, 74:10, 74:13, 74:21, 75:22, 76:7, 76:9, 76:11

**court** [8] - 4:9, 16:11, 18:6, 18:10, 45:25, 67:17, 67:20, 73:8

**Court's** [2] - 5:25, 75:16

**COURTROOM** [4] - 3:2, 67:8, 67:10, 68:2

**courts** [1] - 40:15

**cover** [1] - 21:15

**covers** [1] - 9:6

**create** [1] - 24:14

**created** [1] - 49:20

**creating** [1] - 59:10

**credentials** [1] - 36:10

**credibility** [3] - 6:13, 7:8, 14:14

**credible** [5] - 6:25, 7:6, 11:16, 31:9,

36:24

**credibly** [1] - 33:11

**credit** [9] - 7:4, 11:1, 34:24, 36:14, 37:2, 39:2, 46:18, 55:10, 59:12

**crime** [10] - 16:20, 18:9, 18:22, 34:19, 41:13, 41:20, 50:19, 73:23, 74:7, 74:19

**crimes** [3] - 34:17, 35:4, 36:9

**criminal** [2] - 70:1, 71:9

**Criminal** [1] - 3:2

**crowd** [6] - 19:6, 19:13, 31:4, 31:15, 49:18, 56:5

**crowd's** [1] - 34:8

**crowding** [1] - 60:15

**curfew** [1] - 58:9

**current** [2] - 71:24, 73:9

**custody** [1] - 76:4

**cut** [1] - 38:14

**Cutler** [3] - 36:23, 37:5

## D

**D.C** [5] - 7:8, 18:13, 41:6, 54:2, 58:6

**damage** [2] - 57:4, 66:8

**damaged** [1] - 59:20

**danger** [6] - 50:11, 57:3, 70:23, 71:5, 71:21, 75:20

**dangerous** [21] - 32:5, 32:8, 32:9, 32:18, 38:7, 38:25, 47:3, 47:5, 49:21, 50:8, 60:9, 62:7, 62:13, 62:16, 62:20, 63:7, 63:24, 64:3, 64:5, 74:4

**dangers** [1] - 56:8

**Daniel** [2] - 32:22, 59:4

**date** [4] - 58:15, 67:7, 72:2, 73:17

**days** [3] - 35:9, 53:7, 75:15

**deadly** [13] - 32:7, 32:9, 32:17, 38:6, 38:25, 39:5, 47:5, 60:9, 62:7, 62:20, 63:24, 74:4

**deal** [1] - 67:22

**death** [6] - 32:10, 32:14, 39:1, 39:6,

48:17, 66:7

**decided** [2] - 56:3, 65:19

**decidedly** [1] - 55:19

**decision** [5] - 13:15, 22:8, 51:20, 58:8, 58:11

**decisions** [3] - 20:18, 22:11, 31:16

**decreases** [1] - 58:14

**defend** [1] - 46:14

**Defendant** [9] - 28:15, 33:17, 40:4, 62:11, 62:14, 71:23, 74:16, 74:18

**defendant** [52] - 9:14, 10:14, 11:1, 13:1, 15:16, 15:24, 16:7, 16:8, 16:21, 17:2, 17:13, 17:25, 18:21, 18:23, 20:3, 20:5, 20:15, 24:4, 25:1, 25:24, 26:10, 26:19, 26:23, 27:2, 27:5, 27:10, 27:15, 32:11, 33:11, 38:6, 46:11, 46:19, 47:24, 50:20, 50:22, 50:24, 51:2, 52:21, 54:2, 56:18, 62:6, 65:15, 69:22, 71:2, 71:4, 71:8, 71:9, 72:15, 75:22, 75:24, 76:2, 76:4

**DEFENDANT** [1] - 73:15

**defendant's** [6] - 11:17, 11:19, 17:20, 20:9, 27:7, 51:16

**defendants** [38] - 5:21, 7:11, 7:21, 8:4, 8:15, 9:2, 12:22, 17:1, 32:7, 50:16, 51:4, 51:19, 56:10, 56:13, 58:19, 58:23, 59:19, 60:7, 60:10, 60:19, 61:3, 61:8, 62:21, 63:2, 63:9, 64:7, 64:10, 64:17, 64:23, 65:13, 65:24, 66:2, 66:17, 66:22, 68:17, 69:24, 71:19

**defendants'** [5] - 5:18, 51:20, 53:24, 56:21, 61:20

**defense** [5] - 7:5, 19:15, 34:20, 56:13, 64:22

**defense's** [1] - 54:14

**defenseless** [4] - 33:16, 36:4, 40:3,

63:15
**defined** [3] - 22:24,
32:12, 66:5
**defines** [1] - 57:1
**definition** [6] - 41:14,
53:24, 54:14, 62:8,
62:25, 64:15
**degree** [1] - 57:25
**delayed** [1] - 57:25
**denial** [1] - 5:21
**denying** [1] - 5:17
**Department** [3] -
12:12, 15:18, 18:24
**deplorables** [1] - 56:6
**DEPUTY** [4] - 3:2,
67:8, 67:10, 68:2
**described** [5] - 34:2,
53:4, 64:17, 65:18
**despite** [5] - 4:23,
31:10, 35:21, 50:11,
63:19
**destruction** [1] - 66:8
**detail** [4] - 22:18,
22:19, 37:19, 49:1
**detailed** [1] - 52:9
**detention** [1] - 70:11
**determinations** [2] -
7:8, 14:14
**determining** [1] -
32:17
**deuce** [1] - 35:8
**different** [3] - 16:3,
48:18, 69:16
**differently** [1] - 69:23
**difficult** [4] - 24:3,
24:21, 30:5, 46:14
**difficulty** [2] - 8:17,
31:24
**diminishes** [1] - 6:19
**direct** [1] - 71:25
**directing** [1] - 73:10
**direction** [3] - 12:6,
50:7, 50:12
**directions** [1] - 10:16
**directly** [3] - 25:19,
70:18, 72:18
**Dirty** [1] - 35:8
**disagree** [1] - 6:10
**disappointed** [1] -
5:10
**discovered** [2] -
53:14, 56:1
**discredit** [1] - 36:9
**discrediting** [1] -
14:17
**discuss** [1] - 7:8
**discussed** [5] - 60:19,
61:7, 63:4, 63:13,
66:19
**discussing** [3] - 7:10,

22:19, 59:4
**discussions** [1] - 4:25
**disfigurement** [1] -
32:15
**dislodged** [1] - 33:14
**dismiss** [1] - 16:4
**disobey** [1] - 65:16
**disorder** [12] - 21:3,
22:18, 22:21, 22:24,
26:11, 29:4, 32:1,
56:11, 56:23, 57:1,
57:24, 64:20
**disorderly** [10] - 60:7,
60:11, 60:13, 60:20,
62:12, 63:20, 64:7,
64:11, 64:14, 64:18
**disperse** [1] - 8:22
**dispute** [2] - 13:10,
20:22
**disregard** [1] - 65:17
**disrupt** [6] - 61:5,
61:9, 61:13, 61:15,
64:23, 65:9
**disrupted** [1] - 61:22
**disruptive** [11] - 60:8,
60:11, 60:14, 60:16,
61:8, 62:12, 62:15,
64:8, 64:11, 64:14,
64:18
**distinctions** [1] -
47:13
**distinctive** [1] - 23:25
**distinguished** [1] -
18:14
**distinguishers** [1] -
47:25
**distributed** [1] - 28:2
**district** [1] - 67:17
**District** [4] - 41:3,
41:4, 41:8, 58:14
**disturb** [2] - 64:24,
65:9, 65:21
**disturbance** [2] - 57:2,
60:16
**disturbed** [1] - 58:16
**doctor** [1] - 47:20
**Donald** [1] - 54:7
**done** [1] - 17:12
**door** [9] - 19:14,
24:23, 25:11, 26:21,
33:17, 47:8, 47:11,
48:5, 57:14
**doors** [3] - 19:17,
24:14, 55:6
**doorway** [1] - 19:21
**double** [3] - 17:3,
17:15, 17:17
**doubt** [10] - 6:5, 15:6,
38:1, 46:25, 48:10,
57:22, 59:22, 61:12,

61:19, 65:5
**DOUENAT** [6] - 3:13,
67:5, 67:9, 67:24,
74:22, 76:10
**Douenat** [7] - 3:14,
3:17, 67:4, 67:23,
74:15, 74:21, 76:9
**down** [2] - 33:4, 59:13
**Dr** [2] - 36:23, 37:5
**dragged** [1] - 57:19
**during** [15] - 6:6, 6:15,
13:16, 16:15, 17:23,
24:5, 27:22, 29:18,
33:16, 37:22, 40:9,
47:8, 47:16, 47:22,
55:23
**duties** [10] - 12:9,
12:11, 12:16, 15:23,
16:1, 18:25, 24:10,
56:22, 56:25, 61:16

# E

**early** [2] - 5:1, 58:11
**easily** [7] - 12:10,
12:21, 20:15, 27:14,
28:22, 54:4, 61:24
**ECF** [1] - 15:9
**effect** [2] - 50:25, 51:6
**effects** [2] - 36:24,
59:25
**effort** [6] - 24:14,
25:25, 28:12, 29:12,
46:6, 61:12
**efforts** [4] - 19:18,
26:4, 50:12, 50:13
**egregious** [1] - 28:11
**either** [10] - 18:14,
21:2, 22:15, 34:20,
36:21, 41:22, 54:3,
57:25, 64:24, 71:14
**election** [7] - 52:12,
52:17, 53:14, 53:15,
54:22, 54:24, 56:2
**electoral** [1] - 51:7
**element** [95] - 9:9,
10:22, 11:8, 12:7,
12:10, 12:19, 12:23,
13:15, 15:19, 15:24,
16:17, 17:14, 18:9,
18:22, 19:8, 20:2,
20:13, 20:15, 20:19,
20:22, 22:14, 23:1,
23:2, 25:6, 25:13,
25:16, 25:21, 25:23,
26:9, 26:10, 26:12,
27:14, 27:18, 28:6,
28:18, 28:20, 28:22,
28:24, 30:7, 30:15,
30:18, 30:19, 31:20,

31:21, 32:24, 33:22,
33:24, 38:3, 38:5,
38:7, 39:8, 39:20,
39:25, 40:2, 40:7,
40:8, 40:10, 40:13,
41:10, 46:4, 46:21,
46:22, 46:25, 51:3,
52:6, 53:19, 54:5,
54:15, 55:17, 56:13,
56:17, 56:20, 57:24,
60:10, 61:2, 61:3,
61:20, 61:24, 62:6,
62:10, 62:21, 63:9,
63:23, 63:25, 64:10,
64:18, 64:22, 65:3,
65:5, 65:13, 66:2,
66:16, 66:17
**elements** [16] - 6:8,
6:11, 15:7, 15:10,
15:13, 16:20, 26:17,
29:13, 30:13, 32:6,
39:17, 46:19, 48:25,
49:2, 50:19, 61:19
**email** [1] - 13:20
**emerged** [1] - 35:23
**employee** [2] - 15:21,
16:1
**employees** [1] - 58:8
**employment** [1] -
16:14
**enclave** [2] - 40:25,
41:2
**encompass** [1] -
21:14
**encouraging** [1] -
27:12
**end** [2] - 34:21, 71:15
**endure** [1] - 7:23
**endured** [1] - 49:22
**enforcement** [13] -
9:10, 16:6, 16:9,
16:15, 19:9, 25:7,
27:17, 28:7, 28:10,
32:24, 56:16, 56:19,
56:21
**engaged** [19] - 12:8,
12:11, 12:16, 15:22,
16:1, 18:24, 24:10,
56:18, 56:21, 56:25,
60:10, 60:20, 61:3,
61:8, 62:21, 63:2,
64:11, 64:18, 66:2
**enhancement** [3] -
49:25, 62:16, 64:6
**ensure** [1] - 54:6
**ensuring** [1] - 52:13
**enter** [3] - 51:21,
61:12, 65:20
**entered** [11] - 8:16,
8:18, 8:19, 30:24,

34:11, 35:2, 59:19,
59:21, 59:23, 60:5,
63:1
**entering** [2] - 35:6,
35:16
**enters** [1] - 4:10
**entirely** [1] - 5:8
**entitled** [1] - 39:21
**entreaties** [1] - 26:3
**epicenter** [2] - 20:17,
35:12
**episode** [2] - 35:1,
35:18
**epithets** [1] - 7:20
**escape** [1] - 46:13
**especially** [4] - 17:18,
27:13, 51:8, 64:19
**essential** [5] - 7:4,
16:17, 17:14, 18:9,
18:22
**essentially** [1] - 14:6
**establishing** [1] - 41:3
**evade** [1] - 48:13
**evening** [1] - 62:4
**event** [2] - 30:20,
60:17
**events** [4] - 7:2, 36:5,
36:14, 57:6
**eventual** [1] - 52:22
**everyday** [1] - 9:17
**evict** [2] - 8:23, 30:3
**evidence** [25] - 5:23,
6:6, 6:15, 7:7, 7:14,
10:5, 12:5, 14:17,
22:19, 37:8, 37:11,
37:15, 51:21, 52:7,
52:15, 53:11, 55:2,
55:18, 55:19, 57:7,
57:21, 58:4, 59:11,
63:21, 71:4
**evident** [1] - 57:7
**evidently** [5] - 8:24,
10:13, 12:16, 39:17,
46:20
**ex** [3] - 4:13, 4:15,
4:16
**exactly** [1] - 6:15
**example** [6] - 15:14,
17:9, 21:20, 24:25,
40:18, 57:11
**except** [1] - 39:4
**exclusive** [3] - 41:4,
41:7, 41:11
**excuse** [1] - 5:8
**executive** [2] - 4:22,
5:5
**exertion** [1] - 47:9
**exhausted** [2] - 19:7,
47:22
**Exhibit** [57] - 8:12,

8:14, 10:1, 10:8,
10:9, 11:4, 11:5,
11:24, 14:3, 14:4,
19:16, 19:24, 19:25,
20:1, 20:12, 24:2,
24:16, 24:18, 24:19,
24:25, 25:4, 25:5,
27:24, 27:25, 28:5,
28:17, 29:25, 30:1,
30:11, 30:12, 31:13,
33:6, 33:7, 35:10,
35:25, 38:17, 46:8,
48:7, 48:9, 51:14,
52:14, 52:19, 52:24,
53:4, 53:10, 57:15,
57:18, 58:6, 58:10,
58:13, 58:17, 59:7,
59:11, 59:15, 62:2
**exhibits** [2] - 8:4, 8:9
**expected** [2] - 5:9,
53:13
**experience** [1] - 36:16
**expert** [5] - 7:9, 34:14,
34:22, 36:14, 36:24
**expert's** [1] - 39:7
**explain** [1] - 36:18
**explained** [8] - 6:11,
16:3, 21:11, 33:20,
55:11, 59:9, 61:1,
61:10
**explanation** [4] -
37:15, 37:23, 50:10,
53:12
**explicitly** [1] - 21:12
**exposes** [1] - 17:2
**extended** [1] - 59:13
**extinguishers** [1] -
7:18
**extreme** [1] - 32:14
**extremely** [1] - 75:24
**eyes** [1] - 27:23
**eyewitness** [2] - 6:20,
37:7
**eyewitnesses** [2] -
6:20, 37:6

**F**

**F.2d** [1] - 18:12
**F.3d** [8] - 16:23, 17:4,
17:5, 17:7, 22:1,
22:10, 40:19, 41:5
**F.4th** [2] - 22:3, 54:1
**face** [8] - 16:25, 20:16,
27:1, 33:4, 33:8,
35:17, 38:18, 57:12
**face-off** [3] - 20:16,
27:1, 35:17
**faced** [3] - 17:9, 46:16,
50:11

**faces** [1] - 69:11
**facilitating** [1] - 27:11
**facing** [1] - 19:7
**fact** [11] - 5:23, 5:24,
8:1, 8:15, 30:4,
37:20, 37:22, 53:15,
61:21, 65:7, 70:12
**factor** [1] - 36:17
**factors** [2] - 36:17,
36:25
**facts** [1] - 19:2
**faculty** [1] - 32:16
**failed** [2] - 14:23,
70:19
**fall** [1] - 21:10
**family** [1] - 75:7
**Fanone** [2] - 49:22,
57:19
**far** [1] - 37:15
**fastened** [1] - 33:1
**fatal** [1] - 11:21
**fatally** [1] - 26:2
**favor** [1] - 21:10
**featured** [1] - 57:11
**federal** [4] - 40:17,
40:23, 41:12, 67:17
**federally** [1] - 58:3
**Federico** [2] - 3:4, 6:1
**feet** [2] - 28:16, 30:2
**fellow** [9] - 11:20,
26:20, 28:2, 29:7,
31:18, 35:21, 49:14,
56:3, 56:6
**felonies** [4] - 21:4,
69:9, 71:13, 71:14
**felonious** [1] - 21:6
**felony** [16] - 12:25,
13:3, 20:21, 21:1,
21:7, 21:17, 21:18,
21:21, 22:6, 22:15,
22:17, 22:25, 29:1,
31:22, 69:9
**felt** [3] - 5:4, 33:8,
52:16
**fencing** [2] - 8:21,
59:17
**few** [5] - 4:2, 6:12,
6:16, 40:13, 58:22
**Fifth** [5] - 15:11, 17:5,
17:9, 17:15, 17:25
**fifth** [10] - 12:23,
15:24, 20:19, 26:9,
27:15, 28:24, 31:20,
38:3, 40:10, 46:22
**fighting** [3] - 30:21,
31:19, 52:22
**fights** [1] - 7:15
**file** [2] - 68:12, 68:22
**fill** [1] - 75:12
**film** [2] - 34:11, 35:11

**filmed** [1] - 54:21
**filming** [1] - 29:22
**final** [3] - 48:23, 62:6,
65:13
**finally** [6] - 12:23,
35:23, 39:7, 53:20,
57:20, 65:24
**finder** [1] - 5:23
**findings** [3] - 5:24,
8:1, 74:11
**fine** [1] - 68:13
**fire** [1] - 7:18
**first** [28] - 8:3, 8:16,
9:1, 9:9, 11:15,
15:15, 19:8, 25:6,
26:17, 28:6, 32:24,
36:24, 38:9, 39:20,
40:15, 41:9, 46:4,
47:1, 47:16, 50:20,
51:3, 56:13, 58:24,
60:10, 62:21, 64:10,
66:2, 67:20
**Fischer** [1] - 54:1
**fist** [1] - 35:24
**five** [2] - 15:7, 32:5
**flat** [1] - 47:10
**flee** [1] - 71:4
**flight** [2] - 70:24,
75:18
**flow** [1] - 61:13
**flush** [1] - 27:23
**focused** [1] - 49:16
**folks** [2] - 3:12, 76:11
**following** [2] - 5:24,
7:25
**follows** [1] - 50:19
**footage** [5] - 13:23,
13:25, 23:20, 23:22,
57:16
**forbids** [1] - 65:16
**force** [21] - 10:23,
10:24, 11:6, 20:3,
20:4, 20:6, 25:14,
25:15, 25:19, 29:9,
30:18, 33:2, 39:5,
40:1, 40:6, 46:12,
47:6
**forceful** [1] - 10:3,
28:3, 28:19
**forcefully** [2] - 11:1,
33:22
**forcible** [3] - 21:14,
21:15, 21:20
**forcibly** [11] - 9:14,
10:23, 20:2, 20:3,
25:13, 25:14, 28:18,
30:7, 46:20, 57:12
**forest** [1] - 40:22
**former** [1] - 65:7
**forms** [1] - 75:12

**forward** [3] - 3:5, 33:4,
63:12
**Foulds** [12] - 46:2,
46:5, 46:8, 46:10,
46:11, 46:16, 47:14,
47:21, 48:6, 48:11,
48:12, 63:6
**Foulds'** [1] - 46:18
**Fourth** [4] - 16:23,
21:24, 22:2, 22:12
**fourth** [11] - 12:7,
15:19, 20:19, 26:9,
27:10, 28:24, 31:20,
38:3, 46:21, 51:2,
62:6
**fragile** [1] - 9:20
**frame** [8] - 9:6, 24:5,
29:19, 33:17, 47:8,
47:11, 48:5, 57:14
**free** [2] - 34:5, 73:16
**fresh** [2] - 25:2, 26:3
**Friday** [2] - 67:21,
68:4
**friend** [2] - 8:10, 52:21
**front** [16] - 9:19, 19:6,
20:16, 24:13, 25:2,
28:1, 28:3, 29:24,
30:9, 31:15, 35:16,
46:16, 49:9, 63:11,
69:15, 71:11
**Front** [1] - 59:13
**fucker** [1] - 34:3
**full** [4] - 6:2, 12:15,
33:18, 47:9
**fully** [7] - 7:3, 28:11,
30:24, 37:1, 37:10,
37:14, 46:17
**FULP** [1] - 23:8
**Fulp** [16] - 3:10, 4:1,
8:8, 13:18, 13:19,
13:22, 14:6, 14:7,
14:11, 14:14, 14:18,
23:6, 23:16, 23:17,
23:19
**Fulp's** [3] - 14:9,
14:21, 23:23
**function** [3] - 32:15,
58:2, 58:3
**functions** [2] - 61:6,
61:23
**funnel** [1] - 24:15
**furtherance** [2] - 27:5,
27:8
**fury** [1] - 53:2

**G**

**Gabrion** [1] - 40:19
**Gaither** [1] - 18:12
**garbage** [2] - 36:12

**Garfield** [1] - 59:14
**gas** [9] - 31:11, 32:25,
33:15, 34:8, 38:10,
38:19, 40:5, 63:14,
66:11
**gassing** [1] - 35:15
**gathered** [1] - 57:8
**general** [4] - 6:12,
6:24, 15:14, 37:14
**General** [4] - 34:14,
36:7, 36:9, 36:13
**generalities** [1] - 18:6
**generally** [1] - 58:22
**generic** [1] - 73:4
**gesture** [1] - 35:24
**Ghost** [1] - 35:19
**given** [4] - 28:23,
37:19, 39:8, 51:8
**God** [1] - 11:22
**Gonell** [12] - 13:8,
13:12, 13:16, 13:20,
13:22, 14:1, 14:10,
14:12, 14:22, 15:5,
23:22, 23:24
**Gonell's** [2] - 14:7,
14:16
**government** [74] - 3:6,
5:9, 5:12, 5:22, 7:14,
8:3, 8:4, 13:11,
13:12, 13:15, 14:23,
15:1, 15:4, 15:15,
15:19, 16:5, 17:11,
17:18, 17:22, 18:1,
18:19, 18:22, 20:9,
21:2, 21:10, 23:2,
24:7, 24:22, 25:9,
25:22, 29:17, 32:7,
33:24, 37:25, 40:17,
40:23, 41:12, 46:24,
46:25, 47:3, 48:1,
48:7, 49:20, 49:24,
50:2, 50:16, 51:3,
51:16, 52:5, 52:8,
52:15, 53:6, 53:18,
54:5, 54:15, 54:20,
55:2, 55:16, 58:4,
61:2, 61:5, 61:22,
65:3, 65:4, 67:12,
68:7, 69:11, 69:14,
70:21, 70:23, 71:17,
71:21, 72:4, 76:5
**Government** [2] -
57:18, 59:7
**Government's** [54] -
8:12, 8:14, 10:1,
10:8, 10:9, 11:4,
11:5, 11:23, 14:3,
14:4, 19:16, 19:24,
19:25, 20:8, 20:12,
24:2, 24:16, 24:18,

24:19, 24:25, 25:4, 25:5, 27:25, 28:4, 28:17, 29:25, 30:11, 31:13, 33:6, 33:7, 35:25, 38:16, 46:8, 48:7, 48:8, 48:9, 51:14, 52:14, 52:19, 52:24, 53:4, 53:10, 57:14, 58:6, 58:10, 58:12, 58:16, 59:11, 59:15, 62:2

**government's** [11] - 6:4, 6:9, 6:25, 7:7, 15:6, 20:23, 35:10, 54:13, 55:18, 69:7, 69:17

**grab** [1] - 19:22

**grabbed** [4] - 32:25, 37:21, 49:14, 63:14

**grabbing** [2] - 33:10, 57:12

**grand** [10] - 3:24, 4:3, 4:5, 4:21, 5:4, 18:3, 18:7, 18:11, 23:6, 65:11

**grandchild** [1] - 75:7

**great** [1] - 51:25

**green** [1] - 8:10

**ground** [2] - 29:19, 52:21

**grounds** [9] - 58:24, 59:1, 60:8, 60:12, 60:23, 60:25, 62:19, 62:23, 62:24

**Grounds** [10] - 8:5, 8:11, 8:16, 35:7, 40:13, 55:6, 56:1, 64:8, 65:25, 66:3

**Group** [1] - 21:9

**group** [1] - 9:19

**Guillermo** [1] - 3:4

**guilty** [32] - 5:19, 5:22, 13:4, 13:5, 13:6, 23:3, 26:13, 26:15, 29:5, 29:6, 32:2, 39:12, 41:23, 48:21, 48:22, 50:14, 50:15, 54:16, 54:17, 54:18, 56:9, 58:19, 62:12, 62:14, 62:16, 64:2, 64:4, 64:5, 65:22, 65:23, 66:22, 74:4

**guys** [1] - 11:23

**H**

**hair** [1] - 23:25

**hallway** [1] - 4:2

**hand** [5] - 29:23, 40:5, 47:2, 49:4

**handed** [1] - 35:21

**handled** [1] - 69:23

**handles** [1] - 46:15

**hands** [1] - 53:16

**hapless** [1] - 36:3

**happy** [1] - 4:13

**hard** [2] - 37:18, 75:1

**harder** [1] - 29:10

**harm** [1] - 66:7

**Harvell** [9] - 9:20, 9:24, 10:2, 10:5, 10:25, 11:13, 12:1, 12:10, 13:2

**Harvell's** [2] - 11:3, 11:16

**hastily** [1] - 19:15

**Hawa** [2] - 8:14, 59:8

**Hawa's** [2] - 51:11, 61:24

**head** [10] - 33:1, 33:12, 33:13, 36:21, 37:20, 38:19, 38:20, 39:2, 39:4, 66:13

**headway** [1] - 49:10

**hear** [1] - 69:6

**heard** [10] - 8:21, 31:2, 57:18, 60:1, 65:7, 69:1, 70:8, 72:4, 72:7, 75:20

**hearing** [4] - 4:25, 35:18, 68:25, 69:2

**hearsay** [2] - 14:8, 14:19

**heart** [1] - 12:2

**heave** [5] - 20:10, 28:3, 28:9, 46:6, 47:8

**heave-ho** [5] - 20:10, 28:3, 28:9, 46:6, 47:8

**heavily** [1] - 36:13

**held** [4] - 3:21, 4:9, 45:25, 73:8

**helmet** [5] - 14:2, 14:4, 24:1, 33:13, 33:14

**help** [3] - 11:20, 18:5, 36:18

**helplessly** [1] - 33:21

**Hill** [1] - 3:9

**himself** [7] - 7:9, 10:21, 12:3, 13:23, 23:21, 33:19, 34:9, 54:4, 54:8

**history** [1] - 70:1

**hit** [2] - 33:12, 34:9

**ho** [5] - 20:10, 28:3, 28:9, 46:6, 47:8

**Hobbs** [1] - 18:10

**hoc** [1] - 18:10

**Hodges** [29] - 28:14, 32:23, 33:3, 33:7, 33:11, 33:16, 33:20, 34:1, 34:6, 34:25, 35:5, 35:20, 36:20, 37:4, 37:18, 37:19, 38:21, 39:23, 40:3, 47:7, 47:10, 47:15, 47:16, 48:4, 57:12, 63:4, 63:14, 66:9, 66:11

**Hodges'** [13] - 32:25, 33:5, 33:10, 33:13, 37:2, 37:9, 37:10, 37:20, 37:23, 38:10, 38:15, 39:16, 40:5

**Hogan** [1] - 16:3

**hold** [2] - 29:23, 70:5

**holding** [2] - 31:9, 46:15

**holds** [1] - 37:23

**Holy** [1] - 35:19

**home** [1] - 70:11

**honest** [1] - 7:1

**Honor** [33] - 3:2, 3:7, 3:13, 3:16, 5:3, 23:8, 66:25, 67:3, 67:5, 67:13, 68:8, 69:5, 69:25, 70:3, 70:7, 70:13, 70:16, 72:4, 72:13, 73:15, 73:20, 73:25, 74:6, 74:8, 74:22, 75:3, 75:6, 75:9, 75:18, 76:6, 76:8, 76:10

**hostility** [1] - 7:13

**hours** [1] - 74:25

**House** [1] - 64:25

**house** [2] - 35:8, 55:7

**Howard** [1] - 17:7

**huge** [1] - 9:19

**hurled** [1] - 7:20

**hurt** [1] - 58:11

**I**

**idea** [1] - 47:2

**identification** [7] - 14:1, 14:19, 14:22, 23:23, 24:8, 36:25, 37:5

**identified** [6] - 8:4, 8:9, 13:19, 14:11, 23:16, 23:21

**identify** [3] - 3:5, 13:23, 14:10

**identity** [15] - 13:12, 13:17, 14:7, 15:1, 15:5, 15:11, 15:13, 16:5, 16:12, 16:14,

16:16, 18:2, 18:20, 18:21, 23:14

**idiots** [1] - 30:22

**ignored** [1] - 5:10

**illegal** [4] - 27:9, 29:7, 48:17, 54:12

**illegitimate** [1] - 53:5

**imagine** [1] - 37:18

**imagined** [1] - 36:21

**immediate** [2] - 10:11, 57:3

**impacting** [1] - 55:15

**impairment** [1] - 32:15

**impede** [19] - 9:10, 9:16, 10:15, 19:9, 25:7, 26:4, 27:4, 28:7, 28:9, 30:4, 31:18, 50:21, 50:22, 51:1, 52:7, 56:19, 61:4, 64:23, 65:9

**impeded** [8] - 15:16, 16:7, 16:9, 24:4, 24:9, 25:11, 46:5, 61:21

**impeding** [13] - 9:3, 10:20, 19:12, 20:25, 21:15, 25:10, 26:24, 27:17, 29:15, 29:18, 51:6, 56:15, 71:14

**implausible** [1] - 36:11

**implication** [1] - 21:19

**implicitly** [1] - 30:16

**importance** [1] - 6:19

**important** [3] - 47:13, 47:25, 51:21

**impose** [2] - 9:16, 28:9

**imposition** [1] - 72:5

**impossible** [1] - 51:7

**incarceration** [1] - 69:11

**incident** [2] - 56:22, 70:12

**includes** [2] - 38:14, 64:12

**including** [8] - 6:3, 6:21, 18:2, 26:20, 28:12, 36:16, 37:6, 69:9

**inconsistent** [2] - 11:17, 36:2

**incorporate** [2] - 21:10, 24:6

**incorrect** [1] - 50:2

**incredible** [3] - 30:23, 55:20, 75:25

**indeed** [11] - 6:16, 7:6, 7:21, 12:13, 12:14, 33:20, 36:6, 37:10,

39:18, 48:11, 48:17

**independently** [1] - 38:8

**indicated** [1] - 17:19

**indicia** [2] - 35:13, 37:5

**indicted** [1] - 17:19

**indictment** [15] - 5:20, 13:13, 15:2, 15:12, 16:4, 16:19, 17:2, 17:10, 17:19, 18:2, 18:7, 18:11, 18:16, 23:14, 70:15

**indictment's** [1] - 18:15

**indirectly** [1] - 72:18

**indistinguishable** [1] - 14:5

**individual** [3] - 16:5, 57:5, 66:7

**inevitable** [1] - 31:17

**inflict** [2] - 9:12, 9:15

**inflicted** [1] - 38:7

**infliction** [2] - 66:6, 66:7

**information** [3] - 14:12, 14:19, 68:19

**Ingersoll** [1] - 7:5

**ingratiate** [1] - 12:3

**inherently** [1] - 38:24

**initial** [1] - 5:17

**injured** [1] - 36:4

**injuries** [3] - 38:17, 47:18, 47:22

**injuring** [1] - 56:6

**injury** [22] - 9:12, 9:15, 32:10, 32:13, 38:7, 38:10, 38:11, 38:12, 38:23, 39:1, 39:6, 47:1, 47:12, 48:2, 48:17, 49:24, 50:5, 50:10, 57:4, 66:12

**innocent** [1] - 69:10

**inside** [9] - 12:17, 22:20, 30:25, 31:14, 51:13, 51:24, 51:25, 55:10, 61:11

**insignia** [1] - 31:5

**Inspector** [4] - 8:14, 51:11, 59:8, 61:24

**instance** [1] - 49:10

**instead** [1] - 63:12

**instructing** [1] - 10:17

**instructions** [1] - 6:3

**insults** [1] - 7:20

**intended** [10] - 9:15, 21:2, 31:17, 50:22, 52:3, 52:6, 56:15, 61:10, 61:13

**intent** [33] - 6:17,

12:24, 20:21, 21:1, 21:6, 21:18, 21:21, 22:16, 22:21, 26:4, 26:10, 27:15, 29:1, 29:4, 29:13, 30:22, 31:22, 31:25, 34:17, 34:19, 36:9, 39:9, 51:16, 51:22, 54:3, 54:14, 54:20, 61:4, 61:9, 64:23, 65:8, 65:15, 65:20
**intentional** [2] - 9:11, 10:3
**intentionality** [3] - 30:19, 33:25, 38:1
**intentionally** [11] - 11:9, 11:10, 11:14, 20:14, 25:22, 28:21, 34:10, 38:6, 40:9, 46:20
**interaction** [3] - 47:23, 63:14, 66:12
**interest** [1] - 51:25
**interfere** [6] - 9:10, 9:16, 19:9, 25:7, 28:7, 28:10
**interfered** [4] - 15:17, 16:7, 16:9, 46:5
**interference** [2] - 21:15, 21:20
**interferes** [2] - 18:3, 60:14
**interfering** [8] - 9:3, 10:20, 19:12, 20:25, 26:24, 27:17, 56:15, 71:15
**interpretation** [2] - 21:25, 41:9
**interpreting** [1] - 40:15
**interrupt** [1] - 39:14
**interrupts** [1] - 60:17
**interstate** [4] - 58:1, 58:2, 58:12, 58:17
**interviewed** [3] - 13:20, 13:22, 23:17
**intimidate** [5] - 9:10, 9:16, 19:9, 25:7, 28:7
**intimidated** [1] - 15:16
**intimidating** [1] - 20:25
**intimidation** [1] - 40:1
**introduced** [3] - 7:14, 52:9, 52:15
**intruders** [1] - 24:15
**invalidated** [1] - 16:20
**inventory** [1] - 58:15
**involve** [2] - 21:18, 51:20

**involved** [3] - 5:5, 51:17, 66:10
**involvement** [1] - 55:13
**involves** [2] - 9:7, 13:10
**involving** [3] - 32:13, 57:2, 66:6
**irritants** [1] - 59:25
**issue** [3] - 14:25, 18:16, 75:19
**issued** [1] - 70:16
**issues** [1] - 70:14
**itself** [1] - 64:13

## J

**jacket** [1] - 8:10
**January** [20] - 7:13, 8:6, 19:5, 22:20, 52:8, 52:10, 52:20, 52:23, 52:25, 53:3, 53:7, 53:12, 57:6, 58:5, 58:7, 58:18, 59:6, 59:10, 60:6, 61:16
**jeopardy** [3] - 17:3, 17:16, 17:17
**job** [2] - 30:4, 54:9
**Joe** [1] - 54:9
**join** [3] - 30:22, 53:16, 56:3
**joined** [2] - 28:3, 55:4
**Joint** [1] - 59:6
**Jon** [1] - 3:10
**jostled** [1] - 60:20
**jostling** [1] - 60:15
**Judge** [4] - 16:3, 53:25, 67:20, 68:11
**judgment** [1] - 5:18
**judicial** [1] - 41:19
**jurisdiction** [7] - 40:12, 40:16, 40:22, 40:24, 41:11, 41:15, 41:17
**jury** [10] - 3:24, 4:3, 4:5, 4:21, 5:4, 6:3, 18:3, 18:7, 18:11, 23:6
**justify** [2] - 5:21, 49:25

## K

**Kaitlin** [1] - 3:9
**kicking** [1] - 55:6
**kids** [1] - 75:6
**kind** [1] - 57:17
**Klamann** [1] - 3:9
**KLEIN** [1] - 73:15
**Klein** [75] - 3:4, 3:19,

6:1, 8:8, 9:6, 9:18, 9:20, 10:6, 10:20, 11:10, 12:2, 13:4, 13:7, 13:11, 13:24, 14:22, 15:9, 19:3, 19:11, 19:17, 21:5, 23:3, 23:10, 23:12, 24:8, 24:22, 25:11, 25:16, 26:13, 27:20, 27:22, 28:10, 28:16, 29:3, 29:5, 46:2, 46:4, 46:9, 48:21, 48:23, 49:6, 49:16, 49:25, 50:7, 50:14, 52:5, 52:16, 53:7, 54:6, 54:8, 54:11, 54:16, 55:19, 61:10, 62:14, 62:18, 63:5, 63:12, 63:17, 64:4, 65:1, 65:18, 65:22, 66:14, 66:20, 69:4, 69:8, 70:10, 70:19, 70:22, 70:24, 71:23, 73:9, 73:22
**Klein's** [11] - 10:3, 10:10, 26:3, 46:13, 47:14, 48:18, 49:11, 50:3, 50:11, 53:1, 68:15
**knowing** [3] - 29:13, 31:10, 74:25
**knowingly** [16] - 22:23, 27:10, 40:7, 50:24, 53:19, 56:14, 56:18, 60:5, 61:4, 61:8, 63:9, 63:22, 65:14, 65:18, 66:18, 66:20
**knowledge** [5] - 52:9, 55:3, 55:9, 55:14, 66:20
**Kyle** [1] - 3:11

## L

**lack** [2] - 48:2, 49:11
**laid** [2] - 6:9, 59:14
**language** [2] - 21:19, 40:15
**large** [1] - 58:14
**largely** [2] - 7:6, 57:7
**larger** [1] - 46:6
**lashed** [1] - 56:7
**last** [3] - 4:12, 21:10, 75:4
**late** [2] - 5:7, 69:17
**Laura** [1] - 3:9
**law** [19] - 5:19, 5:25, 8:1, 9:10, 16:6, 16:9, 16:14, 19:9, 25:7, 27:17, 28:7, 28:10,

32:24, 56:16, 56:19, 56:21, 65:16, 65:17, 66:20
**lawful** [2] - 56:22, 56:25
**lawfully** [1] - 39:21
**Lawn** [2] - 7:11, 59:14
**lead** [1] - 30:6
**leading** [1] - 51:5
**leaned** [2] - 9:21
**leaning** [1] - 10:15
**learned** [2] - 9:21, 55:25
**least** [12] - 6:22, 8:17, 10:19, 14:2, 19:11, 22:25, 29:17, 47:13, 61:13, 65:20, 66:15, 71:10
**leave** [3] - 4:21, 5:3, 5:4
**leaving** [1] - 63:15
**left** [4] - 27:23, 29:23, 47:3, 63:17
**legal** [5] - 6:18, 13:10, 19:1, 20:22, 23:12
**legislative** [4] - 40:17, 40:24, 41:4, 41:7
**lending** [1] - 20:6
**length** [1] - 64:17
**lengths** [1] - 61:15
**lengthy** [2] - 7:14, 40:21
**less** [1] - 50:13
**lest** [1] - 18:2
**level** [1] - 29:20
**leverage** [1] - 46:17
**levies** [1] - 23:12
**Lieutenant** [2] - 8:13, 59:15
**light** [1] - 63:21
**likelihood** [1] - 35:21
**likely** [3] - 48:16, 55:24, 71:4
**limit** [1] - 38:3
**limited** [2] - 6:3, 15:7
**line** [14] - 9:20, 9:23, 9:25, 10:12, 19:15, 19:23, 25:2, 28:1, 34:17, 49:9, 49:18, 57:17, 63:11, 63:19
**lip** [3] - 33:5, 38:15, 66:13
**list** [1] - 15:7
**listed** [1] - 26:18
**listened** [1] - 14:8
**location** [1] - 58:13
**locations** [1] - 58:6
**lockdown** [2] - 61:25, 62:3
**locker** [1] - 31:9

**looking** [30] - 10:1, 11:3, 11:23, 15:9, 16:21, 17:3, 18:18, 19:16, 19:24, 20:8, 20:11, 21:25, 22:9, 24:2, 24:16, 24:17, 24:24, 25:4, 27:24, 28:4, 29:24, 30:10, 31:13, 33:6, 35:25, 41:5, 51:14, 53:3, 62:2, 66:15
**looks** [1] - 48:12
**lose** [1] - 54:9
**loss** [2] - 32:15, 36:3
**loud** [1] - 60:14
**lower** [7] - 7:11, 8:18, 10:18, 19:3, 35:12, 49:6, 49:18
**LRAD** [2] - 8:22, 60:1
**lull** [1] - 24:11

## M

**maintain** [1] - 9:22
**man** [1] - 8:9
**managed** [2] - 24:20, 33:2
**mandated** [1] - 74:24
**manifestly** [1] - 33:23
**manipulation** [1] - 33:15
**manner** [4] - 32:11, 32:19, 47:4, 48:16
**map** [1] - 59:10
**Marina** [1] - 3:13
**maritime** [1] - 40:11
**marked** [1] - 59:17
**marshals** [1] - 76:3
**Maryland** [1] - 67:17
**mask** [9] - 33:1, 33:4, 33:15, 38:10, 38:19, 40:5, 57:12, 63:14, 66:11
**material** [1] - 18:15
**matter** [5] - 5:17, 5:18, 6:24, 34:23, 75:20
**matters** [2] - 41:8, 53:16
**Mayor** [1] - 58:8
**McCaughey** [6] - 21:9, 28:15, 33:19, 40:4, 47:1, 47:7
**McCaughey's** [3] - 33:18, 47:9, 47:15
**McCree** [2] - 8:13, 59:15
**mean** [5] - 5:10, 11:25, 72:23, 72:24, 73:1
**meaning** [2] - 30:16, 38:11

**meanings** [1] - 9:17
**means** [6] - 9:11, 21:19, 32:13, 53:21, 58:24, 60:23
**medical** [2] - 38:13, 47:23
**meet** [2] - 14:23, 75:23
**meets** [1] - 61:18
**melee** [1] - 29:22
**member** [2] - 12:11, 32:16
**members** [1] - 12:14
**memorials** [1] - 59:14
**memory** [1] - 36:25
**men** [2] - 39:24, 63:21
**mental** [1] - 32:16
**mentality** [1] - 56:8
**mention** [1] - 12:19
**mentioned** [6] - 10:25, 32:6, 52:8, 62:25, 64:15, 73:20
**mere** [2] - 31:12, 48:15
**merely** [3] - 11:11, 18:23, 47:21
**message** [1] - 72:22
**messages** [3] - 52:9, 52:25, 72:16
**met** [25] - 12:10, 12:21, 20:15, 23:2, 23:18, 25:16, 26:10, 26:12, 27:14, 27:19, 28:22, 29:2, 29:14, 32:25, 33:23, 38:4, 40:8, 41:10, 46:20, 46:23, 55:17, 61:2, 61:24, 65:3, 66:16
**metal** [3] - 47:11, 48:4, 57:14
**Metropolitan** [3] - 12:12, 15:17, 18:24
**midafternoon** [1] - 7:13
**might** [1] - 55:15
**mightily** [1] - 49:7
**Mike** [1] - 7:5
**military** [3] - 34:7, 35:9, 36:16
**mind** [3] - 34:15, 36:8, 73:5
**mindlessly** [1] - 36:4
**minutes** [2] - 4:2, 4:12
**misconduct** [1] - 12:4
**missions** [1] - 35:9
**mitigating** [1] - 36:17
**mob** [8] - 35:7, 50:8, 50:11, 56:8, 57:19, 61:18, 65:10
**modify** [1] - 16:19
**moment** [4] - 10:25, 32:21, 67:23, 70:5

**momentary** [3] - 12:2, 35:1, 36:3
**moments** [1] - 31:4
**momentum** [1] - 56:5
**Moore** [10] - 17:5, 48:24, 49:8, 49:13, 49:15, 49:21, 50:1, 50:4, 50:6, 50:11
**Moore's** [1] - 49:14
**morning** [3] - 3:12, 5:1, 52:2
**Morris** [1] - 48:24
**most** [6] - 6:8, 6:14, 19:4, 37:10, 37:15, 71:13
**mostly** [1] - 18:6
**motion** [2] - 16:4, 68:12
**motions** [2] - 5:18, 5:21
**motivated** [1] - 7:2
**mouth** [2] - 34:4, 38:18
**Move** [1] - 9:25
**move** [5] - 10:16, 19:20, 39:10, 46:13, 56:10
**moved** [1] - 4:6
**movement** [2] - 10:3, 58:1
**moving** [1] - 10:17
**MPD** [2] - 12:15, 24:9
**MRI** [1] - 38:21
**multiple** [2] - 35:13, 56:18
**multiplied** [1] - 29:9
**munitions** [2] - 7:18, 8:21
**must** [17] - 9:9, 12:23, 13:13, 15:1, 19:8, 20:20, 23:14, 25:6, 26:17, 28:6, 28:25, 31:21, 32:7, 51:24, 61:11, 71:3
**muster** [1] - 46:17

## N

**name** [3] - 17:10, 17:11, 17:14
**named** [2] - 13:13, 23:14
**namely** [1] - 66:13
**names** [1] - 15:2
**narrower** [1] - 24:15
**national** [1] - 40:22
**natural** [4] - 21:19, 50:25, 51:6, 51:23
**near** [2] - 28:2, 63:11
**necessarily** [1] - 36:11

**necessary** [4] - 15:11, 25:19, 39:10, 48:1
**neck** [2] - 33:5, 38:18
**need** [7] - 10:6, 13:2, 16:5, 25:2, 68:12, 71:17, 75:13
**needful** [3] - 41:13, 41:18, 41:20
**needle** [1] - 39:10
**negate** [2] - 34:16, 39:10
**negated** [2] - 34:9, 36:8
**negates** [1] - 35:3
**never** [5] - 39:3, 54:23, 54:25, 70:24
**new** [1] - 70:22
**news** [1] - 55:12
**next** [7] - 28:13, 29:12, 29:15, 47:20, 50:16, 56:10, 58:21
**night** [1] - 58:9
**Ninth** [1] - 16:24
**noise** [1] - 34:8
**none** [2] - 15:13, 22:11
**nonetheless** [2] - 24:6, 59:21
**nonhearsay** [1] - 14:12
**nonpublic** [1] - 8:25
**nonviolent** [1] - 71:14
**normal** [2] - 60:17, 61:13
**note** [14] - 6:20, 7:11, 15:9, 19:19, 30:14, 34:13, 37:3, 53:24, 63:17, 69:19, 70:10, 71:8, 71:16, 74:23
**NOTE** [1] - 4:10
**noted** [3] - 7:3, 23:19, 23:22
**notes** [2] - 51:16, 54:21
**nothing** [2] - 14:2, 55:21
**notice** [3] - 8:15, 8:19, 41:19
**noting** [1] - 41:6
**November** [4] - 67:20, 68:4, 68:6, 68:16
**numerous** [7] - 4:23, 7:15, 10:10, 57:9, 57:22, 69:8, 71:12

## O

**o'clock** [2] - 4:25, 5:1
**object** [6] - 32:9, 32:17, 32:19, 32:20,

50:9, 73:3
**objected** [1] - 15:9
**objection** [3] - 21:9, 23:12, 72:20
**objections** [1] - 68:22
**objectives** [1] - 54:13
**objects** [2] - 7:18, 14:22
**obligated** [1] - 52:16
**obligation** [1] - 4:19
**obligations** [1] - 6:18
**observations** [1] - 58:22
**observed** [1] - 7:21
**observer** [1] - 31:13
**obstruct** [7] - 10:14, 50:20, 50:22, 51:1, 52:6, 61:10, 65:2
**obstructed** [6] - 16:7, 16:8, 22:23, 57:25, 58:12, 58:17
**obstructing** [2] - 51:6, 56:15
**obstruction** [5] - 6:10, 21:3, 22:17, 50:17, 65:6
**obstructions** [1] - 5:11
**obstructive** [1] - 17:23
**obtain** [1] - 40:1
**obtained** [1] - 39:20
**obvious** [3] - 32:14, 38:12, 60:3
**obviously** [6] - 38:25, 41:2, 41:10, 56:24, 66:10, 71:7
**occasional** [2] - 55:5, 55:12
**occurred** [7] - 6:15, 6:17, 12:8, 19:5, 41:20, 57:22, 61:21
**occurring** [2] - 28:16, 51:23, 53:17
**occurs** [1] - 60:13
**October** [4] - 67:8, 67:10, 67:23, 68:1
**offense** [12] - 17:14, 27:6, 27:12, 27:16, 29:5, 30:14, 32:5, 40:10, 49:1, 64:10, 64:21, 68:25
**offenses** [1] - 6:9
**offer** [1] - 34:14
**office** [2] - 4:24, 68:18
**Officer** [99] - 9:20, 9:24, 10:2, 10:5, 10:25, 11:3, 11:13, 11:16, 12:1, 12:10, 13:2, 13:8, 13:12, 13:16, 13:20, 13:22,

14:1, 14:7, 14:12, 14:16, 14:22, 15:5, 23:11, 23:13, 23:15, 23:18, 23:20, 23:22, 23:24, 24:4, 24:5, 24:8, 28:14, 32:22, 32:25, 33:3, 33:5, 33:7, 33:10, 33:11, 33:13, 33:16, 33:20, 34:1, 34:6, 34:25, 35:5, 35:20, 36:20, 37:2, 37:4, 37:9, 37:10, 37:18, 37:19, 37:20, 37:23, 38:10, 38:15, 39:16, 39:23, 40:3, 40:5, 46:2, 46:5, 46:8, 46:10, 46:11, 46:16, 46:18, 47:7, 47:10, 47:14, 47:15, 47:16, 47:21, 48:4, 48:6, 48:11, 48:12, 48:24, 49:8, 49:13, 49:14, 49:15, 49:21, 49:22, 50:1, 50:4, 50:6, 50:11, 57:12, 57:19, 63:4, 63:6, 63:14, 66:9, 66:11
**officer** [45] - 7:23, 9:11, 9:22, 10:24, 12:3, 12:8, 12:24, 13:23, 14:10, 15:1, 15:2, 15:21, 15:25, 16:6, 16:9, 16:15, 16:16, 18:20, 18:23, 19:10, 20:4, 20:20, 22:16, 24:9, 25:8, 25:15, 25:17, 25:20, 26:1, 26:12, 28:8, 28:25, 31:22, 31:24, 32:24, 36:2, 36:5, 40:10, 46:23, 57:13, 63:5, 63:11, 66:11, 66:15, 75:25
**officer's** [3] - 15:10, 19:22, 35:20
**officers** [88] - 6:21, 7:15, 7:17, 8:22, 9:4, 9:24, 10:13, 10:15, 10:16, 10:17, 10:20, 11:7, 11:23, 12:14, 14:5, 15:17, 18:2, 19:7, 19:13, 19:15, 19:19, 19:23, 20:7, 20:10, 20:16, 20:25, 21:14, 21:16, 21:20, 22:23, 24:12, 24:13, 24:24, 25:12, 26:6, 26:20, 26:22, 27:1, 27:4, 27:17, 27:21, 28:4, 28:10, 28:12,

28:13, 29:3, 29:8, 29:10, 29:11, 29:16, 29:18, 29:21, 30:3, 30:4, 30:10, 30:14, 30:17, 30:21, 30:25, 31:7, 31:15, 31:18, 35:14, 35:17, 35:22, 39:3, 46:7, 48:16, 48:19, 49:4, 49:5, 51:5, 53:21, 53:23, 56:5, 56:7, 56:16, 56:19, 56:21, 56:24, 57:10, 57:17, 60:21, 63:3, 63:13, 63:19
**officers'** [3] - 19:18, 26:4, 61:16
**official** [17] - 5:11, 12:9, 15:23, 16:1, 18:25, 21:3, 22:17, 24:10, 50:17, 50:21, 50:23, 51:1, 51:8, 56:22, 56:25, 61:6, 61:23
**once** [3] - 19:17, 31:14, 35:13
**one** [22] - 6:14, 12:4, 17:10, 21:20, 31:16, 36:22, 37:3, 37:19, 40:5, 41:2, 49:9, 52:20, 53:12, 53:22, 56:16, 58:15, 67:21, 70:5, 72:8, 73:18, 73:24, 74:3
**ones** [2] - 6:17, 69:16
**open** [3] - 4:9, 45:25, 73:8
**opinion** [1] - 18:18
**opportunity** [4] - 68:21, 68:24, 69:1, 75:12
**oppose** [8] - 9:10, 9:16, 19:9, 25:7, 26:6, 26:19, 26:22, 28:7
**opposed** [3] - 15:16, 15:20, 46:5
**opposing** [6] - 9:3, 10:20, 19:12, 20:24, 26:24, 27:16
**opposite** [2] - 50:7, 50:12
**opposition** [1] - 21:15
**option** [1] - 13:3
**order** [1] - 4:6
**ordered** [1] - 19:19
**ordering** [1] - 8:22
**orderly** [5] - 61:5, 61:9, 61:16, 61:22, 64:24
**ordinarily** [1] - 38:13

**ordinary** [1] - 9:17
**organ** [1] - 32:16
**others'** [1] - 27:8
**otherwise** [7] - 7:3, 41:18, 41:22, 58:25, 60:24, 70:20, 71:22
**outbursts** [1] - 55:8
**outlined** [1] - 8:12
**outnumbered** [1] - 19:7
**outside** [2] - 51:13
**overall** [1] - 36:11
**overthrown** [1] - 53:9
**overwhelming** [2] - 6:14, 22:20
**own** [8] - 7:19, 14:7, 14:9, 29:7, 29:9, 37:11, 39:19, 53:16

## P

**p.m** [13] - 9:7, 13:8, 13:9, 19:3, 20:8, 27:21, 29:16, 46:9, 58:7, 58:9, 62:1, 76:12
**page** [11] - 15:8, 16:22, 16:24, 17:4, 17:6, 17:7, 18:4, 18:18, 22:1, 41:6, 54:1
**pages** [4] - 22:3, 51:15, 58:10, 62:3
**pain** [6] - 32:14, 38:14, 38:17, 38:22, 47:16, 47:17
**painful** [1] - 38:12
**paralegal** [1] - 3:10
**part** [10] - 6:8, 6:22, 22:23, 28:11, 28:12, 41:14, 46:6, 49:12, 50:1, 55:11
**parte** [3] - 4:13, 4:15, 4:16
**partial** [1] - 24:15
**partially** [2] - 24:14, 33:14
**participant** [1] - 31:12
**participated** [2] - 7:22, 65:10
**particular** [3] - 16:13, 16:14, 65:11
**particularly** [1] - 28:3
**parties** [9] - 6:8, 13:10, 14:25, 15:2, 20:23, 34:13, 38:11, 59:3, 73:12
**parties'** [1] - 30:13
**party** [1] - 7:3
**passed** [2] - 31:3, 31:4

**passenger** [1] - 55:4
**pathways** [1] - 29:2
**pause** [1] - 76:1
**Peace** [1] - 59:14
**Pence** [4] - 52:11, 53:2, 53:13, 56:2
**pending** [2] - 71:1, 71:6
**people** [12] - 8:22, 8:23, 11:12, 19:18, 25:3, 26:3, 30:16, 30:25, 31:1, 39:4, 53:5, 72:15
**pepper** [6] - 27:23, 28:14, 29:11, 31:2, 57:16, 63:18
**pepper-sprayed** [1] - 63:18
**per** [2] - 40:25, 47:3, 61:24
**percent** [1] - 37:4
**perfectly** [1] - 60:3
**performance** [7] - 12:9, 12:16, 15:22, 56:22, 56:25, 58:3, 58:5
**performed** [2] - 27:5, 27:10
**perhaps** [3] - 12:2, 12:3, 55:24
**perimeter** [3] - 59:16, 59:20, 62:2
**period** [2] - 17:24, 37:20
**periods** [1] - 17:21
**permit** [1] - 21:5
**perpetrated** [1] - 28:15
**person** [24] - 6:25, 10:23, 11:3, 13:21, 15:20, 15:25, 16:6, 16:8, 17:13, 21:7, 23:18, 25:14, 32:11, 39:22, 46:15, 54:4, 57:4, 59:1, 60:13, 60:15, 60:16, 60:25, 62:22, 71:5
**person's** [2] - 17:14, 39:22
**personal** [1] - 66:8
**personally** [1] - 26:19
**persons** [1] - 57:3
**persuaded** [1] - 22:12
**persuasive** [1] - 40:20
**pertaining** [1] - 41:8
**phone** [2] - 29:22, 34:4
**photographs** [1] - 6:23
**phrase** [1] - 21:22

**physical** [25] - 12:24, 13:1, 15:25, 20:20, 28:25, 30:5, 30:14, 30:15, 31:21, 31:23, 32:14, 32:18, 38:4, 38:14, 46:22, 48:1, 62:19, 62:22, 63:2, 63:8, 63:22, 64:3, 65:25, 66:3, 66:5
**physically** [4] - 10:16, 26:11, 29:3, 30:8
**piece** [1] - 36:1
**pin** [1] - 47:7
**pinned** [6] - 33:17, 40:3, 48:4, 48:6, 48:11, 57:13
**place** [5] - 24:16, 28:12, 40:16, 41:13, 41:17
**placed** [1] - 34:5
**plan** [1] - 65:11
**plausible** [5] - 37:1, 37:15, 50:10, 55:24, 56:4
**plaza** [1] - 9:8
**point** [10] - 27:2, 30:24, 31:24, 37:12, 38:2, 41:22, 52:20, 71:8, 74:10, 76:3
**pointed** [1] - 23:25
**pointing** [1] - 14:2
**points** [8] - 29:23, 30:8, 48:12, 49:20, 55:2, 71:10, 71:13, 76:1
**poles** [1] - 7:19
**Police** [7] - 12:12, 12:15, 15:17, 15:18, 18:24, 24:9, 51:12
**police** [26] - 7:13, 7:22, 8:21, 8:22, 9:20, 9:23, 10:12, 19:5, 24:23, 26:8, 31:5, 33:18, 39:23, 46:7, 49:7, 49:9, 49:11, 49:18, 51:4, 51:24, 53:21, 53:23, 59:24, 60:3, 60:20, 61:16
**political** [4] - 53:8, 54:8, 55:22
**politics** [1] - 55:13
**portion** [2] - 54:21, 61:2
**pose** [1] - 71:4
**posed** [1] - 71:20
**position** [2] - 17:12, 69:17
**possible** [1] - 68:11
**possibly** [1] - 25:24

**post** [1] - 18:10
**posted** [2] - 58:25, 60:23
**posting** [1] - 8:20
**potential** [2] - 39:5, 49:24
**potentially** [1] - 5:5
**pounder** [1] - 52:21
**power** [1] - 18:3
**precedent** [2] - 22:8, 34:18
**preceding** [2] - 39:18, 52:20
**precise** [1] - 5:2
**precisely** [1] - 39:5
**predecessor** [1] - 70:18
**prejudiced** [1] - 17:1
**prejudices** [1] - 16:21
**prepared** [1] - 68:18
**presence** [5] - 5:15, 30:2, 30:5, 51:9, 62:4
**present** [5] - 5:23, 9:13, 13:16, 17:18, 68:20
**presented** [1] - 6:6
**presentence** [2] - 68:17, 68:21
**presents** [2] - 20:22, 70:22
**President** [13] - 52:11, 52:13, 53:2, 53:9, 53:13, 53:14, 54:7, 54:8, 54:10, 54:21, 56:2, 59:5, 65:8
**presiding** [1] - 59:5
**press** [2] - 29:24, 63:6
**pressed** [2] - 47:11, 60:21
**pressing** [4] - 9:19, 12:1, 30:9, 63:12
**presumed** [1] - 69:10
**pretty** [1] - 14:15
**prevent** [1] - 56:4
**preventing** [2] - 24:24, 52:4
**previewed** [1] - 56:12
**previously** [3] - 28:22, 46:22, 47:6
**primarily** [3] - 14:16, 34:11, 55:3
**principal** [6] - 13:5, 23:4, 26:14, 29:6, 32:2, 54:17
**privilege** [3] - 4:22, 5:6
**probable** [2] - 50:25, 51:6
**probation** [1] - 68:18

**problem** [1] - 75:16
**proceed** [4] - 4:15, 4:19, 5:14, 58:21
**proceeding** [9] - 21:3, 22:17, 25:9, 50:17, 50:21, 50:23, 51:1, 51:8, 52:10
**Proceedings** [4] - 4:9, 45:25, 73:8, 76:12
**proceedings** [1] - 5:11
**process** [4] - 55:23, 59:9, 60:18, 65:2
**procure** [1] - 54:3
**produced** [1] - 13:18
**prohibited** [2] - 12:7, 66:21
**promptly** [1] - 35:23
**proof** [4] - 14:23, 15:10, 16:19, 18:15
**proper** [2] - 8:15, 8:18
**properly** [1] - 8:3
**property** [5] - 39:20, 40:1, 57:4, 62:22, 66:8
**proposed** [2] - 54:13, 67:7
**prosecutors** [1] - 23:7
**protect** [1] - 61:17
**protected** [3] - 58:3, 59:1, 60:25
**protecting** [1] - 12:17
**protest** [1] - 10:17
**protesters** [2] - 9:19, 9:25
**protracted** [3] - 32:14, 32:15, 51:18
**prove** [14] - 6:4, 15:1, 15:5, 15:15, 15:19, 16:5, 17:22, 18:1, 18:13, 18:20, 18:23, 24:7, 65:8
**proven** [14] - 13:12, 17:11, 23:13, 25:22, 33:24, 37:25, 38:8, 46:24, 51:3, 52:5, 53:18, 54:15, 65:4, 70:22
**provided** [2] - 5:22, 36:24
**proving** [1] - 15:7
**provisions** [1] - 22:6
**provocation** [1] - 7:24
**proximity** [2] - 11:13, 60:11
**PTSD** [10] - 34:7, 34:14, 34:21, 35:1, 35:3, 35:18, 36:6, 36:7, 36:17, 39:7
**public** [1] - 57:1
**publicized** [1] - 52:1

**pull** [2] - 33:3, 49:15
**pulled** [3] - 49:17, 50:6, 57:21
**punched** [1] - 33:8
**purchased** [1] - 41:17
**purpose** [2] - 27:11, 56:15
**purposes** [1] - 64:21
**push** [15] - 19:23, 20:10, 25:18, 26:5, 26:21, 30:16, 30:17, 46:7, 48:16, 48:19, 49:8, 49:13, 50:3, 50:12, 63:18
**pushed** [4] - 9:22, 11:12, 35:16, 63:3
**pushes** [2] - 20:9, 28:4, 29:9
**pushing** [9] - 10:5, 20:7, 25:17, 29:3, 29:9, 30:10, 46:9, 49:5, 50:7
**putting** [1] - 50:1

## Q

**qualifies** [4] - 38:16, 38:21, 38:23, 66:10
**qualify** [3] - 25:18, 27:8, 57:6
**questions** [7] - 4:22, 5:5, 6:16, 6:17, 16:25, 66:23, 67:1
**quite** [3] - 10:12, 13:25, 36:2
**quote** [36] - 16:5, 16:18, 21:17, 21:19, 22:5, 30:21, 31:10, 34:3, 35:7, 35:8, 35:14, 35:15, 37:4, 40:23, 40:24, 41:13, 41:17, 41:19, 47:21, 50:9, 52:11, 52:12, 52:18, 52:21, 52:23, 53:2, 53:5, 53:6, 53:9, 54:2, 54:4, 54:22, 55:1, 55:4, 55:7, 56:6
**quotes** [1] - 18:3

## R

**racks** [2] - 8:20, 59:17
**raise** [1] - 36:16
**raising** [1] - 35:24
**rally** [4] - 52:2, 54:21, 55:5, 55:25
**rather** [5] - 15:10, 15:14, 16:6, 33:13, 55:9
**rationale** [2] - 36:12,

65:11
**reactionary** [1] - 55:8
**read** [1] - 68:21
**readily** [1] - 64:19
**reads** [1] - 39:9
**real** [2] - 37:12, 66:8
**realized** [1] - 30:25
**really** [1] - 48:6
**reason** [4] - 22:4, 72:24, 75:5, 75:8
**reasonable** [11] - 6:4, 15:6, 31:16, 38:1, 46:25, 48:10, 53:12, 57:22, 61:12, 61:19, 65:5
**reasoned** [4] - 16:18, 16:25, 40:15, 65:6
**reasoning** [2] - 5:20, 40:18
**reasons** [17] - 18:8, 18:19, 23:3, 27:18, 28:22, 38:8, 39:12, 40:8, 40:14, 46:21, 53:18, 54:16, 55:16, 58:19, 60:19, 71:23, 75:17
**rebuking** [1] - 35:19
**received** [1] - 13:20
**receiving** [1] - 34:15
**recognition** [1] - 6:2
**recognize** [2] - 11:22, 59:19
**recollection** [4] - 7:1, 69:13, 70:2, 70:12
**record** [6] - 3:6, 3:21, 41:25, 71:9, 72:12, 74:23
**reelected** [1] - 52:13
**reentered** [1] - 63:18
**reference** [4] - 21:11, 24:6, 35:9, 52:23
**referred** [1] - 8:10
**refers** [2] - 21:12, 21:22
**refused** [1] - 19:20
**refusing** [1] - 52:12
**refute** [1] - 55:21
**regarding** [1] - 34:15
**regardless** [2] - 12:4, 63:6
**reinforcement** [1] - 27:8
**reinforcements** [1] - 27:14
**reiterate** [1] - 39:7
**reject** [5] - 11:15, 30:23, 36:5, 36:7, 36:20
**rejected** [1] - 47:2
**rejecting** [1] - 35:1

**relate** [1] - 58:22
**relates** [1] - 9:6
**relationship** [1] - 73:1
**relatively** [1] - 55:2
**release** [12] - 69:3, 70:11, 70:20, 71:1, 71:6, 71:24, 72:1, 72:17, 73:10, 73:21, 75:4, 76:2
**released** [1] - 4:24
**releasing** [1] - 74:9
**relevance** [1] - 39:10
**relevant** [4] - 22:22, 34:22, 39:8, 63:10
**reliable** [1] - 23:24
**relied** [2] - 6:14, 36:13
**relieving** [1] - 4:18
**rely** [2] - 14:20, 14:21
**relying** [4] - 14:6, 14:16, 14:18, 47:1
**remain** [2] - 71:1, 71:24
**remained** [2] - 19:21, 62:3
**remarked** [1] - 52:17
**remarks** [1] - 6:12
**remembered** [1] - 10:2
**remind** [1] - 73:24
**remove** [1] - 25:24
**removed** [1] - 59:20
**rendered** [1] - 6:2
**repeat** [1] - 67:9
**repeatedly** [3] - 9:25, 19:19, 25:2
**report** [4] - 68:17, 68:20, 68:22, 72:1
**REPORTER'S** [1] - 4:10
**representations** [1] - 4:23
**request** [1] - 5:10
**require** [1] - 15:13
**required** [2] - 5:12, 30:15
**requirements** [1] - 34:17
**requires** [6] - 9:13, 15:15, 15:19, 15:24, 18:1, 54:2
**requisite** [2] - 20:5, 36:8
**resigning** [1] - 53:8
**resist** [16] - 9:9, 9:16, 10:14, 19:8, 25:6, 26:4, 26:20, 26:22, 27:3, 28:6, 28:9, 29:11, 30:4, 31:18, 49:7, 49:17
**resisted** [7] - 15:16, 15:20, 19:18, 24:4,

24:9, 25:11, 46:5
**resisting** [10] - 9:3, 10:15, 10:19, 19:12, 20:24, 25:9, 26:23, 27:16, 29:16, 29:18
**resolved** [1] - 21:9
**respectfully** [1] - 70:25
**respects** [1] - 7:4
**respond** [1] - 46:14
**responsible** [1] - 50:1
**restricted** [17] - 8:11, 8:19, 58:24, 58:25, 59:10, 59:12, 59:23, 60:6, 60:8, 60:12, 60:23, 60:24, 62:19, 62:23, 62:24, 63:1, 65:20
**rests** [1] - 22:8
**result** [2] - 31:17, 34:25
**resulted** [2] - 38:10, 47:19
**results** [1] - 57:3
**retreat** [1] - 63:12
**retreated** [1] - 25:1
**returned** [2] - 18:8, 27:22
**reveals** [1] - 10:6
**revenue** [1] - 58:14
**review** [2] - 6:22, 48:7
**reviewed** [2] - 23:19, 58:4
**reviewing** [1] - 30:13
**rigged** [3] - 54:22, 54:23
**rightly** [1] - 49:20
**riot** [4] - 12:18, 31:3, 33:13, 57:14
**rioter** [10] - 24:23, 25:17, 26:7, 26:21, 28:13, 35:21, 49:14, 49:17, 50:7, 57:13
**rioters** [54] - 7:17, 10:11, 10:19, 11:20, 19:5, 19:6, 19:17, 19:22, 20:7, 20:11, 20:24, 22:14, 22:20, 22:22, 24:13, 24:21, 25:3, 26:5, 26:6, 26:15, 27:3, 28:1, 28:2, 29:2, 29:7, 29:13, 29:20, 29:24, 30:3, 30:6, 30:9, 30:16, 30:21, 31:8, 31:18, 33:19, 46:6, 47:10, 48:13, 48:19, 49:5, 49:18, 51:9, 51:12, 51:13, 53:3, 56:3, 57:8, 57:16,

59:24, 62:1, 62:5, 63:16

**ripped** [1] - 40:4

**risk** [5] - 17:3, 17:15, 32:13, 70:24, 75:18

**robbery** [4] - 39:16, 39:17, 41:20, 41:23

**robbing** [1] - 37:14

**Robles** [2] - 17:4, 17:9

**Robles-Vertiz** [2] - 17:4, 17:9

**row** [3] - 24:13, 29:20, 30:6

**Rule** [1] - 4:16

**ruled** [1] - 34:16

**ruling** [2] - 21:11, 24:6

**rulings** [1] - 64:19

**run** [1] - 68:10

## S

**safety** [2] - 57:21, 71:5

**Safeway** [6] - 58:5, 58:6, 58:7, 58:13, 58:16, 58:17

**Safeway's** [1] - 58:11

**sales** [1] - 58:14

**San** [1] - 75:11

**sanity** [1] - 36:4

**Sargent** [1] - 16:10

**satisfied** [6] - 14:11, 15:4, 39:17, 40:2, 54:5, 64:19

**satisfies** [1] - 40:13

**saved** [1] - 4:23

**saw** [5] - 4:1, 31:3, 56:5, 59:23, 59:24

**scaffolding** [2] - 8:24, 59:24

**scalp** [1] - 37:23

**scenes** [1] - 7:12

**Schwager** [1] - 59:4

**scienter** [4] - 34:17, 35:4, 36:19, 39:11

**screamed** [1] - 47:16

**se** [1] - 47:3

**SEALED** [2] - 41:25, 42:1

**seat** [1] - 5:15

**secession** [1] - 52:22

**second** [22] - 10:22, 11:19, 20:2, 25:13, 26:23, 28:18, 29:20, 30:6, 30:7, 33:22, 38:20, 39:25, 41:13, 46:19, 48:4, 50:22, 52:6, 56:20, 61:3, 63:9, 64:22, 66:17

**seconds** [24] - 10:2, 10:8, 10:9, 11:4,

11:5, 11:24, 14:4, 19:16, 19:24, 24:3, 24:17, 25:5, 26:3, 27:25, 29:25, 30:11, 35:25, 48:8, 48:10

**Secret** [4] - 8:13, 59:2, 59:9, 60:25

**section** [3] - 21:5, 21:12, 21:13

**Section** [2] - 40:25, 41:16

**secure** [1] - 61:17

**securely** [1] - 33:1

**security** [1] - 62:1

**see** [5] - 8:20, 23:7, 68:22, 72:22, 73:16

**seeing** [1] - 35:13

**seek** [1] - 74:20

**seeking** [2] - 69:3, 74:16

**seem** [3] - 25:25, 55:8, 55:13

**self** [6] - 8:24, 10:13, 12:16, 39:17, 46:20, 57:7

**self-evident** [1] - 57:7

**self-evidently** [5] - 8:24, 10:13, 12:16, 39:17, 46:20

**sentence** [1] - 41:10

**sentencing** [14] - 36:17, 67:7, 68:1, 68:15, 68:19, 68:23, 68:25, 69:1, 71:1, 71:6, 72:1, 73:17, 75:14

**separate** [1] - 47:18

**Sergeant** [4] - 19:13, 23:19, 24:1, 39:3

**series** [1] - 28:3

**serious** [11] - 32:10, 32:12, 39:1, 39:6, 47:11, 48:16, 50:5, 50:9, 69:9, 69:11, 75:24

**seriously** [1] - 37:17

**Service** [4] - 8:13, 59:2, 59:9, 60:25

**service** [1] - 34:8

**Session** [1] - 59:6

**session** [1] - 64:24

**set** [5] - 19:15, 24:14, 59:16, 67:25, 68:15

**seven** [1] - 69:9

**Seventh** [4] - 17:7, 21:24, 22:3, 22:13

**several** [7] - 6:20, 23:18, 37:5, 55:20, 71:19, 72:15, 76:1

**shares** [1] - 32:5

**shield** [24] - 19:22, 24:23, 25:11, 25:17, 25:18, 25:24, 26:21, 27:7, 29:24, 33:18, 46:7, 46:14, 47:2, 47:4, 47:7, 47:10, 48:15, 49:8, 50:3, 50:4, 50:10, 50:13, 57:14, 63:6

**shield's** [1] - 46:15

**shields** [8] - 7:19, 19:23, 31:3, 31:5, 31:8, 31:9, 48:19, 63:7

**shifts** [1] - 71:8

**shipments** [1] - 58:16

**shocking** [1] - 7:12

**short** [4] - 14:10, 37:20, 37:25, 48:14

**shortly** [2] - 25:1, 70:15

**shoulder** [1] - 9:21

**shouted** [1] - 35:14

**shouting** [2] - 9:25, 10:6

**show** [9] - 24:11, 32:7, 33:9, 48:1, 51:16, 52:25, 71:3, 75:6, 75:17

**showed** [1] - 74:24

**showing** [6] - 6:15, 8:4, 13:24, 52:9, 52:15, 75:20

**shown** [2] - 29:17, 39:24

**shows** [7] - 11:2, 19:13, 26:4, 38:17, 46:9, 57:21, 58:13

**sic** [2] - 13:8, 52:17

**side** [1] - 49:9

**sign** [1] - 8:20

**significant** [3] - 33:2, 47:17

**significantly** [1] - 24:21

**signs** [1] - 59:18

**similar** [5] - 15:21, 16:25, 49:1, 49:3, 49:22

**similarly** [3] - 15:24, 17:17, 36:20

**simply** [1] - 36:11

**simultaneous** [1] - 40:9

**simultaneously** [1] - 47:19

**single** [1] - 74:24

**situation** [7] - 5:2, 17:10, 49:1, 49:21, 50:2, 50:8, 71:17

**situations** [2] - 39:5, 48:14

**six** [3] - 21:22, 69:9, 75:6

**sixth** [2] - 38:5, 46:25

**Sixth** [2] - 40:19, 40:21

**skipping** [6] - 20:19, 26:9, 28:24, 31:20, 38:3, 46:21

**skull** [1] - 38:22

**skyward** [1] - 35:24

**slides** [1] - 48:12

**slippery** [1] - 46:16

**slowly** [1] - 49:5

**smooth** [1] - 46:16

**snow** [2] - 8:21, 59:17

**soliciting** [1] - 27:11

**someone** [21] - 9:9, 9:12, 10:22, 11:8, 12:23, 19:8, 20:2, 20:13, 20:20, 25:6, 25:13, 25:21, 28:6, 28:18, 28:20, 28:25, 31:21, 37:17, 39:2, 51:23, 65:10

**somewhat** [1] - 6:19

**soon** [1] - 68:11

**sorry** [11] - 4:11, 9:21, 16:8, 16:13, 36:23, 51:19, 62:12, 67:16, 67:25, 73:11, 73:18

**sought** [2] - 38:13, 53:15

**sounding** [1] - 60:2

**space** [1] - 24:12

**speaks** [3] - 16:12, 16:13, 18:6

**special** [4] - 3:9, 3:23, 4:24, 40:11

**SPECIAL** [1] - 23:8

**Special** [6] - 4:1, 8:8, 13:18, 13:19, 23:15, 23:17

**specialist** [1] - 3:10

**specific** [9] - 7:25, 15:1, 17:19, 29:11, 34:17, 34:19, 36:8, 39:9, 69:22

**specific-intent** [1] - 34:19

**specifically** [3] - 4:22, 24:5, 61:17

**specified** [1] - 15:12

**spectator** [1] - 36:3

**spectrum** [1] - 71:15

**spine** [1] - 39:4

**spray** [5] - 27:23, 28:14, 29:11, 31:2, 57:17

**sprayed** [3] - 7:17, 28:13, 63:18

**spraying** [1] - 57:17

**stage** [2] - 71:21, 75:23

**stand** [2] - 33:10, 55:21

**standard** [1] - 6:3

**standing** [1] - 19:21

**standoffs** [1] - 7:15

**Stands** [1] - 22:2

**Stanley** [1] - 3:15

**stare** [1] - 33:20

**start** [1] - 32:21

**starting** [2] - 3:6, 5:1

**state** [2] - 34:15, 36:8

**statement** [1] - 12:5

**statements** [7] - 11:19, 14:7, 31:12, 55:5, 55:8, 55:21, 65:7

**states** [1] - 41:16

**States** [27] - 3:3, 3:8, 5:25, 15:22, 16:1, 16:10, 16:22, 16:23, 17:3, 17:5, 17:6, 18:4, 18:12, 18:24, 22:1, 22:2, 22:10, 40:12, 40:17, 40:19, 40:23, 41:5, 41:15, 41:18, 54:1, 64:12, 75:8

**statute** [12] - 21:12, 21:17, 21:22, 21:25, 22:5, 22:9, 22:12, 22:24, 38:11, 41:21, 57:1, 71:2

**staying** [1] - 52:22

**Steal** [6] - 52:2, 52:3, 52:16, 55:1, 55:5, 55:25

**step** [6] - 69:7, 69:12, 69:14, 69:18, 74:16, 74:20

**step-back** [5] - 69:7, 69:14, 69:18, 74:16, 74:20

**Steven** [2] - 3:3, 6:1

**still** [6] - 5:22, 24:3, 26:12, 34:20, 74:7, 74:11

**stipulated** [4] - 8:13, 59:3, 59:8, 61:25

**stipulations** [1] - 6:6

**Stirone** [2] - 18:4, 18:13

**stole** [1] - 63:15

**stolen** [7] - 19:23, 24:23, 25:11, 33:18, 46:7, 49:8, 54:24

**stop** [4] - 10:7, 11:20, 53:16
**Stop** [6] - 52:1, 52:3, 52:16, 55:1, 55:5, 55:25
**stopped** [1] - 51:12
**storage** [1] - 31:9
**Storm** [1] - 35:8
**storming** [2] - 54:11, 55:6
**straightforward** [1] - 41:9
**strained** [1] - 49:7
**straining** [2] - 11:2, 46:9
**strategic** [1] - 13:15
**stress** [1] - 36:25
**strike** [4] - 7:20, 33:13, 39:2, 39:4
**struck** [5] - 7:1, 36:21, 37:13, 37:18, 38:22
**struggle** [3] - 25:18, 51:18, 51:21
**struggling** [2] - 8:23, 26:7
**submit** [1] - 70:21
**submits** [1] - 15:10
**submitted** [1] - 58:4
**substantial** [1] - 32:13
**substantially** [1] - 49:3
**successive** [1] - 12:19
**suffer** [2] - 36:6, 57:19
**suffered** [4] - 49:21, 58:14, 59:25, 66:12
**suffering** [2] - 31:1, 59:24
**sufficient** [2] - 5:22, 30:17
**suggest** [4] - 36:15, 52:2, 69:22, 71:22
**suggested** [4] - 11:16, 30:20, 68:4, 71:18
**suggesting** [3] - 49:25, 50:3, 72:23
**suggestion** [5] - 11:11, 11:17, 34:24, 36:20, 70:19
**suggestive** [2] - 11:24, 48:2
**summarily** [1] - 5:17
**superseded** [1] - 70:15
**supervised** [2] - 70:11, 75:4
**supplemental** [1] - 15:8
**support** [4] - 5:25, 10:6, 20:6, 53:1
**supposed** [1] - 51:22

**T**

**table** [1] - 3:8
**tampering** [1] - 72:24
**taught** [1] - 39:3
**tear** [2] - 31:11, 35:15
**tear-gassing** [1] - 35:15
**technically** [1] - 39:8
**telephonically** [1] - 13:20
**temporarily** [2] - 59:2, 61:1
**Tenth** [3] - 17:6, 22:7, 22:10
**term** [1] - 62:24
**terms** [3] - 9:15, 15:14, 18:15
**terrace** [8] - 7:11, 7:12, 8:18, 10:18, 19:4, 35:13, 49:6, 49:19
**territorial** [5] - 40:12, 40:16, 40:22, 41:15, 41:17
**testified** [21] - 6:13, 6:22, 7:2, 8:12, 9:20, 10:25, 13:19, 14:15, 23:17, 33:7, 33:11, 34:10, 38:22, 46:11, 46:12, 47:17, 47:22, 49:16, 59:16, 66:12, 72:19
**testify** [2] - 13:17, 23:15
**testimony** [33] - 6:5, 6:20, 6:24, 7:4, 7:6, 8:13, 11:2, 11:16, 14:9, 36:9, 36:13, 36:24, 37:1, 37:2, 37:7, 37:9, 37:10, 37:12, 39:3, 39:8, 39:9, 39:24, 46:18, 51:11, 55:11, 57:8, 57:18, 59:4, 59:8, 59:12, 61:25, 72:14, 75:25
**text** [5] - 22:4, 22:12, 52:9, 52:25, 72:16
**texted** [1] - 52:21
**themselves** [3] - 30:10, 51:20, 60:1

**theories** [1] - 11:15
**theory** [9] - 20:23, 21:6, 25:10, 26:2, 35:2, 35:3, 36:11, 47:1, 48:2
**thereabouts** [1] - 9:7
**thereby** [1] - 33:5
**therefore** [10] - 13:4, 23:4, 32:2, 41:23, 48:21, 50:14, 54:7, 56:9, 65:22, 76:3
**they've** [2] - 54:22, 54:23
**thinner** [1] - 55:19
**third** [17] - 11:8, 20:13, 25:21, 27:5, 28:20, 30:19, 33:24, 38:24, 40:7, 46:19, 50:24, 53:19, 57:24, 61:20, 63:23, 65:13, 73:12
**thousands** [1] - 57:8
**threat** [1] - 66:6
**threaten** [2] - 9:11, 9:15
**threatened** [4] - 10:24, 20:4, 25:15, 39:25
**three** [3] - 38:8, 57:2, 74:25
**threw** [1] - 7:18
**throngs** [1] - 28:1
**throughout** [2] - 7:15, 48:5
**throwing** [1] - 10:12
**today** [3] - 3:24, 5:16, 54:23
**took** [2] - 17:12, 39:23, 41:13
**totality** [1] - 57:7
**touch** [1] - 26:11
**touched** [1] - 25:19
**toward** [1] - 10:3
**towards** [3] - 7:13, 28:1, 63:12
**train** [1] - 55:4
**training** [1] - 36:16
**transforms** [1] - 50:4
**transporting** [1] - 17:13
**travel** [1] - 7:8
**traveled** [1] - 51:17
**treat** [1] - 69:23
**treated** [1] - 75:11
**trial** [17] - 6:7, 6:9, 13:17, 14:3, 15:8, 16:19, 17:2, 17:11, 18:16, 21:9, 23:15, 34:21, 47:2, 57:11, 67:16, 67:19, 72:19
**tried** [3] - 19:15, 49:13, 49:15

**tries** [1] - 25:17
**triggered** [1] - 34:8
**true** [1] - 21:13
**Trump** [7] - 52:13, 52:17, 54:7, 54:8, 54:22, 55:4, 65:8
**trust** [1] - 73:6
**trusting** [1] - 76:1
**try** [2] - 48:19, 49:24
**trying** [9] - 7:1, 9:22, 12:3, 19:14, 25:24, 30:3, 49:11, 56:3, 60:3
**TSA** [1] - 74:25
**tunnel** [43] - 7:12, 8:18, 19:4, 19:14, 19:19, 20:11, 20:24, 21:1, 22:14, 22:20, 22:23, 25:3, 26:5, 27:1, 27:22, 29:21, 30:3, 30:24, 31:1, 31:2, 31:3, 31:14, 34:9, 34:11, 35:2, 35:13, 35:16, 35:23, 48:20, 49:6, 49:14, 50:4, 51:5, 57:13, 59:21, 60:2, 60:4, 60:21, 63:3, 63:17, 63:20, 64:20, 66:15
**turn** [3] - 9:1, 19:1, 32:4
**turning** [1] - 54:20
**twisting** [1] - 33:5
**two** [6] - 6:10, 9:2, 47:13, 48:14, 66:7, 75:4
**type** [2] - 28:13, 38:12
**typically** [1] - 69:14

**U**

**U.S** [5] - 12:15, 12:17, 15:18, 18:4, 40:13
**U.S.C** [13] - 9:4, 32:12, 41:10, 41:16, 50:18, 56:11, 62:15, 64:5, 64:9, 66:1, 73:21, 73:22, 74:7
**ultimately** [4] - 11:15, 17:22, 34:22, 52:12
**uncovered** [1] - 37:20
**under** [15] - 15:11, 21:7, 22:14, 31:6, 40:22, 41:4, 41:9, 41:11, 46:2, 48:2, 48:24, 60:14, 62:15, 64:4, 71:2
**underbrush** [1] - 19:1
**underlying** [1] - 65:11
**undermined** [1] - 26:2

**understood** [2] - 27:3, 69:21
**undertook** [2] - 63:22, 65:19
**uniform** [2] - 12:11, 12:15
**unintentional** [1] - 11:18
**unintentionally** [1] - 11:21
**uninvolved** [1] - 35:3
**unit** [1] - 35:9
**United** [27] - 3:3, 3:8, 5:25, 15:22, 16:1, 16:10, 16:22, 16:23, 17:3, 17:5, 17:6, 18:4, 18:12, 18:24, 22:1, 22:2, 22:10, 40:12, 40:17, 40:19, 40:23, 41:5, 41:15, 41:18, 54:1, 64:12, 75:8
**unknown** [1] - 17:13
**unlawful** [2] - 53:21, 54:3
**unless** [3] - 7:3, 16:21, 21:7
**unlike** [1] - 6:14
**unnecessarily** [1] - 60:15
**unquote** [2] - 50:9, 56:6
**unreasonably** [1] - 60:13
**unruly** [1] - 61:18
**unsealing** [1] - 4:14
**unsuccessfully** [1] - 49:13
**up** [19] - 19:3, 19:6, 19:15, 20:16, 29:19, 29:24, 30:9, 33:4, 35:11, 37:19, 54:25, 56:5, 59:16, 59:24, 60:21, 70:17, 74:24, 75:6, 75:17
**upper** [1] - 49:4
**upset** [1] - 5:12
**uses** [2] - 20:3, 49:24
**uttered** [1] - 11:25

**V**

**VA** [1] - 75:11
**vague** [2] - 55:8, 65:7
**variance** [4] - 16:18, 17:1, 18:15, 18:17
**various** [8] - 7:10, 7:17, 9:2, 29:23, 48:25, 49:2, 60:2, 60:22

**verbs** [3] - 21:22, 21:23, 22:5
**verdict** [2] - 5:25, 6:2
**verdicts** [3] - 56:12, 66:24, 67:2
**version** [3] - 22:9, 36:5, 36:14
**versus** [1] - 71:15
**Vertiz** [2] - 17:4, 17:9
**veteran** [1] - 75:10
**Vice** [6] - 52:11, 53:2, 53:13, 53:14, 56:2, 59:5
**vicinity** [1] - 10:11
**vicious** [2] - 34:25, 49:22
**victim** [6] - 12:14, 15:13, 15:21, 16:13, 16:14, 25:20
**victim's** [2] - 17:10, 17:11
**victims** [1] - 68:25
**victory** [2] - 35:24, 54:24
**video** [13] - 10:5, 11:2, 13:23, 13:25, 23:16, 23:22, 24:1, 33:9, 37:8, 37:11, 57:7, 57:11, 57:21
**videoing** [2] - 30:20, 35:7
**videos** [2] - 6:23, 24:11
**videotape** [1] - 6:15
**view** [1] - 13:25
**violation** [12] - 9:4, 15:5, 18:10, 21:13, 21:21, 22:25, 26:18, 32:6, 50:17, 56:11, 64:9, 66:1
**violations** [1] - 22:15
**violence** [22] - 7:12, 20:17, 24:11, 35:12, 40:1, 57:2, 57:9, 57:22, 62:19, 62:22, 63:2, 63:8, 63:19, 63:22, 64:3, 65:10, 65:25, 66:3, 66:5, 73:23, 74:7, 74:19
**violent** [10] - 12:18, 19:4, 33:15, 38:18, 40:6, 51:18, 51:20, 63:13, 71:15, 75:24
**violently** [3] - 10:12, 40:4, 63:5
**visible** [2] - 23:25, 31:5
**visited** [1] - 59:2
**visiting** [4] - 47:19, 59:2, 59:5, 61:1

**visits** [1] - 47:23
**vitiate** [1] - 36:18
**voice** [1] - 35:19

## W

**waive** [1] - 5:6
**Walker's** [1] - 53:25
**wall** [3] - 48:6, 48:11, 48:13
**Ward** [1] - 16:23
**water** [2] - 28:2, 37:24
**weak** [1] - 55:2
**weapon** [19] - 32:5, 32:8, 32:9, 32:18, 35:22, 38:7, 38:25, 47:3, 47:5, 50:5, 60:9, 62:7, 62:8, 62:13, 62:16, 62:20, 64:3, 64:5, 74:5
**weapons** [3] - 7:20, 63:7, 63:24
**wearing** [1] - 12:15
**wedge** [1] - 25:10
**wedged** [1] - 24:23
**week** [2] - 52:20, 67:20
**weight** [4] - 20:6, 33:18, 47:9
**West** [3] - 7:11, 59:13, 59:14
**west** [9] - 7:11, 7:12, 8:18, 9:8, 10:18, 19:4, 35:12, 49:6, 49:19
**whereabouts** [1] - 8:5
**whole** [1] - 75:7
**widely** [1] - 52:1
**wife** [2] - 75:7, 75:14
**Wilhoit** [7] - 23:11, 23:15, 23:18, 23:20, 23:24, 24:4, 24:5
**Wilhoit's** [2] - 23:13, 24:8
**willfully** [4] - 65:14, 65:15, 65:19, 66:18
**willing** [1] - 51:24
**Windom** [1] - 41:24
**wish** [4] - 4:11, 36:15, 68:20, 70:8
**witness** [2] - 7:6, 72:23
**witnessed** [1] - 8:23
**witnesses** [7] - 6:13, 6:25, 7:5, 7:9, 72:18, 73:11, 73:12
**witnessing** [1] - 63:19
**WL** [1] - 16:10
**Wolfname** [1] - 22:10
**Woods** [1] - 16:22

**Woodward** [13] - 3:15, 4:10, 5:16, 8:10, 41:24, 67:1, 67:14, 68:4, 68:9, 70:9, 71:10, 72:11, 76:7
**WOODWARD** [15] - 4:11, 4:17, 4:20, 67:3, 67:16, 67:19, 68:5, 68:10, 68:14, 70:10, 72:21, 72:25, 73:3, 73:6, 76:8
**Woodward's** [1] - 25:23
**words** [5] - 16:12, 21:11, 35:1, 36:12, 59:23
**worn** [4] - 14:5, 19:13, 23:20, 24:1
**wound** [1] - 38:21
**wrenching** [2] - 38:9, 38:18
**written** [1] - 68:17
**wrongdoing** [1] - 53:22

## X

**Xenakis** [2] - 34:14, 36:7
**Xenakis's** [2] - 36:9, 36:13

## Y

**yanked** [1] - 40:5
**yanking** [1] - 33:4
**year** [3] - 54:22, 58:15, 71:11
**years** [3] - 23:18, 75:4, 75:18
**yell** [1] - 34:3
**yelled** [2] - 31:10, 35:7
**yelling** [1] - 30:16
**yells** [1] - 31:2
**yourselves** [1] - 3:5