# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )     ) | |
| v. | Criminal No. 1:21-cr-00040-TNM-9 |
| FEDERICO GUILLERMO KLEIN, ) | |
| Defendant. | |

## AMENDED MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 USC §2255, OR IN THE ALTERNATIVE, RELEASE PENDING APPEAL, AND MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Federico Guillermo Klein, ("Mr. Klein" or "Federico Klein"), through undersigned counsel, hereby respectfully moves this Court pursuant to Section 2255 of Title 28 to vacate, set aside and correct his sentence, or in the alternative, pursuant to 1343(b) of Title 18 of the United States Code, move for an Order permitting Mr. Klein to be released from detention pending the resolution of his appeal of the convictions in the above-captioned matter. A proposed form of order is incorporated. And Oral argument is requested.

### I.    BACKGROUND

Mr. Klein is currently serving his sentence in federal custody at Fort Dix, New Jersey in a low security facility. Mr. Klein's sentence includes a seventy (70) month term, two (2) years of supervised release, a $3,000.00 fine and $2,000 in restitution. Mr. Klein filed notice to appeal his conviction.

Mr. Klein respectfully moves to set aside certain convictions, based on changes in the law resulting from *Fischer v. United States*, 144 S. Ct. 2176 (2024), *United States v. Larry Brock,* 94 F.4th 39 (D.C. Cir. 2024), and, possibly, by the time this matter is considered, *United States v. Couy Griffin* (Docket 22-3042, D.C. Circuit Ct 2023) that in turn, eliminate the application of the aggravated assault

2

guidelines, eliminate the victim related adjustment, eliminate the basis for the upward variance, likely eliminate convictions under §1752(a), and should cause the United States Sentencing Guidelines under §4C1.1(a) to apply. *See* 28 U.S.C §2255(a) and (b).

## II.    SENTENCING GUIDELINES ANALYSIS GIVEN CHANGES IN LAW

For the reasons set forth below, we submit that the changes in the law that are applicable to Mr. Klein would cause him to be subject to §2A2.4 assault guidelines at a base level of 10 plus 3 points for physical contact.  The five groupings cause a 4-level increase and would then be reduced by 2 points upon application of the §4C1.1(a) zero-point offender reduction and reduced 2 points under §3E1.1(a). As such, Mr. Klein would be at an offense level of 13, subject to category I, that the sentencing guidelines would apply 12 to 18 months, whereby the date of the anticipated hearing on this motion, Mr. Klein will have served 11 months, and more than 31 months in home detention.  Mr. Klein was subject to home detention from April 13, 2021, through January 1, 2023.

## III.    PROCEDURAL HISTORY

On March 2, 2021, Defendant Federico Klein, was charged with various offenses related to an allegation that Mr. Klein was present at the Capitol Building during the violence that occurred in that area on January 6, 2021. Complaint, *United States v. Klein*, No. 21-cr-236 (D.D.C March 2, 2021) (ECF No. 001).  A fifth superseding indictment was issued on December 1, 2021, and on December 17, 2021, the defendants were arraigned, and Mr. Klein again entered a plea of Not Guilty to all counts. On July 20, 2023, after a bench trial, the Court convicted Mr. Klein of twelve (12) counts of the Fifth Superseding Indictment related to his participation in the attack on the Capitol Building on January 6, 2021. (Dec. 1, 2021) (ECF No. 179).

The Court set sentencing for November 3, 2023, at which time the Court sentenced Mr. Klein to Seventy (70) months of incarceration on seven (7) of those Counts; Sixty (60) months of incarceration

on one Count Thirty-Five; Twelve (12) Months of incarceration on two Counts; and Six (6) months of

incarceration on two Counts, all terms to run concurrently. The Court also imposed Twenty-Four (24)

Months of supervised release and imposed both fines and restitution. (Nov. 7, 2023) (ECF No. 733).

As set forth in the District Court's Verdict,

> "[T]he Court finds the defendant, Federico Guillermo Klein, **GUILTY** beyond a reasonable doubt on the following charges in the Fifth Superseding Indictment, ECF No. 180[1];
>
> As to Count 34, the charge of attempting to and in fact corruptly obstructing, influencing, and impeding an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. § 15–18, in violation of 18 U.S.C. §§ 1512(c) and 2; Mr. Klein was convicted of violating 18 USC 1512(c)(2) – obstruction of an official proceeding,

(July 21, 2023) (ECF 688).

Mr. Klein was also convicted of the following list of non-violent felonies and

misdemeanors summarized below:

> Counts 9, 17, 19, 27, 31 and 32, for Assaulting, Resisting, or Impeding Certain Officers, and Aiding and Abetting, Assaulting, Resisting, or Impeding Certain Officers in violation of 18 USC §111(a)(1), and 18 USC §111(a)(1) and 18 U.S.C. § 2;
> Count 35, for Civil Disorder in violation of 18 USC §231(a)(3);
> Count 43, for Disorderly and Disruptive Conduct in a Restrictive Building or Grounds in violation of 18 USC §1752(a)(2);
> Count 51, for Engaging in Physical Violence in a Restricted Building or Grounds in violation of 18 USC §1752(a)(4);
> Count 52, for Disorderly Conduct in a Capitol Building in violation of 40 USC §5104(E)(2)(D), 2;
> Count 53, 40 USC §5104(E)(2)(F) – Act of Physical Violence in a Capitol Grounds or Buildings.

*Id.*

The Court further held as stated in the Verdict,

---

[1] In the Verdict, the Court cites ECF 180, but the Fifth Superseding Indictment is at ECF 179, filed Dec. 1, 2021.

> However, for the reasons stated in the oral ruling on July 20, 2023, based on the evidence presented in the record, the Court finds the defendant, Federico Guillermo Klein, **NOT GUILTY** on the dangerous weapon enhancements in Counts 31, 32, 43, and 51, namely 18 U.S.C. 111(b) and 18 U.S.C. § 1752(b)(1)(A).

*Id.* at p. 4.

Mr. Klein's sentence was subject to an upward variance of approximately nine (9) months or a 14.3% increase above the upper end of the range of the sentencing guidelines. The Court's reasoning provided that,

> Defendant's actions – though not technically related to the "Administration of Justice" – threatened injury to multiple officers and involved substantial interference with the certification of the electoral college. CF USSG §2J1.2(b)(1)(B) + §2J1.2(b)(2). *"*

(Statement of Reasons, p. 3).

In the Statement of Reasons and reflected in the Transcript of Sentencing Hearing, the Court stated that Mr. Klein's offense level was 24, which provided a sentencing guideline of 51-63 months as Mr. Klein is in Criminal History Category I with a score of zero criminal history points. The Court then imposed a sentence of 72 months, which is near the midpoint of offense level 26 in Category I. *Id.*

Moreover, the Court has repeatedly found that Mr. Klein is not likely to flee or pose a danger to the safety of any person or the community, as Mr. Klein was permitted to maintain home detention before trial, after trial through sentencing, and after sentencing up until January 3, 2024, when Mr. Klein self-reported to the prison facility, Ray Brook FCI in Lake Placid, New York.

## IV.    LEGAL ARGUMENT

### a.  Defendant's Claims Are Timely Under 28 U.S.C. § 2255

Defendant's direct case became final with sentencing on November 3, 2023, which is less than one year before the filing of this motion; therefore, Mr. Klein's Motion under §2255 remains timely. *See* 28 USC §2255(6) ¶1, (filing of § 2255 claims can be filed up to one year from the date on which the conviction became final).  Mr. Klein has also filed a timely Notice of Appeal, which is pending.

Mr. Klein now seeks multiple convictions within his sentence to be vacated given changes in the law, including because of the Supreme Court's decision in Fischer v. United States, 144 S. Ct. 2176 (2024) to repair the injustice rapidly and efficiently.  For this reason, the motion to vacate under the writ of habeas corpus is his remedy:

> What is involved here is the extent to which §1983 is a permissible alternative to the traditional remedy of habeas corpus. Upon that question, we hold today that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus. Accordingly, we reverse the judgment before us.

*United States v. Secor*, 2024 U.S. Dist. LEXIS 122600 *9 (*citing, Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973), *United States v. Jenkins*, 50 F.4th 1185, 1200, 459 U.S. App. D.C. 235 (D.C. Cir. 2022)).

The remedy of habeas corpus applies in the current circumstance where at least two laws and potentially three laws that are predicate to multiple felony convictions no longer apply to Mr. Klein due to higher court decisions.  This clearly presents an emergent circumstance directly implicating his rights under habeas corpus where the majority of his sentence is bound to be eliminated.  In *Griggs v. Provident Consumer Discount Co*., 459 U.S. 56, 59-61, consistent with the prioritization of the motion to vacate, and to prevent unnecessary appellate review, the Court determined that the timely filing of a motion to amend a judgement in a parallel civil matter

under Rule 59 would be prioritized over an already noticed appeal.  This prioritization of Rule 59

Motions over appellate court jurisdiction was codified in the 1993 Amendment to Federal Rule

of Appellate Procedure 4(a)(4).  In the present case, the motion to vacate under habeas corpus

presents the parallel circumstance to Rule 59, and yet the writ of habeas corpus takes a high

priority within the United States Constitution itself at Article I, Section 9, Clause 2, which

provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when

in Case of Rebellion or Invasion the public Safety may require it."  This clear prioritization

ensures the notice of appeal should not interfere with Mr. Klein's privilege to have his timely

motion heard.

Furthermore, consistent with the concerns in *Griggs* regarding "unnecessary appellate

review," substantial legal challenges have been resolved by the D.C. Circuit Court and the

United States Supreme Court that position this Court to efficiently dispose of this motion such

that an appeal *may* no longer be required.  *See* infra at p. 8-13.

**b.  Legal Standard for Release Pending Appeal**

In the alternative, Mr. Klein moves under Section 3143(b) of Title 18 of the United States

Code for release pending appeal based on the same matters and arguments described under this

motion to vacate.

Under 18 U.S.C. § 3143(b)(1), a trial Court, "shall" order a person found guilty of an

offense and sentenced to a term of imprisonment to be detained, unless it finds, (1) "by clear and

convincing evidence that the person is not likely to flee or pose a danger to the safety of any

person or the community if released under [18 U.S.C. § 3142(b) or (c)]," and (2) "that the appeal

is not for the purpose of delay and raises a substantial question of law or fact likely to result in"

favorable relief. *Id.* Such relief includes reversal, a new trial, a sentence that does not include a

term of imprisonment, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." *Id.* at § 3143(b)(1)(B)(i) – (iv).

Thus, the issue before the Court is whether Mr. Klein has, "raise[d] a substantial question of law or fact likely to result in" favorable relief. To resolve this question, the Court must make a two-part inquiry: "(1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in the defendant's favor be likely to lead to reversal [or other favorable relief]?" *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987) (*per curiam*). A "substantial question" is one that is "a close question or one that very well could be decided the other way." *Id.* (internal quotation marks omitted). This Court must undertake such an inquiry bearing in mind that, "the law has shifted from a presumption of release to a presumption of valid conviction." *Id.* at 556.

### c. This Court Should Set Aside Mr. Klein's Conviction for 18 USC §1512(c)(2)

As the Supreme Court of the United States ruled in *Fischer v. United States*:

*Held*: to prove a violation of §1512(c)(2), the Government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in an official proceeding, or attempted to do so.

*Fischer v. United States,* 144 S. Ct. 2176 (2024).

The Court's six-person majority that included Justices nominated by Presidents of both parties stated:

…The Government's reading would lump together under (c)(2) disparate types of conduct which Congress had assigned proportionate sentences. for Tethering subsection (c)(2) to the context of (c)(1) recognizes the distinct purpose of each provision. Subsection (c)(1) refers to a defined set of offense conduct—four types of actions that, by their nature, impair the integrity or availability of records, documents, or objects for use in an official proceeding. Reading the "otherwise" clause as having been given more precise content by (c)(1), subsection (c)(2) makes

> it a crime to impair the availability or integrity of records, documents, or objects used in an official proceeding in ways other than those specified in (c)(1).

*Fischer v. United States*, 144 S. Ct. 2176 (2024), (pp. 3-4).

The Supreme Court vacated the 18 U.S.C. §1512(c)(2) violation against Defendant Fischer and remanded the case. *See Id.* at p. 27. In Mr. Klein's case, the prosecution made no claim that Mr. Klein impaired the availability or integrity of any items for use in an official proceeding. (*See* the 5th Superseding Indictment of Federico Klein). The Fifth Superseding Indictment did not include these elements in Count 34 for Obstruction of an Official Proceeding and Aiding and Abetting, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2. (Dec. 1, 2021) (ECF No. 179 at Count 34). Instead Count thirty-four (34) of the Fifth Superseding Indictment, it is alleged that:

> On or about January 6, 2021, within the District of Columbia and elsewhere, [Mr. Klein] attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

*Id.[2]*

As such, §1512(c)(2) is not a chargeable offense against Mr. Klein. It is, therefore, respectfully submitted that Mr. Klein's conviction on Count 34 be vacated, and all other sentencing that depended or considered §1512(c)(2) or elements thereof.

**d. This Court Should Set Aside Mr. Klein's Convictions Relating to or Deriving from USSG §2J1.2(b)(1)(B) and §2J1.2(b)(2).**

---

[2] "An indictment must contain the essential facts constituting the charged offense." Order Denying Mot. Reconsider at 4, *United States v. Miller*, No. 1:21-CR-119 (CJN), 2022 U.S. Dist. LEXIS 95145, at *5 (D.D.C. May 27, 2022). As then-District Court Judge Jackson recently explained: "importantly for present purposes, '[i]t is an elementary principle of criminal pleading[] that where the definition of an offense in the same generic terms as in the definition; but it mist state the species[]—it must descend to particulars." *United States v. Hillie*, 227 F. Supp. 3d 57, 71-72) (D.D.C. 2017) (alterations original) (quoting *United States v. Thomas*, 444 F.2d 919, 921 (D.C. Cir. 1971)).

The Circuit Court of Appeals for the District of Columbia recently held that "[b]ecause Section 2J1.2's text, commentary, and context establish that the "administration of justice" does not extend to Congress's counting and certification of electoral college votes, the District Court erred in applying Section 2J1.2(b)(2)'s three-level sentencing enhancement to Brock's Section 1512(c)(2) conviction." *United States v. Larry Brock,* 94 F.4th 39, 48.

> The commentary to Section 2J1.2 underscores that "administration of justice" refers to judicial, quasi-judicial, and adjunct investigative proceedings that apply the force of the state to determine or maintain the legal rights of individuals and entities. . . [a]nd the commentary to the Guidelines, unless it is inconsistent with the Guidelines' plain text (which no one argues here), is authoritative." *Long*, 997 F.3d at 355. Id at p. 29.

> Other provisions of the Guidelines' commentary bolster this interpretation. Section 3C1.1—entitled "Obstructing or Impeding the Administration of Justice"—applies to defendants who "willfully obstruct or impede, or attempt to obstruct or impede, the administration of justice with respect to the *investigation, prosecution, or sentencing* of the * * * offense of conviction" when "the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense[.]" U.S.S.G. § 3C1.1 (emphasis added). Every example in the commentary to Section 3C1.1 involves conduct that obstructs a judicial or related investigative proceeding. *See* U.S.S.G. § 3C1.1 cmt. n.4. Other uses of the term throughout the Guidelines are similarly cabined to judicial, quasi-judicial, and investigative proceedings. *See, e.g., Id.* §2J1.3 ("Perjury or Subornation of Perjury; Bribery of Witness"); *Id.* §2J1.5 ("Failure to Appear by Material Witness").

*Id.* at 29-30.

As both, USSG §2J1.2(b)(1)(B) and §2J1.2(b)(2), are confined to acts impacting the administration of justice; any aspect of the sentencing that rely on these provisions, including the upward variance and elements thereof, must now be vacated.

### e.  The Other Related Convictions Lack a Predicate Crime without §1512(c)(2).

Regarding Mr. Klein's related convictions, the felony assaults that followed the aggravated assault guidelines were solely aggravated due to a finding that Mr. Klein intended to commit another felony – that felony being §1512(c)(2). With the Court's finding that Mr.

Klein's acts were nonviolent; the Court then relied on the intent to commit another felony to impose the aggravated assault guidelines. The Court stated in the Sentencing Hearing that:

> The Court: I think Probation is pointing not so much to the violence, but that violence – the final proviso for aggravated assault looks to an assault with the intent to commit another felony. I think that's what Officer Baker is relying on. (Sentencing Hearing Transcript at p. 11).

> The Court: I recognize your assaults were not as injurious as many felony assaults are. But the fact is that for the better part of an hour you repeatedly assaulted different officers. And that's very troubling to me. I also believe your crime of obstruction is an aggravating factor that warrants additional punishment here. The government persuasively demonstrated that you were closely following the certification process, that you expected Vice President Pence would refuse to certify the election, and that when you learned that you were wrong that you felt like Mr. he had betrayed you and that you had to take matters into your own hands.

(Sentencing Hearing Transcript at p. 61).

The above statement by the Court that Mr. Klein's assaults "were not as injurious as many felony assaults are. . ." understates the facts. In fact, the Court did not find that Mr. Klein injured *any* officers at all. The Court sought clarification as to whether Officer Foulds was injured:

> Woodward: Mr. Klein did not cause any injury to any officer that day. And the Government I don't think attempted to establish that Mr. Klein caused any in this case to any officer that day. So –

> The Court: I thought that he tried to show that -- talked about Officer Foulds, I believe, saying that he was exhausted and that he was injured there.

> Mr. Woodward: Yes, that, we would submit, is not an injury. I mean, that – even if the Court were to find that being exhausted is an injury, there's no evidence that Officer Fould's exhaustion was the proximate cause of Mr. Klein and Mr. Klein alone, given the nature of the events in the tunnel. (Sentencing Hearing Tr. at 17-18).

Officer Foulds confirmed in his testimony in the bench trial that he suffered no injury from his interactions with Mr. Klein:

> The Court: Were you injured on January 6th?

The Witness [Foulds]: Yeah. So I had some abrasions to my forehead from getting a bunch of knocks on the helmet throughout the day. And I got a lot of -- I got exposed to a lot of chemical spray. . .

The Court: Do you believe any of that relates back to this interaction with the man with the red cap and green jacket?

The Witness [Foulds]: **This specific interaction with the shield pushing? I couldn't say so. I don't think so**.

(Bench Trial Day 1 Tr. at p. 201-202) (emphasis added).

The Court did not find that Mr. Klein injured anyone and specifically confirmed reliance

on §1512(c)(2) as the other felony in Mr. Klein's Sentencing Hearing:

And I should be clear: I'm not saying that civil disorder would definitely not apply. I think arguably an assault in the midst of a riot is an aggravating factor that may justify the aggravated assault guideline. But in any case, I'm quite confident that obstruction of an official proceeding would qualify as a separate felony.

I do find that obstruction of an official proceeding is exactly the kind of second different crime that Judge Jackson agreed could satisfy §2A2.2(d). I therefore agree with the Government and Probation on this point and will follow the aggravated assault guideline here.

(Sentencing Hearing Tr. at 22:23-23:9 and *See also* Tr. at 61:13-61:24.)

The Court determined that obstruction of an official proceeding, 18 USC §1512(c)(2),

would qualify as the separate felony and used this to apply the aggravated assault guidelines.

(*See also* Sentencing Hearing Transcript at p. 3 and pages 15-16 of Presentence Investigation

Report).  The felony assault charges against Mr. Klein that followed the §2A2.2 aggravated

assault guidelines based on his violation of 18 USC §1512(c)(2) include:

18 USC 111(a)(1) and (a)2 – Assaulting, Resisting, or Impeding Certain Officers and Aiding and Abetting (4 counts),
18 USC 111(a)(1) (2 counts)
18 USC 231(a)(3) – Civil Disorder
18 USC 1752(a)(2) – Disorderly and Disruptive Conduct in a Restrictive Building or Grounds,
18 USC 1752(a)(4) – Engaging in Physical Violence in a Restricted Building or Grounds.

(July 21, 2023) (ECF 688).

The above charges relied on 18 USC §1512(c)(2) to apply the aggravated assault

guidelines for these charges; therefore, the aggravated assault convictions must be vacated for

these charges.

**f.    Pending the Outcome of United States v. Couy Griffin, Convictions Under §1752 are to be Stayed, or Vacated.**

Mr. Klein was convicted under 18 USC §1752(a)(2), Disorderly Conduct in a Capitol

Building, and 18 USC §1752(a)(4), Act of Physical Violence in a Capital Grounds or Buildings.

This question related to intent is currently pending before the Circuit Court, which is anticipated

to confirm the elements required under §1752(a).  *United States v. Couy Griffin*, Docket 22-

3042, D.C. Circuit Ct 2023; *See* Appellant Brief at p. 16, (June 6, 2023). Furthermore, Mr. Klein

arrived at the same minute that Couy Griffin arrived at the scene, aligning the analysis as to

whether the protectee was still on the premises. *See Id.*

The D.C. Circuit Court heard oral argument on December 4, 2023, and the decision has

been pending since.  *See Couy Griffin* docket 22-3042.  Reflecting the importance of this appeal,

per a letter from the Department of Justice filed under the *Couy Griffin* docket 22-3042 on

September 3, 2024, the following cases are being held in abeyance pending a decision:

- United States v. Fitzsimons, No. 23-3123
- United States v. Mlynarek & Balhorn, Consolidated Nos. 24-3040 & 24-3035
- United States v. Rahm, No. 23-3012
- United States v. Rhine, No. 23-3168
- United States v. Roche, No. 23-3094
- United States v. Seefried, No. 23-3024
- United States v. Sheppard, No. 23-3164

(*See* Exhibit A).

Upon a favorable outcome in *United States v. Couy,* it would follow that Mr. Klein's

convictions on 18 USC §1752(a)(2), Disorderly Conduct in a Capitol Building, and 18 USC

§1752(a)(4), Act of Physical Violence in a Capital Grounds or Buildings, should now be stayed and/or vacated. Mr. Klein was convicted despite no evaluation of whether Mr. Klein believed a "Secret Service Protectee" was on the premises when, at 2:31, Mr. Klein entered the potentially restricted area, and no evaluation occurred as to whether the protectee was present at or after 2:31 p.m. (Bench Trial Day 3 Tr. p. at 725).

In the event that the Circuit Court has not yet decided the outcome of *Couy Griffin*, the conviction should be at least stayed if not vacated based on the expectations reflected by the eight matters held in abeyance, a plain reading of the law, evidence of the pattern of poor interpretation of the law as recognized by *Brock* and *Fischer*, the lack of evidence in the record regarding Mr. Klein's *mens rea* regarding the location of the protectee and the lack of evidence in the record on the actual whereabouts of the protectee.

**g.    Zero Point Offender Adjustment**

Upon the elimination of the aggravated assaults, which as stated above are predicated on the §1512(c)(2), the Zero Point Offender Adjustment two level reduction should also be granted. As the PSR acknowledged, "the total criminal history score is zero. (PSR at p. 21). According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of zero establishes a criminal history category of I." Sentencing Guidelines, Chapter 5, (2023), (https://www.ussc.gov/guidelines/2023-guidelines-manual/annotated-2023-chapter-5). The PSR provides that "Amendment No. 821, the guideline provides a decrease of two offense levels for "Zero-Point Offenders" (no criminal history points) whose offense did not involve specific aggravating factors, pursuant to USSG 4C1.1."

The United States Sentencing Commission reports:

Zero-Point vs. Other Offenders: In several recidivism studies, the Commission found that zero-point offenders recidivated far less often than other offenders (27% vs. 42% for one-

point offenders, and 49% overall). In FY 2021, zero-point offenders accounted for one-third of the federal sentencing caseload. The district courts sentenced just 39% of these offenders within the guideline range—often citing overstatement of criminal history as a reason for the below-range sentence.

USSC 2023 Amendment in Brief, Amendment (effective November 1, 2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_821R.pdf

When considering the lower likelihood of recidivism for first time offenders that commit more typical crimes such as those involving drugs, theft, or human trafficking, a first-time political protest within a uniquely heated political climate is unlikely to lead Mr. Klein into a life of crime. Given this reality, the lack of this risk further supports application of the §821 adjustment.

While the PSR recommended denial of the two-offense level reduction in the proposed sentencing of Mr. Klein based on aggravating factors of violence, the Court did not find a separate predicate of injury or violence. *See infra* at p. 20. (*See also* infra 18-19 for the excerpt of Officer Moore's testimony describing a lack of risk of bodily harm at the West Front and describing interactions with Mr. Klein as a sled-pushing football training exercise; *See* also supra at p.11-12, Office Foulds' testimony on his lack of injury from shield pushing).

Therefore, the court should vacate §1512(c)(2), the application of the aggravated assault guidelines, and, therefore, now Mr. Klein should qualify for the Zero Point Offender Adjustment.

**h.  Application of the Upward Variance at this point would violate Due Process**

The Court, in the statement of reasons, justified the variance against Mr. Klein by describing circumstances that, in part, rely on *Fischer* and *Brock:*

> Defendant's actions – though not technically related to the "Administration of Justice" – threatened injury to multiple officers and involved substantial interference with the certification of the electoral college. CF USSG §2J1.2(b)(1)(B) + §2J1.2(b)(2).*"* (Statement of Reasons, p. 3).

The elimination of the charges relating to *Fischer* and *Brock* remove the predicate upon which the Court relied to apply the upward variance. Given *Fischer*, no indictment remains to support a charge for interference with the certification of the electoral college, and given *Brock*, no valid indictment supports a variance imposed as penalty for interference with the "administration of justice*." See Fischer*, supra at 7; *See Brock*, supra at 8-9; *See* Fifth Superseding Indictment, generally. To depart now from the indictment on an application of different grounds to justify an upward variance would violate Due Process under the Fifth Amendment for the following reasons:

> A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner-often through the evidence presented at trial or the jury instructions-that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment. *See Emery*, 186 F.3d at 927. With a constructive amendment, "the Fifth Amendment right not to 'be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury'" is implicated, and thus a constructive amendment of an indictment is reversible error per se. *See Stuckey*, 220 F.3d at 981 (*quoting* U.S. Const. amend. V). In reviewing an appeal based on a claim of constructive amendment, we consider whether the admission of evidence or the jury instructions created a "substantial likelihood" that the defendant was convicted of an uncharged offense. *See Novak*, 217 F.3d at 575.

*United States v. Whirlwind Soldier*, 499 F.3d 862, 870, (8th Cir. 2007).

The share of the upward variance that depended on *Fischer* and *Brock* no longer has a legal foundation after this Court vacates the charges and convictions impacted by those cases. The other element of the variance also described in the Statement of Reasons at p. 3 provided that the Court found Mr. Klein "threatened injury to multiple officers*."*

In *United States v. Secor*, 2024 U.S. Dist. LEXIS 122600, involving a different January 6th defendant, the Court stated in a parenthetical citing *United States v. Hunter Seefried,* 639 F. Supp. 3d 8, 20 (D.D.C. 2022), "that, while guidelines departures did not encompass Capitol riot, Courts can still account for this conduct through an upward variance." However, the District of

Columbia has a statute that the prosecution could have charged that precisely covers rioting in

Washington DC, under D.C. Code, §22-1322 (Rioting or Inciting to Riot):

> (a) A riot in the District of Columbia is a public disturbance involving an assemblage of 5 or more persons which by tumultuous and violent conduct or the threat thereof creates grave danger of damage or injury to property or persons.

> (b) Whoever willfully engages in a riot in the District of Columbia shall be punished by imprisonment for not more than 180 days or a fine of not more than the amount set forth in § 22-3571.01, or both.

> (c) Whoever willfully incites or urges other persons to engage in a riot shall be punished by imprisonment for not more than 180 days or a fine of not more than the amount set forth in § 22-3571.01, or both.

> (d) If in the course and as a result of a riot a person suffers serious bodily harm or there is property damage in excess of $5,000, every person who willfully incited or urged others to engage in the riot shall be punished by imprisonment for not more than 10 years or a fine of not more than the amount set forth in § 22-3571.01, or both.

D.C. Code §22-1322.

The prosecution failed to indict Mr. Klein under this riot statute. The Court in this case

should not, therefore, impose punishment for those activities over which the prosecution

specifically failed to indict Mr. Klein.  To do so creates a constructive amendment, that would

violate Due Process under the Fifth Amendment.

Mr. Klein was also subject to a highly duplicative set of charges including six §111

charges and three additional felony charges.  Thus, any imposition of an upward variance to

penalize the defendant for what are the same acts, should be found as double jeopardy:

> When multiple punishments are at issue, our inquiry focuses on whether Congress intended for the defendant's actions to be subject to the punishment received. If statutory language authorizes the punishment, there can be no double jeopardy violation. *Missouri v. Hunter*, 459 U.S. 359, 368-69, 103 S. Ct. 673, 679, 74 L. Ed. 2d 535 (1983); *Albernaz v. United States*, 450 U.S. 333, 336, 101 S. Ct. 1137, 1141, 67 L. Ed. 2d 275 (1981). But if that inquiry is inconclusive, we apply the interpretive tool announced in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), which asks "whether conviction under each statutory provision

requires proof of an additional fact which the other does not." *United States v. Nguyen*, 28 F.3d 477, 482 (5th Cir. 1994).

*United States v. Corona*, 108 F.3d 565, 572 (5th Cir. 1997).

Adding this threat of injury to multiple officers in addition to the assaults Mr. Klein was already convicted of, which include the threat of injury as an element, would amount to double jeopardy under the analysis in *Corona. Id.*

However, it appears that the Court may have sought to impose the variance with an added or different element when compared to a §111. In *Secor* at 6, where the Court stated that "[c]onfronted by a crowd of that size and agitation taking those actions, the officer would have understood there to be an "implied "declaration . . . of an intent to inflict loss or pain" "on him.*"* This group-based variation on the §111 may add a new element that escapes *Corona*. To the extent that Mr. Klein's acts are deemed a threat by aggregating his acts with the acts of the crowd, this would amount to a constructive amendment of the indictment that would violate Mr. Klein's due process rights as set forth above. *Whirlwind Soldier* at 870. The constructive amendment for this group-based penalty constitutes a "riot charge" or otherwise a group threat charge not listed in the indictment. Mr. Klein had no notice and therefore did not defend against this charge.

Given the lack of notice in the indictment or during the trial regarding this group-based threat, at this late stage we now identify evidence in the record directly responsive to the question of whether Mr. Klein and the group Mr. Klein was among created a threat of injury against multiple officers. Consider the testimony of Officer Moore at trial:

> But as I can remember, **two of the individuals that were in the crowd**, two white males – one was maybe about six-two and one was, like, maybe -- about five-ten, the one that was six-two, he had on all black. The other one, he had on like all tan on. **And they guided me to my right. And one of them said, "You don't want to go left because of the fact they're crazy. They <u>might</u> do some**

18

**bodily harm**." **So they guided me out to the right, which was going down the steps and going out to the north side of the West Front.**

(Bench Trial Tr. at 535:19 – 536:5) (emphasis added).

Officer Moore accepted the present sense impression of these two individuals that the West Front group "to the right" was not going to lead to bodily harm. Officer Moore followed their advice and reached the safer location at the West Front where the Officer described his interaction with Mr. Klein in terms of a riskless strength training exercise:

Q. And were you feeling force being pushed back against you?
A. Absolutely. With every intent. And – and *I just felt like back in high school and college, playing football and pushing a sled*.

(Bench Trial Tr. at 538:15 – 538:18).

Officer Moore's recollection that it reminded him of pushing a football training sled back in high school or college brings an example of a strength training exercise without the danger of actual injury. This recollection appears to have confirmed the advice of the two unidentified men in black and tan that counseled Officer Moore away from the areas where he could suffer "bodily harm." The example of a training exercise contrasts exceptionally with the description Officer Moore gave about being told not to go to the left, where "they're crazy*."* This recollection and testimony highlighted Officer Moore's perception that Mr. Klein and the group Mr. Klein was among were not threatening bodily injury. (*See also* supra at p.11-12 Officer Fould's description of his interaction with Mr. Klein as "shield pushing" and not having caused his injuries. *See* Bench Trial Tr. at 114-119 for Officer Harvell's testimony on Mr. Klein's pushing).

Mr. Klein was found non-threatening as is reflected throughout. While Mr. Klein's interest was to participate in these apparent "sled pushing" exercises with four different officers, Mr. Klein was not alleged to have injured any of the officers, nor alleged to have acted in a manner that reflected any escalation or intent to harm them. In Mr. Klein's case, there are four observations of assaults where Mr.

Klein is found to have pushed against different officers but in each case, Mr. Klein was found to not have committed violence. This shows a pattern of non-violence.[3]  The Court noted that, "while [Mr. Klein] has been convicted of numerous felonies . . . I think most, if not all of those felonies, were either nonviolent or on the impeding or interfering the [sic] end of the spectrum versus more. . . violent assaults." (Transcript, Jul. 20, 2023, p. 71:12-16).

Upon the aggravated assault guidelines being vacated, there would only remain a record of nonviolent and entirely non-injurious acts of impeding, resisting or pushing-based assaults, for which Mr. Klein is expected to be subject to seven separate felony counts under the §2A2.4 assault guidelines. To avoid further duplication of penalties, and to recognize that the West Front was viewed as a safer place by Officer Moore and the two men that guided him there, and therefore, the share of the upward variance regarding "threatened injury to multiple officers" should be vacated as a basis for the upward variance, which should be eliminated in its entirety. (Statement of Reasons, p.3).  Consistent with this, the §821 two-level reduction should be provided.

i.    **The Calculation of Mr. Klein's Sentence under the United States Sentencing Guidelines.**

Upon vacating Count 34, §1512(c)(2), the §2A2.2 aggravated assaults that are all dependent on intent to commit a violation of §1512(c)(2) must be vacated and would be replaced by the underlying assault that was charged without the aggravated enhancement.  The analysis of the Presentence Investigation Report (PSR) with regard to the cross referencing at page 15-16 provides in all relevant cases that §2A2.4 is the base guideline.  As a result, the following adjustments would result:

---

[3] Morris Hamburg, *Statistical Analysis for Decision Making*, 2nd edition 1977 at p. 359 ("Generally, estimates or predictions must be made from only a sample of that population").

1. In the case of Counts 9,17 and 27 of Assaulting, Resisting, or Impeding Certain Officers and Aiding and Abetting under 18 USC §111(a)(1) and (2), the base applicable guideline is USSG §2A2.4. The aggravated §2A2.2 must be vacated causing the base level of the crime to fall to 10. (PSR at 15).

2. In the case of Count 19 of Assaulting, Resisting, or Impeding Certain Officers and Aiding and Abetting under 18 USC §111(a)(1) and (2); the applicable guideline is USSG §2A2.4. The base offense level remains at 10.

3. In the case of the Counts 31 and 32, Assaulting, Resisting, or Impeding Certain Officers of 18 USC 111(a)(1), the base applicable guideline is USSG §2A2.4. The aggravated §2A2.2 must be vacated causing the base level of the crime to fall to 10. (PSR at 15).

4. In the case of Count 35, the conviction on Civil Disorder under 18 USC §231(a)(3), the PSR states that "the applicable guideline is found in USSG §2X5.1. That section provides that if the offense is a felony for which no guideline expressly has been promulgated apply the most analogous guideline. In this case, the most analogous guideline is USSG §2A2.4; however, the cross reference at USSG §2A2.4 notes that if the conduct constituted aggravated assault, apply USSG §2A2.2." (PSR at 15). The aggravated guidelines must be vacated and then adjusted to follow guidance under §2A2.4 where the base level of the crime falls to 10.

5. In the case of Counts 43 and 51, 18 USC 1752(a)(2), Disorderly Conduct in a Capitol Building and 18 USC 1752(a)(4), Act of Physical Violence in a Capital Grounds or Buildings, these should be stayed at a minimum or vacated per the analysis of *United States v. Couy Griffin*. *See* supra at p. 13.

If these are not vacated, the aggravated assault guidelines must be vacated alongside §18 USC 1512(c)(2) and adjusted to follow guidance under §2A2.4 where the base level of the crime falls to 10.

6.      In the case of the §111 assaults that involved physical contact with an officer, 3 points will be added, making the offense level 13.  Government's recommended grouping is identified at p. 15-19 of the PSR.  The PSR states that "Counts 17,19, 31 and 32 involve separate harms (victims) and are therefore not grouped." (PSR at p. 15).  This means the balance of three counts that do not involve separate harms should be unified into one group.

Under §3D1.2, "all counts involving substantially the same harm shall be grouped together into a single group.  When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or *if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior*." (italics added). USSG §3D1.2, at Application Note 2 states:

> **The term "victim" is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim.**  For offenses in which there are no identifiable victims (<u>e.g.</u>, drug or immigration offenses, where society at large is the victim), **the "victim" for purposes of subsections (a) and (b) is the societal interest that is harmed.  In such cases, the counts are grouped together when the societal interests that are harmed are closely related**.  Where one count, for example, involves unlawfully entering the United States and the other involves possession of fraudulent evidence of citizenship, the counts are grouped together because the societal interests harmed (the interests protected by laws governing immigration) are closely related.  In contrast, where one count involves the sale of controlled substances and the other involves an immigration law violation, the counts are not grouped together because different societal interests are harmed.  Ambiguities should be resolved in accordance with the purpose of this section as stated in the lead paragraph, <u>i.e.</u>, to identify and group "counts involving substantially the same harm."

USSG §3D1.2, at Application N. 2 (emphasis added).

In the case of Mr. Klein, the two remaining §111 assaults or impeding activities that do not involve separate or direct harms, Counts 9 and 27, would naturally be grouped with the §231 Civil Disorder conviction that is Count 35.  These three counts all relate to the same societal interest and same activity as described in Application Note 2 above and all are at the same guideline level.  These are the

22

three remaining counts outside of 17, 19, 31 and 32 after Count 34, the conviction for violating §1512, is

vacated, and the two convictions under §1752(a), counts 43 and 51, are vacated. Upon grouping of the

three remaining non-aggravated, non-injurious and non-violent counts that was within the ongoing and

continuous protest, the resulting total number of groups should remain at five total groups, and with that,

under §3D1.4 this would apply a 4-level group increase.

      7.     The PSA provides a "Victim Related Adjustment: The victim(s) in this case were law

enforcement officers and the offense was motivated by such status. Because USSG §3A1.2(a)(1) and (2)

applied from §2A2.4, and the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses

Against the Person), six levels were added. USSG §3A1.2(b)." (*See* PSA at p. 17). However, upon the

reduction of all the felonies to the guideline of §2A2.4, the §3A1.2. Official Victim-based 6 level

increase no longer applies to avoid double counting. Note 2 in §3A1.2, Sentencing Guidelines, Chapter

3, (2023), (https://www.ussc.gov/guidelines/2023-guidelines-manual/annotated-2023-chapter-3#3a12)

and Note 2 at p. 347 of the 2021 USSG both provide:

> Nonapplicability in Case of Incorporation of Factor in Chapter Two.— Do not
> apply this adjustment if the offense guideline specifically incorporates this factor.
> The only offense guideline in Chapter Two that specifically incorporates this factor
> is §2A2.4 (Obstructing or Impeding Officers).

     As a result, the elimination of the aggravated assault guidelines requires by extension the

elimination of the Victim Related Adjustment.

**j.  This Court Must Recognize the Inefficiency, and the Prejudice and Harm Imposed on Mr. Klein by the Government's Excessive Prosecution.**

     Had the government never sought to extend §1512(c)(2), or improperly sought the

enhancements under USSG §2J1.2(b)(1)(B) and §2J1.2(b)(2), or disregarded key elements to

§1752(a) and (a)(4), and instead only contemplated the non-violent and non-injurious pushing-

based assaults by a first-time offender, the investigation would have been vastly reduced and the

potential for Mr. Klein to accept responsibility consistent with USSG §3E1.1(a) would have been vastly higher, which would have provided for a 2 level reduction.

Going further, §3E1.1(b) provides that if a defendant's timely assistance "[permits] the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently" then the defendant would qualify for a further point reduction. This is relevant to highlight the extraordinary overcharging of Mr. Klein, the resolution of which continues to be subject to court delays, and inefficiency, whereas one critical example, the DOJ recognized on September 3rd, 2024, that the *Couy Griffin* case caused eight defendants to have their cases held in abeyance as the Circuit Court deliberates for what now exceeds eight months. (*See* Exhibit A). Mr. Klein faced extensive home pre- and post-trial detention totaling 31 months plus 40 days in jail that was caused in part by the added complexity of the multiple illegal charges and now requires this habeas corpus motion to repair the injustice.

This was not only inefficient, but highly prejudicial. This Court has itself already expressed that the Government targeted Mr. Klein with excessively harsh treatment:

> Indeed, the probation office's recommendation is also well below the Government's proposal, which would have put you in the small category of January 6th defendants who either perpetrated particularly vicious attacks on officers or were convicted of seditious conspiracy or both. ***You quite clearly are not in that league***, so I reject the Government's sentencing recommendation. (Sentencing Transcript at p. 64, emphasis added).

For the Court to see that Mr. Klein was "*not in that league*" shows that the Government went too far even prior to recognition of the multiple illegal charges. The excessive sentence sought by the Government directly contributed to Mr. Klein's posture throughout the trial. When considering that the Government sought a sentence of over 11 years, or 108 to 135 months, for non-violent and non-injurious pushing-based assaults by a first-time offender, where the defendant was made a pariah in the press, Mr. Klein had little choice but to aggressively defend

himself. (*See* Sentencing Transcript at 9:12 for duration of proposed sentence). The actions of the Government closed off Mr. Klein's ability to reasonably work toward a plea and corrupted his ability to reasonably contemplate his acts. Mr. Klein was backed into a corner by a highly aggressive prosecution as well as a highly aggressive and transparently defamatory press, where as an example the New York Times reported on March 5, 2021:

> Four years later, Mr. Klein, 42, finally made his mark in Washington — **as a leader of the mob that stormed the Capitol** on Jan. 6, according to a Court document filed by the F.B.I., which arrested Mr. Klein on Thursday. Mr. Klein is the first known participant in the Capitol breach to have worked for Mr. Trump's campaign or held a political appointment in his administration.[4]

As *United States v. Secor*, 2024 U.S. Dist. LEXIS 122600 made clear, a plea deal would have required waiver of his rights to challenge a conviction, where the Court stated "Secor has waived his right to raise any such [§2255] motion in exchange for having his remaining charges—including other felonies—dismissed. Plea Agreement ¶¶ IX.E, F. Therefore, *Fischer* is irrelevant to the disposition of this motion." *Secor* at p.9. Given this reality, working with and bargaining with the prosecution became a 'Hobson's choice.' The extent of the misguided government actions is now transparent, and the consequence has been highly prejudicial to Mr. Klein and wasteful to the Court. The Court even recognized the harm caused by the over-prosecution on the psychology of the defendants during the sentencing hearing:

> There's a lot that needs to be done to ensure that January 6th and the events that day don't repeat themselves. But putting Mr. Klein and the thousands of others in prison for a decade doesn't achieve that goal, If anything, I would argue – and certainly

---

[4] By Michael Crowley, *Trump Official Arrested in Storming of Capitol Left Little Mark Before Riot*, New York Times, (March 5, 2021), https://www.nytimes.com/2021/03/05/us/politics/federico-klein-capitol-riot-trump.html. (emphasis added).

while I appreciate my vantage point is somewhat biased, but as the Court is aware, I've represented several other in these cases – ***it's having the opposite effect***.

(Sentencing Hearing Transcript at p. 51). (emphasis added).

To summarize the extent by which this prosecution went beyond their duty of justice, consider:

1. Mr. Klein was convicted of §1512(c)(2) that we respectfully expect to be vacated by *Fischer.*

2. Similarly, Mr. Klein was convicted under aggravated assault guidelines that we respectfully anticipate being vacated by *Fischer,* resulting from the vacatur of the predicate felony.

3. Mr. Klein was subject to the Victim Related Adjustment under §3A1.2(b), which we respectfully expect will be vacated upon vacatur of the aggravated assault guidelines.

4. Mr. Klein was charged with the 11-level enhancement that we expect would have been vacated by *Brock,* had this Court not denied prosecution's request for enhancements at sentencing.

5. Mr. Klein was subject to a variance that generally relied on enhancements disallowed under *Brock* and interference with an official proceeding disallowed under *Fischer*, which we respectfully expect to be vacated.

6. Mr. Klein was convicted under 18 USC §1752(a)(2) and (a)(4), the application of which should be stayed because of *United States v. Couy Griffin*.

7. Without the Government's reported use of legally questionable Geofence warrants and searches, Mr. Klein's whereabouts would not necessarily have been initially identified, which would create an underlying poisonous tree. The Fifth Circuit recently held that "geofence warrants are modern-day general warrants and are unconstitutional under the

Fourth Amendment." *USA v. Jamarr Smith*, Docket 23-60321 (5th Cir. August 9, 2024).

In requesting a geofence warrant, "[l]aw enforcement simply specifies a location and

period of time, and, after judicial approval, companies conduct sweeping searches of their

location databases and provide a list of cell phones and affiliated users found at or near a

specific area during a given timeframe, both defined by law enforcement." *Geofence*

*Warrants and the Fourth Amendment*, 134 HARV. L. REV. 2508, 2509.

> The Washington Post reported:
>
> Investigators also sent "geofence" search warrants to Google, asking for the
> account information of any smartphone Google had detected on Jan. 6 inside
> the Capitol via GPS satellites, Bluetooth beacons and WiFi access points.
> Investigators then compiled an "exclusion list" of phones owned by people
> who were authorized to be in the Capitol on Jan. 6, including members of
> Congress and first responders. Everyone else was fair game.
>
> *How America's surveillance networks helped the FBI catch the Capitol mob,* The
> Washington Post – Democracy Dies in Darkness, Drew Harwell (April 2, 2021).
> https://www.washingtonpost.com/technology/2021/04/02/capitol-siege-arrests-
> technology-fbi-privacy/.

8. Whether absent the excessive charges and malicious prosecution, Mr. Klein would have

   accepted responsibility and benefited from a two-level discount for Acceptance of

   Responsibility cannot be known.

9. Whether absent the excessive charges including aggravated assault, Mr. Klein would

   have received the two-level discount for having a zero-point criminal history and

   nonviolent assaults that caused no injury cannot be known.

10. If, after a plain reading of the various statutes, had the prosecution determined not to

    charge Mr. Klein with §1512(c)(2), §2J1.2(b)(1)(B) and §2J1.2(b)(2) and §1752(a)(2)

    and (a)(4), the extent of investigation and Court resources would have been more capable

to handle the matter and not require anywhere near 31 months of home detention plus 40 days in jail.

The 11 level enhancements combined with other charges would have put Mr. Klein in prison for 11 years or more than twice the ultimate guideline range for his convictions. (*See* Sentencing Tr. at 51:6). The relative decision of this Court to only enhance his sentence by a variance of 14.3% ((72-63)/63), relative to the government's 11-year demand, reflects an extraordinary departure in the thinking of this Court versus the Government despite the significance of the Court's upward variance. Now the Court must consider a similarly large departure given the findings in *Brock*, *Fischer* and anticipated in *Couy Griffin*.

The multiple errors of the prosecution precluded Mr. Klein from benefiting from §3E1.1(a) and (b). The prosecution's acts ultimately harm Mr. Klein with excessive pre-trial detention, an excessive prison sentence and the psychological burden of having to accept the lengthy sentence and the government's actions were directly wasteful of government and court resources, in contradiction with express purpose of §3E1.1(b):

> If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby **permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently**, decrease the offense level by **1** additional level.

Given the extensive harm to Mr. Klein, the Court and the taxpayer from the government's taking, this Court should award the two-level reduction under §3E1.1(a) to repair the substantial harm and deter future inefficiency. Note, per the Chapter 5 sentencing table in the 2023 USSG, a two-level reduction would save Mr. Klein 6 months of sentence, which reflects less than 19% of

28

his 31 months of home detention plus 40 days in jail and would only reflect a portion of the time during which prosecutors executed this inefficient over-prosecution.

In conclusion, the incentive to seek efficiency and to respect the Court requires effort by both the defense and the prosecution. If the prosecution takes from the defendant the opportunity to provide such efficiency, and *actively creates inefficiency*, the Court should provide the benefit to the defendant as a remedy and deterrent.

## CONCLUSION

We submit that after this review and vacatur, Mr. Klein is to be subject to §2A2.4 at a base level of 10 plus 3 points for physical contact, yielding a 4-point increase for a total of 5 groups and then reduced by 2 points under §821 for his non-violent and non-injurious "sled pushing" behavior as a first-time offender. To recognize the extraordinary waste and harm to Mr. Klein, to the Court and to taxpayers inherent in the Government's multiple errors regarding *Fischer*, *Brock* and *Couy*, whether by variance or directly, Mr. Klein should receive the §3E1.1(a) 2 level reduction in recognition of the government's taking of his opportunity to accept responsibility and as a future deterrent.

Under this framework, Mr. Klein would be at an offense level of 13, subject to category I. The sentencing guidelines would apply 12 to 18 months, whereby the date of the anticipated hearing on this motion, Mr. Klein will have served 11 months and would have served more time in home detention than his entire adjusted prison sentence with home detention at over 31 months. In the alternative, Mr. Klein would respectfully request that the motion to release pending appeal be granted.

Dated: September 26, 2024        Respectfully submitted,

                                     */s/ Peter G. Haller.*

Peter G. Haller (Pro Bono Counsel)

D.C. Bar No. 983101

312 Idleman Run Rd.
Davis, WV  26260
peterhaller@hillstrat.com
(551)-358-2943

*Co-Counsel for Defendant Frederico Guillermo Klein*

**<u>CERTIFICATE OF SERVICE</u>**

On September 10, 2024, the undersigned hereby certifies that a true and correct copy of

the foregoing was electronically filed and served via the CM/ECF system, which will automatically send

electronic notification of such filing to the following registered parties.

Dated: September 26, 2024                Respectfully submitted,


_____*/s/ Peter G. Haller.*_____

Peter G. Haller (Pro Bono Counsel)

D.C. Bar No.983101

312 Idleman Run Rd.
Davis, WV 26260
peterhaller@hillstrat.com
(551)-358-2943


*Co-Counsel for Defendant Frederico Guillermo Klein*