IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) | **Criminal No. 1:21-cr-00040-TNM-9** |
| v. | ) ) |  |
| **FEDERICO GUILLERMO KLEIN,** | ) ) |  |
| **Defendant.** | ) ) ) |  |

### DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 18 U.S.C. § 2255, OR, IN THE ALTERNATIVE, FOR RELEASE PENDING APPEAL

Defendant Federico Guillermo Klein, ("Mr. Klein" or "Federico Klein"), through undersigned counsel, hereby respectfully files this Reply Memorandum to the Government's Opposition with regard to the Defendant's motion under Section 2255 of Title 28, to vacate set aside and correct his sentence, or in the alternative, pursuant to 1343(b) of Title 18 of the United States Code, move for an Order permitting Mr. Klein to be released from detention pending the resolution of his appeal of the convictions in the above-captioned matter.

I.  **LEGAL ARGUMENT**

   A.  **Use of 28 USC §2255 Is Permissible Despite the Appeal Having Been Noticed**

In its opposition, the Government acknowledges the application of §2255 is permitted at page four (4) of their opposition though requires extraordinary circumstances:

> The D.C. Circuit has long recognized that, although there is "no jurisdictional bar to the District Court's entertaining a Section 2255 motion during the pendency of a direct appeal[,] . . . the orderly administration of criminal law precludes considering such a motion absent extraordinary circumstances." *Womack v. United States*, 395 F.2d 630, 631 (D.C. Cir. 1968).

The Government acknowledges the potential applicability of Mr. Klein's motion to vacate if the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." (Gov't Opp. at 2 citing 28 U.S.C. § 2255). The Government then argues that the relief contemplated by § 2255 "does not encompass all claimed errors in conviction and sentencing" citing *United States v. Addonizio*, 442 U.S. 178, 185 (1979). *Id*. *Addonizio*; however, provides that if convictions under circumstances identical to Mr. Klein's, were not vacated, this would be a "complete miscarriage of justice." *Id*. The relevant except from *Addonizio* provides:

> The claimed error here -- that the judge was incorrect in his assumptions about the future course of parole proceedings -- does not meet any of the established standards of collateral attack. There is no claim of a constitutional violation; the sentence imposed was within the statutory limits; and the proceeding was not infected with any error of fact or law of the "fundamental" character that renders the entire proceeding irregular and invalid. The absence of any error of this nature or magnitude distinguishes Addonizio's claim from those in prior cases, upon which he relies, in which collateral attacks were permitted. *Davis* v. *United States*, 417 U.S. 333, for example, like this case, involved a claim that a judgment that was lawful when it was entered should be set aside because of a later development. **The subsequent development in that case, however, was a change in the substantive law that established that the conduct for which petitioner had been convicted and sentenced was lawful. To have refused to vacate his sentence would surely have been a "complete miscarriage of justice," since the conviction and sentence were no longer lawful.**

*United States v. Addonizio*, 442 U.S. 178, 185-187 (1979). (emphasis added).

The District of Columbia Circuit Court of Appeals upheld the view of *Addonizio*, citing *Davis v. United States*, in 2011 that expressly deemed an intervening change in law to be "exceptional circumstances":

> As for the evidentiary claims, it is well-established that a federal prisoner cannot raise collaterally any issue litigated and adjudicated on direct appeal, **absent exceptional circumstances such as an intervening change in law**, Davis v. United States, 417 U.S. 333, 342, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974); United States v. Greene, 834 F.2d

2

> 1067, 1070, 266 U.S. App. D.C. 220 (D. C. Cir. 1987), and there are no such circumstances here.

*United States v. Tchibassa*, 2011 U.S. App. LEXIS 7892, *2 (DC Cir 2011). (emphasis added).

Also consistent with the expected vast reduction of Mr. Klein's sentence due to the intervening change in the law, in *Davis v. United States Sentencing Comm'n*, the Circuit Court of Appeals for the District of Columbia explained:

> Because the Supreme Court has knocked out three of the pillars on which *Razzoli* rests, we now allow that holding to fall. Adopting *Wilkinson's* habeas-channeling rule, **we hold that a federal prisoner need bring his claim in habeas only if success on the merits will "necessarily imply the invalidity of confinement or shorten its duration."** *Wilkinson*, 544 U.S. at 82. Otherwise, he may bring his claim through a variety of causes of action. And so it is with Davis. Success with his equal protection challenges to Amendment 706 or Amendment 750 will not "necessarily imply the invalidity of [his] confinement or shorten its duration." *Id*. Success would do no more than allow him to seek a sentence reduction, which the district court retains the discretion to deny. 18 U.S.C. § 3582(c)(2).

716 F.3d 660, 666, (DC Cir. 2013).

In the case of Mr. Klein, success on the merits will reduce the duration of his confinement to a fraction of the original sentence. His claims are based on changes in law pertaining to at least two, but likely three separate laws which further impact multiple aspects of the sentencing guidelines. If Mr. Klein's §2255 is denied, this would be a complete miscarriage of justice as these circumstances are clearly exceptional. In fact, as the Supreme Court in *Addonizio* considered the failure to vacate a conviction after a change in law to be a "complete miscarriage of justice," then the multiple changes in law that impact Mr. Klein's case bring this complete miscarriage of justice to an even higher level of injustice.

The Government then cites to *United States v. Stottlemyer*, 321-cr-332 (TJK), 2024 WL 1076852 at *3 (D.D.C. Mar. 8, 2024) (Kelly, J) in an effort to show that the defendant's effort to challenge §1512(c)(2) did not qualify as a substantial claim of law. (Gov't Opp at 6). However, what the government failed to point out in that case was that Stottlemyer's claim under §2255 failed because she

3

waived her right to appeal her conviction in her plea deal. *See Id*. In contrast, Mr. Klein never waived his rights.

> "Based on the record before it, the Court cannot find that Stottlemyer's §2255 claim—that under these circumstances counsel's purported failure to appeal or to consult with her about one was constitutionally ineffective—is a "substantial claim of law." Far from it. **In her written plea agreement, Stottlemyer specifically waived the right to appeal her conviction "on any basis," including, but not limited to, a claim that "the admitted conduct [did] not fall within the scope of the statute." At her change-of-plea hearing, the Court explained the waiver of her appeal rights to her, and she said she understood.** Stottlemyer does not challenge the validity of that waiver or suggest, at least as understood by the Court, that counsel was ineffective in connection with her plea negotiations or the plea hearing."

*Stottlemyer*, 2024 U.S. Dist. LEXIS 40394, *10 (emphasis added).

**B.  The Government's Bias in Seeking to Maintain the Sentence Despite Exceptional Circumstances**

The Government cites to *United States v. Alan Hostetter*, 21-cr-392-RCL, ECF 507 to argue that "[t]he Court may still consider Mr. Hostetter's serious conduct on January 6th, 2021 in its entirety, even if the court of appeals concludes that this conduct no longer constitutes a crime under 18 U.S.C. §1512. To reduce his sentence from 135 months to 12 months would require this Court to take a drastically different view of Mr. Hostetter's conduct." (Gov't Opp. at p. 9).

The Government misunderstands the finding in *Hostetter*. The facts of that case pointed to a claim of a variance between the indictment and the evidence at trial, where a finding of prejudice is required for a variance to be found. *United States v. Riley*, U.S. App. LEXIS 22663, *21-23, 115 F.4th 604 (DC Cir. 2024). An amendment; however, whether constructive or explicit, directly deprives the defendant of the "right to be tried upon the charge in the indictment as found by the grand jury and hence subjected to its popular scrutiny." *United States v. Riley*, U.S. App. LEXIS 22663, *21-22, 115 F.4th 604 (DC Cir. 2024). *Id*.

> An amendment deprives the defendant of the "right to be tried upon the charge in the indictment as found by the grand jury and hence subjected to its popular scrutiny." *Gaither v. United States*, 413 F.2d 1061, 1071-72, 134 U.S. App. D.C. 154 (D.C. Cir. 1969). **When an indictment is amended either explicitly (by the trial**

> **judge) or constructively (by evidence and jury instruction), the allegations are altered without the approval of the grand jury.** *Stirone v. United States*, 361 U.S. 212, 215-16, 218-19, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960); *United States v. Lorenzana-Cordon*, 949 F.3d 1, 4, 445 U.S. App. D.C. 156 (D.C. Cir. 2020). To support a claim of constructive amendment, the defendant must "show that the evidence presented at trial *and* the instructions given to the jury so modified the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment." *Lorenzana-Cordon*, 949 F.3d at 5-6 (emphasis in original) (quoting *United States v. Toms*, 396 F.3d 427, 436, 364 U.S. App. D.C. 397 (D.C. Cir. 2005)). Because "the concept of harmless error has not been applied to amendments," no showing that an amendment was prejudicial is required. *Lorenzana-Cordon*, 949 F.3d at 4-5 (quoting *Gaither*, 413 F.2d at 1072).

*Id*. (emphasis added).

The Government's effort to cause the Court to maintain Mr. Klein's sentence after his conviction could only amount to an explicit amendment and would clearly violate this defendant's 5th Amendment rights and, further, would reflect prejudice persisting from the original unlawful convictions under §1512, the unlawful convictions under §1752 and the unlawful share of the variance relying on the Administration of Justice enhancements (*See* Statement of Reasons at p. 3) among other necessary changes. In the present case, efforts to maintain the prior sentencing determinations would appear prejudicial as they would reflect that the vacated convictions continue to play a role.

As one critical example, upon the findings made by the Supreme Court in *Fischer*, Mr. Klein's acts do not violate §1512(c)(2) and as a result the District Court cannot sentence Mr. Klein based on his conduct that is not subject to a valid indictment, which would include §1512(c)(2) and the charge of aggravated assault predicated on §1512(c)(2), nor can the court subject Mr. Klein to an upward variance pertaining to acts that did not even amount to a crime. Further, post-conviction, establishing a new variance to increase the penalty on the remaining assault charges, as explained in Defendant's motion, would amount to double jeopardy or an explicit amendment and would appear prejudicial given the Government's demands. (*See* Klein's Amended Motion to Vacate at p. 16-17).

C. **The Government Turns Judicial Economy on Its Head**

The Government further argues that judicial economy should prevent the application of this motion to vacate under §2255. (See Gov't's Opp.at p. 4). The Government argues inefficiency under the idea that this motion creates a second forum in addition to the appellate process when the Government states "[c]oncerns with judicial economy underlie this general limitation on permitting a party to litigate in two forums at once." *See Id*.

In the facts particular to Mr. Klein's matter, outside of noticing of the appeal, no filings have yet to be scheduled so this matter is practically only active in one forum, the District Court. (See Docket generally). Whereas this Court is already fully informed to efficiently consider the motion, and in the best position to address these changes in the law, not only for efficiency, but also for timeliness in the urgency of Defendant's case. This motion stands to save resources and prevent the needless and far more costly appeal process that then inevitably returns to the District Court to handle the remand. It is far more efficient and just to address these concerns now.

The Government argues that "[n]othing in the defendant's §2255 motion establishes extraordinary circumstances that would warrant permitting him to litigate the same issue(s) simultaneously in two forums. Nor is there anything to suggest that a stay of the §2255 motion during the pendency of the appeal would result in unfairness."

The Government's position ignores the law. As described above citing *Adonizio* and *Davis*, the multiple changes in law require application of §2255 or would be a "complete miscarriage of justice" and are considered "exceptional circumstances." *Supra* at 2. Further, *Adonizio* and *Davis* speak to a single change in law, not the unprecedented "trifecta" present here. Mr. Klein faces multiple changes in the law arising from *Fischer v. United States*, 144 S. Ct. 2176 (2024), *United States v. Larry Brock*, 94 F.4th 39 (D.C. Cir. 2024), and *United States v. Couy Griffin* (Docket 22-3042, D.C. Circuit Ct 2023) that in turn, eliminate the application of §1512(c)(2), eliminate the aggravated assault guidelines, eliminate the victim related adjustment, eliminate the basis for the upward variance, eliminate

6

convictions under §1752(a), and should cause the United States Sentencing Guidelines under §4C1.1(a) to apply and should cause the application of the zero-point offender two level reduction.

This in combination would shorten the sentence so much so that immediate release is the only just and proper outcome and waiting for appeal and remand would cause Mr. Klein to remain in prison far longer than the ultimate sentence that would result. Mr. Klein served 31 months in home detention and 11 months in prison to date, but now Mr. Klein faces potential release upon the application of the changes in law to his sentence. To await an appeal and a potential remand back to this court would vastly exceed his ultimate sentence. As explained in Mr. Klein's Motion to Vacate – his sentence is built on a true house of cards that was entirely avoidable but for the bias and prejudicial actions of this government. (See Mr. Klein's Amended Motion to Vacate at p. 22-27). Defendant submits that after all the changes are applied, Mr. Klein would be at an offense level of 13, subject to category I, that the sentencing guidelines would apply 12 to 18 months, whereas he is currently under a sentence of 72 months. These are exceptional circumstances, and it would be a miscarriage of justice to delay hearing Mr. Klein's motion to vacate.

D. **Footnote Two of Government's Opposition Lists Three Substantial Issues**

1. **Mr. Klein was Convicted, via Upward Variance, in part, due to the Administration of Law Enhancement that were found unlawful in *United States v. Brock*.**

The Government, in its second footnote, correctly states that the Court rejected application of the enhancements at issue in *Brock*. Footnote 2 of the Government's opposition specifically provides:

> Respectfully, some of the other issues raised in the § 2255 also make little sense. For example, the defendant questions the implications of United States v. Larry Brock, 94 F.4th 39, 48 (D.C. Cir. 2024), despite the fact that this very Court did not apply the enhancements at issue in Brock. See ECF No. 822-1 at 10.

However, as specified in Klein's Amended Motion to Vacate at p. 14-15, this court, in the Statement of Reasons, relied on the Administration of Law enhancements to support the upward variance against Mr. Klein, and specifically cited the USSG:

7

Defendant's actions–though not technically related to the "Administration of Justice" – threatened injury to multiple officers and involved substantial interference with the certification of the electoral college. CF USSG §2J1.2(b)(1)(B) + §2J1.2(b)(2)." (Statement of Reasons, p. 3).

The above language from the Statement of Reasons makes clear that, even though the Court acknowledged that Mr. Klein's crimes are "not technically related to Administration of Justice," the Court nonetheless cited USSG §2J1.2(b)(1)(B) + §2J1.2(b)(2) as part of what was considered in imposing the upward variance and as a result of *Brock*, the share of the variance that depended on this should also be vacated.

2. **The Government Misunderstood Defendant's Use of "Abeyance"**

Footnote 2 next provides that "the defendant also seeks "abeyance" of the "conviction" (at 14), despite the fact that his convictions are currently on appeal." This is incorrect. All uses of "abeyance" in the Klein's Amended Motion to Vacate refer to the cases held in abeyance while the Circuit Court deliberates over *United States v. Couy Griffin*, Docket 22- 3042, D.C. Circuit Ct 2023 for what now exceeds nine months.

3. **The Government Summarily Dismissed the List of Injustices Against Mr. Klein as Screed**

Finally, the third portion of Footnote 2 describes as "screed" a subsection entitled "This Court Must Recognize the Inefficiency, and the Prejudice and Harm Imposed on Mr. Klein by the Government's Excessive Prosecution." (Gov't Opp. at 5). The section lists off the various ways that the Government's prosecution caused inefficiency, prejudice and harm against Mr. Klein that we are dealing with in this process:

> The remaining challenges (at 23-28) appear to **be a screed** against perceived injustices during the course of his prosecution, including a laundry list of grievances that have appear to have no bearing on the Court's findings, the Court's sentence, and the underlying rationale for its sentence.
>
> *Id.*

Given the "exceptional circumstances" recognized under *Davis,* and the multiple exceptional

8

circumstances in the case of Mr. Klein, the Government should acknowledge that some degree of bias entered their work product rather than deem a large part of Klein's Amended Motion to Vacate as a "screed" and fail to respond to the entire argument.

As Defendant argued therein, this court has itself already expressed that the Government targeted Mr. Klein with excessively harsh treatment: "Indeed, the probation office's recommendation is also well below the Government's proposal, which would have put you in the small category of January 6th defendants who either perpetrated particularly vicious attacks on officers or were convicted of seditious conspiracy or both. You quite clearly are not in that league, so I reject the Government's sentencing recommendation." (Sentencing Transcript at p. 64, emphasis added).

For the Court to see that Mr. Klein was "not in that league" shows that the Government went too far even prior to recognition of the multiple illegal charges. The excessive sentence sought by the Government directly contributed to Mr. Klein's posture throughout the trial. When considering that the Government sought a sentence of over 11 years, or 108 to 135 months, for non-violent and non-injurious pushing-based assaults by a first-time offender, where the defendant was made a pariah in the press, Mr. Klein had little choice but to aggressively defend himself. (See Klein Motion at 23-24 (citing Sentencing Transcript at 9:12 for duration of proposed sentence). This overzealousness was exhibited prior to these changes in the law, and the current exceptional circumstances magnify bias and the disregard of the law.

### E. The Government Improperly Seeks to Disconnect Sentencing from Rights Under Habeas Corpus to Unjustly and Falsely Maintain Mr. Klein's Sentence

The Government argues in footnote 3 of its Opposition that:

> [A]rguments related to the sentencing guidelines, which constitute a substantial portion of Klein's grievances, are not properly raised in a §2255 motion. Indeed, Klein cannot argue Brock presents a substantial question of law here because alleged errors in sentencing guideline calculations are not cognizable under §2255. See United States v. Santay-Rosales, No. 20-cr-243 (RCL), 2023 WL 5221249 at *4 n.1 (D.D.C. August 15, 2023) (Lamberth, J.); United States v. Folk, 954 F.2d 597, 604 (3d Cir. 2020) (declining to find that a sentencing guidelines claim is cognizable under § 2255 and noting that nearly every other circuit court of appeals has held or suggested that guidelines claims are not cognizable under § 2255) (collecting cases).

The Governments first cite in footnote 3 from *United States v. Santay-Rosales* refers to a defendant who made a plea agreement where he waived his rights, again, clearly distinguishable from this matter where Mr. Klein made no such waiver:

> Dissatisfaction with the terms of a plea agreement alone cannot serve as a basis for an ineffective assistance of counsel claim. *See United States v. Brunetti*, 376 F.3d 93, 95 (2d Cir. 2004); *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998). Moreover, plea counsel's suggestion to Mr. Santay-Rosales that he accept the plea agreement with the sentencing enhancement and appeal waiver in exchange for a swift resolution of the case fell squarely within the "wide range of reasonable professional assistance" that *Strickland* protects. 466 U.S. at 689; Sent'g Hr'g Tr. at [*15] 15:17-19.

*United States v. Santay-Rosales*, No. 20-cr-243

The Governments second cite from the 3rd Circuit also fails to explain the case, *United States v. Folk*, 954 F.3d 597, 604 (3d Cir. 2020), which did not "declin[e] to find that a sentencing guidelines claim is cognizable under §2255." Instead, the court list exceptions to allow §2255 to remedy a nonconstitutional claim such as a flawed sentence in two circumstances – the first being if a sentencing error resulted in "an omission inconsistent with the rudimentary demands of fair procedure" and the second if a sentencing error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." See *Id.* Specifically, the court explained the circumstances in which §2255 apply:

> Supreme Court precedent recognizes that §2255 may remedy a nonconstitutional claim such as a flawed sentence in two circumstances. *See Doe*, 810 F.3d at 155 (noting that *Reed v. Farley*, 512 U.S. 339, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994), explains how to fill the narrow space "between [the] poles"). First, if a sentencing error resulted in "an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783, 99 S. Ct. 2085, 60 L. Ed. 2d 634 (1979) (citation omitted). Second, if a sentencing error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice[.]"

*United States v. Folk*, 954 F.3d 597, 602, 2020 U.S. App. LEXIS 10581, *6.

The exceptions provided in *Folk* support that the adjustments to the sentencing guidelines are clearly cognizable in Mr. Klein's case given that the multiple changes in law present multiple exceptional

circumstances under *Davis v. United States* that would lead to a complete miscarriage of justice under *United States v Addonizio* as we showed above. *Supra* at p. 2. Further, the first exception of fairness also applies as a proper recalculation of sentencing would necessarily occur upon the vacatur of §1512(c)(2) and other laws, where it would be exceedingly unfair to leave the aggravated assault guidelines in place despite their inapplicability. *Folk* at 602.

### F. §1752 and Application of Couy Griffin's Appeal to Mr. Klein's Case

Regarding the *Couy Griffin* case, the Government argued in its Opposition that:

> [E]ven if Griffin were to be decided in a favorable manner to defendant Griffin, it is unlikely to impact this case, because it was proven beyond a reasonable doubt that Klein was aware of the Vice President's presence at the Capitol on January 6, 2021. See, e.g., Def. Mot. at 11 (citing the Court's statements at the sentencing hearing indicating that the government "persuasively demonstrated" that Klein closely followed the certification process and that he expected Vice President Pence to refuse to certify the election).

(Gov't Opp. at p. 8).

The Vice President's location at 2:31 or thereafter when Mr. Klein entered the arguably restricted grounds is not in evidence nor is Mr. Klein's knowledge of his alleged location. (*See* Klein's Amended Motion to Vacate at p. 12-13). Mr. Klein's knowledge of the electoral process and the extent of then Vice President Pence's duties in the electoral count does not relate to the whereabouts of the Vice President, nor is there any evidence that he was even interested in such information. Baselessly granting Mr. Klein this non-public information to keep an illegal conviction in place is disingenuous.

### G. The Extraordinary Multi-Step Impact of the Vacatur of 18 USC §1512(c)(2)

The Government, in minimizing the impact of the vacatur of §1512(c)(2), fails to discuss the most consequential component of the motion to vacate. The Government states that:

> Klein would remain incarcerated on the ten other counts of conviction, six of which are felony offenses for which he was sentenced to 70 months of incarceration on each of the five § 111(a)(1) counts and 60 months of incarceration on the § 231(a)(3) count (to run concurrently). See ECF No. 733.

(Gov't Opp. at p. 9).

11

The Government, in this summary, fails to consider that every single felony conviction that was subject to the aggravated assault guidelines depended on §1512(c)(2) as the other felony necessary for the enhancement, and that with the vacatur of this predicate felony, the aggravated assault charges are also to be vacated. Nor does the Government mention the §3A1.2. Official Victim-based 6 level increase that also is to be vacated upon the vacatur of §1512(c)(2). (*See* Klein's Amended Motion to Vacate at p. 22). Specifically, upon vacatur of §1512(c)(2), all other felony charges against Mr. Klein would fall from the aggravated assault guidelines under USSG §2A2.2 down to USSG §2A2.4. (Klein's Amended Motion to Vacate at p. 9-10, 19). Further, Mr. Klein would no longer be subject to the §3A1.2. Official Victim-based 6 level increase. (*See* Klein's Amended Motion to Vacate at p. 22).

As a result of these multiple adjustments, the recommended sentence under the USSG would fall to less than 1/3rd of his original sentence, and to an amount less than his 31 months of home detention – a rather exceptional circumstance and concerning proportion where if home detention counted as part of his sentence, he would have completed his sentence prior to starting his prison sentence. *See* USSG 2023, Ch. 5, Part A Sentencing Table (At Sentencing Table see Offense level 17 and Criminal History Category I, where the range of 24-30 months applies. 17 points is calculated as 10 points under §2A2.4 plus 3 points for physical contact, and 4 points for having 5 groups; note, this calculation does not include the further reductions that would apply with zero-point offender and acceptance of responsibility two level reductions).

### H. The Government's Prejudicial and Biased Acts Require a Remedy and Deterrent

The Government then misinterprets the basis for the two-level reduction Mr. Klein seeks under USSG 3E1.1. The Government states:

> Klein now indicates that he should receive a two-level reduction under U.S.S.G. § 3E1.1(a) as an equitable measure, see Def. Mot. at 29, and generally complains that he believes his case has proceeded inefficiently, see id. But these complaints are a far cry from demonstrating his case is an exceptional one that warrants the relief sought.

12

(Gov't Opp. at p.9).

Mr. Klein's right to the two-level reduction is not based solely on equity or on inefficiency – though inefficiency is one of the consequences of the Government's actions. The extraordinary prejudice, bias and excessive charges that resulted from the Government's misguided prosecution fully prevented Mr. Klein from pursuing acceptance of responsibility. Mr. Klein's Amended Motion to Vacate, at page 25-26, itemizes the ten means by which the Government miscarried justice. Prior to and during trial, Mr. Klein understood that the Government was seeking the §1512, §1752, aggravated assault enhancements, Administration of Justice enhancements and even Seditious Conspiracy enhancements – a set of charges that could amount to fifteen years in prison. (*See* Klein's Amended Motion to Vacate at p. 23). The over-charging was extraordinarily prejudicial and vastly increased the complexity and length of trial, the length of Mr. Klein's at home incarceration, and the risks of an improperly high sentence. As stated in the motion to vacate, working with the prosecution was a Hobson's choice; Mr. Klein's only rational choice was to challenge all aspects of the prosecution especially as any plea deal would have waived his rights to challenge the many errors of law and these extraordinary circumstances. (*See* Klein's Amended Motion to Vacate at p. 24).

The inability of Mr. Klein to pursue the acceptance of responsibility benefit was a taking executed by the Government, and so the benefit should be awarded to Mr. Klein to compensate him for that taking, the resulting longer confinement in home detention, and the unlawfully excessive sentence. While this could be considered as an equitable adjustment, it should be considered a relevant factor in the resentencing process given time already served, and as providing a deterrent to prosecutorial misconduct. The recognition of acceptance of responsibility would provide Mr. Klein with a time reduction that is less than 20% of his time in home detention. (Klein's Amended Motion to Vacate at p. 27). To the extent this adjustment were imposed, it should help deter Government prosecutors from

excessively charging defendants so that they seek more legally defensible convictions in the future. (*See* Klein's Amended Motion to Vacate at p. 28). The punishment should lead to an increase in efficient trials, fairer sentences and an increase in plea agreements due to the more reasonable terms that would result from the deterrent benefit. Note, such a finding would deter prosecutors under any administration.

## **CONCLUSION**

We respectfully request that the Court grant a hearing, grant the defendant's §2255 motion to vacate and schedule a resentencing hearing.

Dated: October 15, 2024          Respectfully submitted,

*/s/ Peter G. Haller.*

Peter G. Haller (Pro Bono Counsel)

D.C. Bar No. 983101

312 Idleman Run Rd.
Davis, WV  26260
peterhaller@hillstrat.com
(551)-358-2943

*Co-Counsel for Defendant Frederico Guillermo Klein*

## CERTIFICATE OF SERVICE

On October 15, 2024, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to the following registered parties.

Dated: October 15, 2024                                Respectfully submitted,

                                                           */s/ Peter G. Haller.*

Peter G. Haller (Pro Bono Counsel)

D.C. Bar No.983101

312 Idleman Run Rd.
Davis, WV  26260
peterhaller@hillstrat.com
(551)-358-2943

*Co-Counsel for Defendant Frederico Guillermo Klein*